Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/28/2019



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] | ) | Case No. 18-05665 |
| | ) | |
| 1721 Midpark Road, Suite B200 | ) | Judge Walker |
| Knoxville, TN 37921 | ) | |
| Debtors. | ) | Jointly Administered |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF GILMORE MEDICAL CENTER, (II) AUTHORIZING THE SALE OF GILMORE MEDICAL CENTER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (III) APPROVING STALKING HORSE PURCHASER, EXPENSE REIMBURSEMENT, AND OVERBID PROTECTIONS, (IV) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (V) SCHEDULING AN AUCTION, (VI) SCHEDULING A HEARING AND OBJECTION DEADLINES WITH RESPECT TO THE SALE OF GILMORE MEDICAL CENTER, (VII) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (VIII) GRANTING RELATED RELIEF**

Upon consideration of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of Gilmore Medical Center, (II) Authorizing the Sale of Gilmore Medical Center Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Stalking Horse Purchaser, Break-up Fee, and Overbid Protections, (IV) Establishing Certain Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling an Auction, (VI) Scheduling a Hearing and Objections Deadlines With Respect to the Sale of Gilmore Medical Center, (VII) Approving the Form and Manner of Notice Thereof, and (VIII) Granting Related Relief* (Dkt. No. 79) (the "***Sale***

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

***Procedures Motion***");[2] and upon consideration of any and all responses, objections, and other filings with respect to the Sale Procedures Motion; and after a hearing and opportunity to be heard; and upon due consideration and finding sufficient cause for the relief sought in the Sale Procedures Motion,

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:[3]**

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This is a core proceeding, within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).

D.      The statutory bases for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6003, 6004, 6006, and 9014 of the Bankruptcy Rules, and Bankruptcy Local Rule 9013-1.

E.      Proper, timely, adequate, and sufficient notice of the Sale Procedures Motion and relief sought in the Sale Procedures Motion has been provided, and such notice was sufficient and appropriate under the particular circumstances. Other than as set forth in this order, no other or further notice of the Sale Procedures Motion or relief sought in the Sale Procedures Motion is necessary or required.

---

[2] Capitalized terms used herein and not defined shall have the meaning given to them in the Sale Procedures Motion or the Bidding Procedures, as applicable.

[3] The findings of fact and conclusions of law herein constitute the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

65341373.4

F.    A reasonable opportunity to object or be heard regarding the requested relief in the Sale Procedures Motion and this order has been afforded to all parties entitled to notice of the Sale Procedures Motion.

G.    The Debtors have the power and authority to sell the Proposed Purchased Assets free and clear of all liens, claims, and encumbrances, pursuant to section 363 of the Bankruptcy Code, and all requirements for such sale pursuant to section 363 of the Bankruptcy Code have been satisfied.

H.    The Debtors have articulated good and sufficient reasons for this Court to: (a) approve the Bidding Procedures; (b) approve the selection of the Stalking Horse Purchaser and related Bid Protections; (c) schedule the Bid Deadline and the Auction; and (d) approve the form and manner of notice of the Auction Notice.

I.    The Bidding Procedures are reasonable, non-collusive, created in good faith, substantively and procedurally fair, and represent the best available method for maximizing value for the benefit of the Debtors' estates.

J.    The Debtors' authorization to pay the Expense Reimbursement is an essential inducement and condition relating to the Proposed Stalking Horse's entry into, and continuing obligations under, the Gilmore APA.

K.    The Debtors' promise to pay the Expense Reimbursement, which has induced the Proposed Stalking Horse to submit its bid that will serve as a minimum or floor bid on which the Debtors can rely, provides a material benefit to the Debtors' estates and their creditors, by increasing the likelihood that the best possible purchase price for the Proposed Purchased Assets will be received.

3

L.     The Bid Protections are reasonable and appropriate under the circumstances, including in light of the commitments that will be made by the Stalking Horse Purchaser.

M.     The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion. The Bidding Procedures balance the Debtors' interests in an expeditious sale of the Proposed Purchased Assets while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

N.     The Auction Notice, substantially in the form attached hereto as **<u>Exhibit A</u>** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

O.     The Assumption Notice, substantially in the form attached hereto as **<u>Exhibit B</u>**, is appropriate and reasonably calculated to provide all parties to executory contracts and unexpired leases with the notice required by section 365 of the Bankruptcy Code and Rule 6006(c) of the Bankruptcy Rules and all applicable Local Rules.

P.     The Assumption and Assignment Procedures are fair, reasonable, and calculated to provide all parties to executory contracts and unexpired leases to adequate notice of the proposed assumption and assignment of executory contracts and unexpired leases, pursuant to section 365 of the Bankruptcy Code and in accordance with Rules 6003 and 6006(c) of the Bankruptcy Rules and all applicable Local Rules.

**BASED UPON THE FOREGOING FINDINGS AND THE RECORD BEFORE THIS COURT, IT IS HEREBY**

1.     **ORDERED** that the Sale Procedures Motion is granted as set forth in this order; and it is further

65341373.4

2.      **ORDERED** that all objections to the Gilmore APA, Bidding Procedures, Bid Protections, Assumption Notice, Assumption and Assignment Procedures, and Auction Notice that have not been withdrawn, waived, or settled as announced to the court at the hearing on the Sale Procedures Motion or by stipulation filed with the court, are expressly denied and overruled; and it is further

3.      **ORDERED** that the Gilmore APA as modified consistent with the statements made on the record to the Court at the hearing on the Sale Procedures Motion and filed with the Court following conclusion of the hearing on the Sale Procedures Motion is approved; and it is further

4.      **ORDERED** that the Assumption Notice attached hereto as **Exhibit B** is approved; and it is further

5.      **ORDERED** that the Assumption and Assignment Procedures are approved in their entirety; and it is further

6.      **ORDERED** that the Bidding Procedures attached to this order as **Schedule 1** are hereby approved in their entirety and shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Proposed Purchased Assets; and it is further

7.      **ORDERED** that any party desiring to bid on the Proposed Purchased Assets shall comply with the Bidding Procedures and this Sale Procedures Order; and it is further

8.      **ORDERED** that each Qualified Bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding on or sale of the Proposed Purchased Assets, as set forth in the Bidding Procedures; and it is further

9.      **ORDERED** that **a**ny Qualified Bidder who has a valid, perfected, and undisputed lien on the Proposed Purchased Assets (a "*Secured Creditor*") and the right and power to credit

65341373.4

bid claims secured by such liens, shall have the right to credit bid all or a portion of the value of such Secured Creditor's secured claims within the meaning of and subject to section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured; and it is further

10.     **ORDERED** that the Debtors are deemed to have complied with all contractual rights of first refusal, or similar contractual purchasing rights, regarding the Proposed Purchased Assets; and it is further

11.     **ORDERED** that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Procedures Order; and it is further

12.     **ORDERED** that the Debtors may proceed to sell the Proposed Purchased Assets free and clear of liens, claims, encumbrances, and other interests, in accordance with the Bidding Procedures, with such liens, claims, encumbrances, and other interests attaching to the proceeds of such sale in the same order of priority and validity; and it is further

13.     **ORDERED** that the Proposed Stalking Horse's Escrow Amount (as provided in the Gilmore APA) shall be held in escrow and shall not constitute or be deemed to constitute property of the Debtors or the Debtors' estates, and neither the Debtors nor the Debtors' estates shall have an interest of any kind (equitable or otherwise) in such funds, unless and until such funds are unconditionally paid or payable in accordance with the Gilmore APA, and no liens, claims or encumbrances shall attach to such funds until such funds are unconditionally paid or payable in accordance with the Gilmore APA; and it is further

14.     **ORDERED** that Section 6.17(f) of the Gilmore APA is approved and binding on the Debtors, provided, however, that the Expense Reimbursement shall be capped at $600,000.00

65341373.4

subject to the rights of the Committee and Debtors to object to the reasonableness of such expenses, provided further, however, that the Proposed Stalking Horse has the right to file a motion seeking its actual, documented, reasonable, third party expenses actually incurred in excess of $600,000.00, subject to the rights of the Committee and Debtors to object to the reasonableness of such expenses; and it is further

15. **ORDERED** that the Expense Reimbursement shall be paid to the Proposed Stalking Horse subject to the terms and conditions of Section 6.17(f) of the Gilmore APA; and it is further

16. **ORDERED** that the Sale Hearing shall be held on **November 27, 2018, at 11:00 a.m. (prevailing Central time)**; and it is further

17. **ORDERED** that any objection on any basis to the proposed sale of the Proposed Purchased Assets must be filed in writing with the court no later than **November 20, 2018, at 5:00 p.m. (prevailing Central time)** (the "*Objection Deadline*") and served on (a) counsel to the Stalking Horse Purchaser, c/o David W. Houston IV, Burr & Forman, 222 Second Avenue South, Suite 2000, Nashville, Tennessee 37201, 615-724-3315 (facsimile), dhouston@burr.com, (b) counsel to the Debtors, c/o David E. Gordon, Polsinelli PC, 1201 West Peachtree Street, Suite 1100, Atlanta, Georgia 30309, dgordon@polsinelli.com, (c) counsel to MidCap Financial, c/o David E. Lemke, Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219, david.lemke@wallerlaw.com and (d) counsel ServisFirst Bank, David G. Thompson, Neal & Harwell, PLC, 1201 Demonbreun Street, Suite 1000, Nashville, Tennessee 37203, dthompson@nealharwell.com; and it is further

18. **ORDERED** that the Debtors shall: (A) provide notice to (i) all relevant federal, state and local taxing and regulatory authorities or offices that have a reasonably known interest

65341373.4

in the relief requested in the Sale Procedures Motion; (ii) counsel to the Proposed Stalking Horse; (iii) counsel to the Committee; (iv) the parties set forth on the certificate of service of the Sale Procedures Motion and any other party that has entered an appearance in this case or otherwise requested notice in this case; and (v) all of the persons or entities the Debtors have identified as (a) having an interest in the Proposed Purchased Assets or (b) potentially interested in acquiring the Proposed Purchased Assets; and (B) publish a notice, substantially in the form attached to the Sale Procedures Motion as **Exhibit C**, once in the (*Monroe Journal and Daily Journal* (both papers for publishing legal notices in Amory, Mississippi)) and shall publish the Auction Notice on the website for these Chapter 11 Cases maintained by BMC Group (www.bmcgroup.com/curaehealth) prior to the proposed Auction, which publication shall be deemed due, timely, good, and sufficient notice of the entry of this order and all proceedings to be held in accordance with this order; and it is further

19.     **ORDERED** that the notice already provided for in the Sale Procedures Motion together with the notice directed to be given in accordance with this order shall be deemed good and sufficient notice of the Sale Procedures Motion, this Sale Procedures Order, and the relief sought by the Sale Procedures Motion, and such notice shall be deemed to satisfy the requirements of Rule 6004(a) and Rule 6006(c) of the Bankruptcy Rules and all applicable Local Rules; and it is further

20.     **ORDERED** that the terms and conditions of this order shall be immediately effective and enforceable upon its entry; and it is further

21.     **ORDERED** that this court retains exclusive jurisdiction with respect to all matters arising from or related to this order or its enforcement.

65341373.4

**This Order Was Signed And Entered Electronically As Indicated At The Top Of The First Page**

Prepared and submitted by:

POLSINELLI PC

/s/ Michael Malone
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (*Pro Hac Vice*)
Caryn E. Wang (*Pro Hac Vice*)
1201 West Peachtree Street NW, Suite 1100
Atlanta, Georgia
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

### SCHEDULE 1
### BIDDING PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] ) | Case No. 18-05665 |
| ) | |
| 1721 Midpark Road, Suite B200 ) | Judge Walker |
| Knoxville, TN 37921 ) | |
| Debtors. ) | Jointly Administered |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**

On September __, 2018, the United States Bankruptcy Court for the Middle District of Tennessee (the "***Court***") entered an *Order (I) Authorizing and Approving Bidding Procedures for the Sale of Gilmore Medical Center, (II) Authorizing the Sale of Gilmore Medical Center Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Stalking Horse Purchaser, Expense Reimbursement, and Overbid Protections, (IV) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling an Auction, (VI) Scheduling a Hearing and Objection Deadlines With Respect to the Sale of Gilmore Medical Center, (VII) Approving the Form and Manner of Notice Thereof, and (VIII) Granting Related Relief* (Dkt. No. ___) (the "***Sale Procedures Order***"),[2] by which the Court approved the following procedures (the "***Bidding Procedures***") governing the solicitation of bids and conducting an auction (the "***Auction***") for the sale (the "***Sale***") of substantially all assets of Gilmore Medical Center, a 95 bed acute care hospital and related healthcare operations and facilities located in Amory, Mississippi (the "**Gilmore Hospital**") (as more fully described in the Gilmore APA, the "***Proposed Purchased Assets***").

**I.**     **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "***Sale Notice Parties***"):

     A.     **Debtors**: Curae Health, Inc., Stephen N. Clapp, steve.clapp@curaehealth.org

     B.     **Debtors' Counsel**: Polsinelli PC, David E. Gordon, dgordon@polsinelli.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

[2]    All capitalized terms used but not defined herein shall have the meaning given to them in the Sale Procedures Order.

C. **Debtors' Financial Advisors**: GlassRatner, Marshall Glade, mglade@glassratner.com

D. **Counsel to the Committee**: Sills Cummis & Gross, P.C., Andrew Sherman, asherman@sillscummis.com

E. **Committee's Financial Advisor**: EisnerAmper, Allen Wilen, allen.wilen@eisneramper.com

## II. Potential Bidders.

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a sale (a "***Potential Bidder***") must deliver or have previously delivered, if determined to be necessary by the Debtors in their sole discretion, the following documents:

(i) an executed confidentiality agreement on terms acceptable to the Debtors (a "***Confidentiality Agreement***"), to the extent not already executed;

(ii) identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and

(iii) unless publicly available in a filing under applicable securities laws or regulations, the most current audited and latest unaudited financial statements (the "***Financials***") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Proposed Purchased Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors and (y) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale).

## III. Due Diligence.

Only Potential Bidders whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate a transaction for the purchase of the Proposed Purchased Assets shall be eligible to receive due diligence information and access to the Debtors' electronic data room, physical data room, and to additional non-public information regarding the Debtors. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement**. The Debtors will provide to each Potential Bidder that satisfies the foregoing reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any such Potential Bidder to the Debtors' electronic data room. For all Potential Bidders, the due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Proposed Purchased Assets, liabilities of the Debtors, or the potential sale of the Proposed Purchased Assets to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives, to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; provided that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate a transaction to acquire the Proposed Purchased Assets.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder that intends in good faith to, or has the capacity to, consummate a transaction to acquire the Proposed Purchased Assets.

**All due diligence requests must be directed to Debtors' Counsel and Debtors' Financial Advisors.**

(a)     **Communications with Potential Bidders.**

Notwithstanding anything to the contrary in the Bidding Procedures, all substantive direct communications between and amongst Potential Bidders shall involve the Debtors and the Debtors' advisors, to the extent reasonably practicable.

(b)     **Due Diligence from Potential Bidders.**

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate a transaction to acquire the Proposed Purchased Assets or discussions with other Potential Bidders regarding any topic and with any party regarding the Debtors and/or any of the Proposed Purchased Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in the Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process, in connection with a potential transaction to acquire the Proposed Purchased Assets, or otherwise in accordance with the terms of any applicable Confidentiality Agreement.

65341373.4

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such Potential Bidder (or Qualified Bidder) and the Debtors; (ii) to the applicable Potential Bidder or Qualified Bidder; and (iii) as otherwise required or allowed by any applicable Confidentiality Agreement with respect to a particular Potential Bidder or Qualified Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**IV.    Bid Requirements.**

A proposal, solicitation, or offer for a purchase and sale of the Proposed Purchased Assets (each, a "***Bid***") that is submitted in writing and satisfies each of the following requirements (the "***Bid Requirements***") as determined by the Debtors, in their reasonable business judgment, Committee, MidCap Financial Trust, and ServisFirst Bank (collectively, the "***Sale Notice Parties***"), shall constitute a "***Qualified Bid***."

**(a)    Assets**. Each Bid must clearly state which assets and liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.

**(b)    Purchase Price** Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for each individual Proposed Purchased Asset subject to the applicable asset package, including and identifying separately any cash and non-cash components (the "***Purchase Price***"), and the cash component of such purchase price shall be at least $10.5 million.

**(c)    Deposit**. On or before the Bid Deadline, each Bid, other than a credit bid, must be accompanied by a cash deposit in the amount equal to 5% of the aggregate Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "***Deposit***").

**(d)    Assumption of Obligations, Executory Contracts, and Leases**. Each Bid must clearly state which liabilities of the Debtors the bidder is agreeing to assume, including but not limited to any executory contracts or unexpired leases the bidder proposes to assume.

**(e)    Provider Agreements**. Each Bid must provide that the bidder, if successful, will assume the Debtor's Medicare and Medicaid provider agreements or will obtain its own within a timeframe acceptable to the Debtors in consultation with the Sale Notice Parties.

**(f)    Qualified Bid Documents**. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transaction(s) contemplated by the Bid and shall include a schedule of assumed contracts, to the extent applicable to the Bid, and all other material documents integral to such Bid (the "***Qualified Bid Documents***"). Such documents must be based on form documents provided by the Debtors (including a summary of each Bid as may be reasonably requested by the Debtors).

4

**(g)** **Committed Financing**. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the transaction(s) set forth in its Bid with cash on hand, each Bid must include unconditionally committed financing from a reputable financial institution documented to the satisfaction of the Debtors that demonstrates that the Potential Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Proposed Purchased Assets and the proposed transaction(s). Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

**(h)** **Adequate Assurance of Future Performance**. Each Bid shall contain sufficient financial and other information regarding the bidder such as to constitute adequate assurance of future performance, as set forth in section 365(b)(1)(C) of the Bankruptcy Code, with respect to each executory contract and unexpired lease that the bidder proposes to have assumed and assigned to it.

**(i)** **Contingencies; No Financing or Diligence Outs**. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment.

**(j)** **Identity**. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that Debtors' Financial Advisor and Debtors' Counsel should contact regarding such Bid.

**(k)** **Demonstrated Financial Capacity**. A Potential Bidder must have, in the Debtors' business judgment, the necessary financial capacity to consummate the proposed transaction(s) required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

**(l)** **Time Frame for Closing**. A Bid by a Potential Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, in consultation with the Sale Notice Parties.

65341373.4

**(m)** **Binding and Irrevocable**. A Potential Bidder's Bid shall be irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder.

**(n)** **Expenses; Disclaimer of Fees**. Each Bid, other than the Stalking Horse Purchaser's Bid, must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and, by submitting its Bid, is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under Section 503(b) of the Bankruptcy Code.

**(o)** **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

**(p)** **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's Bid.

**(q)** **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

**(r)** **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the Sale, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).

**(s)** **Consent to Jurisdiction**. The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the documents governing the sale of the

65341373.4

Proposed Purchased Assets or any Bid or Qualified Bid, and the Closing, as applicable.

**(t)** **Bid Deadline**. Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 5:00 p.m. (prevailing Central Time) on **November 12, 2018** (the "*Bid Deadline*") by each of the Notice Parties.

## V. Qualified Bidders.

(a) A "*Qualified Bidder*" is a Potential Bidder whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate a transaction for the purchase of the Proposed Purchased Assets, whose Bid is a Qualified Bid, and that the Debtors determine should be considered a Qualified Bidder, in consultation with the Sale Notice Parties. Within one business day after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.

(b) If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below), if any, and all accumulated interest on or within three (3) business days after the Bid Deadline.

(c) After the Bid Deadline, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw a Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; provided that any Qualified Bid may be improved at the Auction. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

(d) For purposes of the Bidding Procedures, the Stalking Horse Purchaser shall be deemed Qualified Bidder, provided, however, that on or before the Bid Deadline, the Stalking Horse Purchaser shall provide a list of all executory contracts and unexpired leases the Stalking Horse Purchaser proposed to assume. The Stalking Horse Purchaser may terminate the Gilmore APA prior to the Bid Deadline pursuant to the provisions of the Gilmore APA, provided, however, that the Stalking Horse Purchaser shall lose all Stalking Horse Purchaser protections provided herein in the event of such termination. In addition, after the Bid Deadline, the Stalking Horse Purchaser may not terminate the Gilmore APA pursuant to any walk rights provided in the Gilmore APA.

## VI. Right to Credit Bid.

Any Qualified Bidder who has a valid, perfected, and undisputed lien on any of the Proposed Purchased Assets (a "*Secured Creditor*") and the right and power to credit bid claims

65341373.4

secured by such liens, shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims, within the meaning of and subject to section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.

## VII. Auction.

If the Debtors receive more than one Qualified Bid for the Proposed Purchased Assets, the Debtors will conduct the Auction, to determine the Successful Bidders with respect to the Proposed Purchased Assets. If the Debtors do not receive a Qualified Bid for the Proposed Purchased Assets, the Debtors will not conduct the Auction.

No later than two (2) business days after the Bid Deadline, at 5:00 p.m. (prevailing Central Time), the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid or combination of Qualified Bids, for which such Qualified Bidder submitted a Qualified Bid or combination of Qualified Bids, as determined in the Debtors' reasonable business judgment, in consultation with the Sale Notice Parties (the "***Baseline Bid***"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid may take into account any factors the Debtors reasonably deem, in consultation with the Sale Notice Parties, relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estates pursuant to the Qualified Bid); (b) the likelihood of the Qualified Bidder's ability to close, and the timing of closing, the transaction(s) contemplated by the Qualified Bid; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (d) the tax consequences of such Qualified Bid (collectively, the "***Bid Assessment Criteria***").

The Auction shall take place at 9:00 a.m. (prevailing Central Time) on **November 15, 2018**, at the offices of Polsinelli PC, in Nashville, Tennessee, or such later date and time as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

### (a) The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bids. All incremental Bids made thereafter for the Proposed Purchased Assets shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on the Proposed Purchased Assets. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, and the members of and advisors to the Sale Notice Parties, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in

65341373.4

person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

**(b)** **Terms of Overbid**.

"*Overbid*" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

(i) **Initial Overbid**. The initial overbid shall exceed the Baseline Bid by $100,000.

(ii) **Minimum Overbid Increment**. Any Overbid following the initial overbid or following any subsequent Prevailing Highest Bid (as defined below) for the Proposed Purchased Assets shall be in increments of value equal to (or exceeding) $100,000. The Debtors may establish different overbid increments at the Auction for any portion or combination of the Proposed Purchased Assets, as determined by the Debtors in an exercise of their business judgment, in consultation with the Sale Notice Parties.

(iii) **Conclusion of Each Overbid Round**. Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend time to time, the "*Overbid Round Deadline*") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, after consultation with the Sale Notice Parties, an Overbid as being higher or otherwise better than the best Bid the Debtors had prior to receiving such Overbid (in each instance, the "*Prevailing Highest Bid*"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(iv) **Overbid Alterations**. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Sale Notice Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(v) **Overbids by the Stalking Horse Purchaser.** The Stalking Horse Purchaser shall be permitted to include the full amount of the Expense Reimbursement in each bid by the Stalking Horse Purchaser for the

9

purposes of comparison to any Overbid, in connection with each round of bidding at the Auction.

**(c)      Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Sale Notice Parties, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount.

**(d)      Closing the Auction.**

(i)      The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, in consultation with the Sale Notice Parties to be the highest or otherwise best Bid for the Proposed Purchased Assets. Such Bid shall be declared the "***Successful Bid***," and such Qualified Bidder, the "***Successful Bidder***" and at which point the Auction will be closed as to the Proposed Purchased Assets subject to such Successful Bid. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)      For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under the applicable law.

(iii)      The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(iv)      As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bid(s) and Backup Bid(s) to be filed with this court.

(v)      Consistent with sections (i)–(iv) above and Section 15 below, the Debtors' presentation to the Bankruptcy Court for approval of a selected bid as a Successful Bid will not constitute the Debtors' acceptance of such bid. The Debtors will have accepted the Successful Bid only if and when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

65341373.4

(e)     **No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding or otherwise in connection with the sale of the Proposed Purchased Assets; and (ii) its Qualified Bid and subsequent Overbids are a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## VIII.  Backup Bidder.

The Qualified Bidder with the second-best Qualified Bid (the "***Backup Bid***") at the Auction (if the Auction is conducted) shall be required to serve as a backup bidder (the "***Backup Bidder***"). The Backup Bidder's Deposit, if any, shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.  If the Backup Bidder is the Proposed Stalking Horse, the Proposed Stalking Horse shall serve as the Backup Bidder for only thirty (30) days following the Auction. If a Successful Bidder fails to consummate its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Qualified Bid of such Backup Bidder without further order of the Court or notice to any party.

In such case, the defaulting Successful Bidder's Deposit, if any, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## IX.  Highest or Otherwise Best Bid.

When determining the highest or otherwise best Qualified Bid or Overbid, as compared to other Qualified Bids or Overbids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate, in consultation with the Sale Notice Parties: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estates pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (d) the tax consequences of such Bid; and (e) community benefit.

## X.  Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Sale Notice Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Proposed Purchased Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids, Qualified Bids, or Overbids.

11

## XI. Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

## XII. Confirmation and Sale Hearing.

A hearing to consider approval of the results of the Auction and sale of the Proposed Purchased Assets (the "*Sale Hearing*") will take place on November 27, 2018 at 11:00 a.m. (prevailing Central Time). Any objection on any basis to the proposed sale of the Proposed Purchased Assets must be filed with the court no later than **November 20, 2018, at 5:00 p.m. (prevailing Central time)** (the "*Objection Deadline*").

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval.

## XIII. No Modification of Bidding Procedures.

Except as provided by Section X of these Bidding Procedures, these Bidding Procedures may not be modified except with the Debtors' express written consent.

## XIV. Return of Deposit.

The Deposit, if any, of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing. The Deposits, if any, for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or within three (3) business days after the Auction. Upon the return of the Deposits, if any, their respective owners shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit, if any, deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XV. Fiduciary Out.

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of the Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors,

65341373.4

board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

13

65341373.4

**EXHIBIT A**

<u>**AUCTION NOTICE**</u>

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] | ) | Case No. 18-05665 |
| | ) | |
| 1721 Midpark Road, Suite B200 | ) | Judge Walker |
| Knoxville, TN 37921 | ) | |
| Debtors. | ) | Jointly Administered |

## NOTICE OF AUCTION FOR THE SALE OF DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that on September __, 2018, the United States Bankruptcy Court for the Middle District of Tennessee (the "***Court***") entered an *Order (I) Authorizing and Approving Bidding Procedures for the Sale of Gilmore Medical Center, (II) Authorizing the Sale of Gilmore Medical Center Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Stalking Horse Purchaser, Expense Reimbursement, and Overbid Protections, (IV) Establishing Certain Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling an Auction, (VI) Scheduling a Hearing and Objections Deadlines With Respect to the Sale of Gilmore Medical Center, (VII) Approving the Form and Manner of Notice Thereof, and (VIII) Granting Related Relief* [Dkt. # ___] (the "***Sale Procedures Order***") approving Bidding Procedures for the sale of the Gilmore Medical Center, a 95 bed acute care hospital and related healthcare operations and facilities located in Amory, Mississippi as more fully described in the Gilmore APA.[2]

Copies of the Sale Procedures Order, the Bidding Procedures, or other documents related thereto are available upon request to Caryn E. Wang by calling (404) 253-6016 or visiting the Debtors' restructuring website at www.bmcgroup.com/curaehealth.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Sale Procedures Order, on **November 15, 2018 at 9:00 a.m. (prevailing Central Time)** at the offices of Polsinelli PC, 401 Commerce Street, Suite 900, Nashville, TN 37219.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **Monday November 12, 2018, at 5:00 p.m.** (prevailing Central Time), and that any person or entity who wishes to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Sale Procedures Order or the Bidding Procedures, as applicable.

participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment and in consultation with the Committee, MidCap Financial Trust, and ServisFirst Bank in accordance with the Bidding Procedures.

DATED: _____, 2018

Respectfully submitted,

POLSINELLI PC

/s/ Michael Malone
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (*Pro Hac Vice*)
Caryn E. Wang (*Pro Hac Vice*)
1201 West Peachtree Street NW, Suite 1100
Atlanta, Georgia 30309
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

65341373.4

**EXHIBIT B**
<u>**ASSUMPTION NOTICE**</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] | ) | Case No. 18-05665 |
| | ) | |
| 1721 Midpark Road, Suite B200 | ) | Judge Walker |
| Knoxville, TN 37921 | ) | |
| Debtors. | ) | Jointly Administered |

**NOTICE OF: (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY,**
**AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY;**
**AND (II) CURE AMOUNTS RELATED TO THE FOREGOING**

PLEASE TAKE NOTICE THAT, on August 31, 2018, the above-captioned debtors (the "***Debtors***") filed the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of Gilmore Medical Center, (II) Authorizing the Sale of Gilmore Medical Center Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Stalking Horse Purchaser, Break-up Fee, and Overbid Protections, (IV) Establishing Certain Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling an Auction, (VI) Scheduling a Hearing and Objections Deadlines With Respect to the Sale of Gilmore Medical Center, (VII) Approving the Form and Manner of Notice Thereof, and (VIII) Granting Related Relief* (Dkt. No. 79) (the "***Sale Procedures Motion***").[2]

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sale Procedures Motion, the Debtors sought, among other things, authorization and approval of (a) the sale of the Gilmore Hospital, pursuant to the Gilmore APA, free and clear of all liens, claims, encumbrances and other interests (the "***Sale***"), (b) the assumption and assignment of certain executory contracts (the "***Contracts***") and unexpired leases (the "***Leases***"), in connection with the Sale, and (c) scheduling a final hearing to approve the Sale, including the assumption and assignment of the Contracts and Leases.

PLEASE TAKE FURTHER NOTICE that the Gilmore APA contemplates, and the proposed order approving the Sale, if entered, shall authorize and approve, the assumption and assignment of certain Contracts and Leases, pursuant to section 365 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

[2] Capitalized terms used in this notice and not otherwise defined shall have the meanings ascribed to them in the Sale Procedures Motion.

PLEASE TAKE FURTHER NOTICE that the Debtors maintain a schedule of Contracts and Leases the Debtors **may** assume and assign in connection with the Sale and you are receiving this notice because you are a party to one or more of the Contracts and Leases the Debtor **may** assume and assign in connection with the Sale.

PLEASE TAKE FURTHER NOTICE that receipt of this notice does not guarantee that the Contract or Lease to which you are party will ultimately be assumed and assigned, because the party ultimately purchasing the Gilmore Hospital pursuant to the Gilmore APA reserves the right to exclude any assumable executory contract or unexpired lease; however,

1.      Please review the cure amounts set forth on **Exhibit 1** to this notice for your Contract or Lease.

2.      If you agree with the respective cure amount on **Exhibit 1** and otherwise do not object to the Debtors' assumption and assignment of your Contract or Lease, you are not required to take any further action.

3.      Objections, if any, to the proposed assumption and assignment of a Contract or Lease (each, an "***Assumption Objection***"), including objections to cure amounts, must be made in writing and filed with the United States Bankruptcy Court so as to be received no later than ten (10) days after the date of this notice (the "***Objection Deadline***") by (a) the Debtors, (b) counsel to the Stalking Horse Purchaser, c/o David W. Houston IV, Burr & Forman, 222 Second Avenue South, Suite 2000, Nashville, Tennessee 37201, 615-724-3315 (facsimile), dhouston@burr.com, (c) counsel to MidCap Financial, c/o David E. Lemke, Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219, david.lemke@wallerlaw.com, (d) counsel ServisFirst Bank, David G. Thompson, Neal & Harwell, PLC, 1201 Demonbreun Street, Suite 1000, Nashville, Tennessee 37203, dthompson@nealharwell.com, and (e) counsel to the Committee.

4.      If a timely Assumption Objection is filed solely as to the cure amount (a "***Cure Objection***"), then the Contract or Lease shall nevertheless be assumed and assigned to the purchaser of the Gilmore Hospital upon the closing of the Sale, the purchaser shall pay the undisputed portion of the cure amount on or as soon as reasonably practicable after the closing of the Sale, and the disputed portion of the cure amount shall be paid as soon as practicable after the resolution of the dispute, either through good faith discussion or with the aid of the court.

5.      If a timely Assumption Objection is filed that objects to the assumption and assignment on a basis other than the cure amount, the Debtors, the purchaser, and the objecting non-debtor party to the Contract or Lease shall meet and confer in good faith to attempt to resolve any such objection without intervention by the court; however, if the Debtors determine that the objection cannot be resolved without judicial intervention, then at the discretion of the Debtors and the purchaser, the objection shall be determined by the court at the Sale Hearing or such other date as determined by the court. If the court determines at such hearing that the Contract or Lease subject to the Assumption Objection should not be assumed and assigned, then such Contract or Lease shall not be assumed or assigned to the purchaser.

2

6.      If the Debtors, the purchaser, and the non-debtor counterparty to a Contract or Lease resolves any Assumption Objection, they shall enter into a written stipulation, which stipulation is not required to be filed with or approved by the court and shall not be assigned to the purchaser.

PLEASE TAKE FURTHER NOTICE that, unless an Assumption Objection is filed on or before the Objection Deadline, you shall be deemed to have consented to the assumption and assignment of your Contract or Lease and the associated cure amount, and you shall be forever barred from objecting to the cure amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the purchaser.

PLEASE TAKE FURTHER NOTICE that, up to Closing Date, the purchaser may, in its sole discretion, subject to certain limitations specified in the Gilmore APA, exclude any Contract or Lease by providing notice to the Debtors and you. Upon such designation, the Contract or Lease excluded by the purchaser shall not be deemed to be, or to have been, assumed or assigned, and shall remain subject to assumption, rejection, or assignment by the Debtors.

PLEASE TAKE FURTHER NOTICE that the Debtors' decision to assume and assign a Contract or Lease is subject to approval by the court and consummation of the Sale and, absent such approval and consummation, no Contract or Lease will be assumed or assigned to the purchaser and shall in all respects remain subject to further administration by the court in accordance and subject to the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, upon approval by the court and consummation of the Sale, all Contracts and Leases to be assumed and assigned by the Debtors to the purchaser shall be deemed assumed and assigned to the purchaser on the Closing Date.

PLEASE TAKE FURTHER NOTICE that, until the Assumption Effective Date, assumption and assignment of any Contract or Lease is subject to the purchaser's rights to add or exclude any Contract or Lease.

PLEASE TAKE FURTHER NOTICE that Debtors shall, on or as soon as practicable after November 13, 2018, provide adequate assurance of future performance, as set forth in section 365(b)(1)(C) of the Bankruptcy Code, with respect to any executory contract or unexpired lease listed in this notice, to any party who submits a written request to Caryn E. Wang at cewang@polsinelli.com or (404) 253-6016.

PLEASE TAKE FURTHER NOTICE that this notice and the terms set forth in this notice are subject in all respects to the terms and conditions of the Sale Procedures Motion and the court's orders approving the Sale Procedures Motion and Sale.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.