# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] | ) | Case No. 18-05665 |
| | ) | |
| 1721 Midpark Road, Suite B200 | ) | Judge Walker |
| Knoxville, TN 37921 | ) | |
| Debtors. | ) | Jointly Administered |

**INTERIM ORDER ON DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO: (I)(A) SHUT DOWN THE CLARKSDALE HOSPITAL; (B) REJECT UNEXPIRED LEASES AND CONTRACTS OF CLARKSDALE; AND (C) RECEIVE RELATED RELIEF; OR, IN THE ALTERNATIVE, (II)(A) TRANSFER OPERATIONS OF THE CLARKSDALE HOSPITAL TO A NEW OPERATOR FREE AND CLEAR OF ANY LIENS, CLAIMS, OR ENCUMBRANCES PURSUANT TO AN OPERATIONS TRANSFER AGREEMENT TO BE FILED WITH THE COURT; (B) ASSUME AND ASSIGN THE COAHOMA COUNTY LEASE AND CERTAIN OTHER UNEXPIRED LEASES AND CONTRACTS REQUESTED BY THE NEW OPERATOR; AND (C) RECEIVE RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") for entry of an order, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 9075-1 of the Local Rules of the Bankruptcy Court for the Middle District of Tennessee (the "**Local Rules**") authorizing, but not directing, the Debtors to: (I)(A) shut down the Clarksdale Hospital (as defined below); (B) reject unexpired leases and contracts of Clarksdale; and (C) receive necessary related relief; or, in the alternative, (II)(A)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

transfer the operations of the Clarksdale Hospital to a new operator free and clear of all liens, claims, and encumbrances; (B) assume and assign the Coahoma County Lease and certain other unexpired leases and contracts of Clarksdale requested by the new operator; and (C) receive necessary related relief (Docket No. 314), all as more fully set forth in the Motion; and upon the record of the hearing held on the Motion on October 23, 2018 (the "**Hearing**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given pursuant to Local Rule 9075-1; and it appearing that no other or further notice of the Motion is required; and this Court having found that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on an interim basis as set forth below.

2. Due to the Debtors' defaults on the lease for the Clarksdale Hospital and the Debtors' anticipatory repudiation of the obligations of the Clarksdale Hospital lease by their proposed closure of the Clarksdale Hospital, Coahoma County, Mississippi (the "**County**"), as alleged by the County, the County has elected to cure certain defaults as allowed by its Lease Agreement with the Debtors in order to resume operations of the Clarksdale Hospital and keep it open and operating for the benefit of the residents of the County and the employees of the Clarksdale Hospital.

3. At the Hearing, counsel to the Debtors and counsel to the County announced that the Debtors and the County had reached an agreement pursuant to which Clarksdale Hospital can remain open with certain financial support of the County while the County and Debtors work toward a transition of operations of Clarksdale Hospital to the County or to a third-party operator selected by the County.

4. The agreement announced by the Debtors and County at the Hearing contains two options pursuant to which the County, subject to approval of the Coahoma County Board of Supervisors (which has since been obtained) and in compliance with applicable law, will provide financial support to maintain the operations of Clarksdale Hospital until a transfer of operations is fully and finally effectuated.

5. Under the first option (the "**IMA Option**"), on or before 12:01 a.m. on November 5, 2018 (the "**Effective Time**"), the County, or a designated third-party operator approved by the County ("**Third Party**"), and the Debtors will enter into an Interim Management Agreement (the "**IMA**") pursuant to which the County or a Third Party: (1) will take over management responsibility for Clarksdale Hospital as of the Effective Time on an as is / where is basis, without any representations or warranties, without any indemnification obligations by the Debtors or their estates to the County or a Third Party, and without any remuneration of the County or Third Party by the Debtors or their estates, however, the County or Third Party expressly does not assume any liabilities or obligations of the Debtors or their estates created by the actions or inactions of the Debtors prior to the Effective Time, and (2) upon the Effective Time, will become financially responsible for all profits, losses, obligations, liabilities, and amounts due to third parties, suppliers, and vendors of Clarksdale Hospital arising after the Effective Time, including, without limitation, all payroll (including all applicable payroll taxes)

3

and benefits owed to the employees and staff of Clarksdale Regional Medical Center, Inc. (the "**Payroll Obligations**") and all other expenditures of any kind or nature incurred in connection with or attributable to the operations of Clarksdale Hospital.

6. Under the IMA Option, as of the Effective Time, the County or a Third Party, if applicable, will own and take possession of all receivables generated through the operations of Clarksdale Hospital arising after the Effective Time. The form of IMA to be executed under the IMA Option and all ancillary documents to be executed in connection therewith shall in all respects be acceptable to the Debtors, the County and Third Party, if applicable, the Committee, MidCap, the United States Trustee, and ServisFirst Bank and shall be filed with the Court for approval prior to its execution by the Debtors and the County or Third Party. From and after the Effective Time, neither the Debtors nor their estates shall be responsible for any claims, obligations, amounts or liabilities of any kind or nature relating to or arising from the post-Effective Time operations of Clarksdale Hospital (collectively, "**Post-Effective Time Liabilities**"); provided however, the Debtors shall remain obligated for any claims, obligations, amount or liabilities of any kind or nature relating to or arising from the period prior to the Effective Time, even if such claims, obligations, amount or liabilities are asserted post-Effective Time.

7. Except as provided herein, nothing in this Order will constitute a waiver of County's rights under the Lease Agreement, or be construed as a termination of the Lease Agreement. The County specifically reserves all rights and remedies as to obligors or guarantors under the Lease Agreement other than the Debtors except for any possible lease rejection claim. To the extent any Post-Effective Time Liabilities are asserted against the Debtors or their estates, the County or Third Party, if applicable, shall promptly pay or reimburse

4
65804400.10

the Debtors' estates for payment of any funds in connection with any and all such Post-Effective Time Liabilities and operations. Subject to their fiduciary duties and available resources, the Debtors will cooperate in a commercially reasonable manner with the County and/or Third Party and their agents to effect an orderly transition, including but not limited to the assumption and assignment of all provider agreements with federal and state agencies and private payors subject to the Bankruptcy Code and the terms and conditions of this Order.

8. Under the second option (the "**Interim Payroll Option**"), in the event the County or a Third Party is not prepared to enter into and execute an IMA with the Debtors on or before the Effective Time, the County shall pay in advance, without any right of repayment, recoupment, setoff or other recourse of any kind against the Debtors or their estates, all Payroll Obligations, estimated at approximately $1,250,000 per bi-weekly pay period, accruing after the Effective Time for the period of November 5 to November 19, 2018. If, by November 19, 2018, the County is still not prepared to enter into and execute an IMA with the Debtors, then the County shall pay all Payroll Obligations for the period of November 20 to December 4, 2018 in order to further extend the deadline to enter into an IMA. The County shall pay the Payroll Obligations relating to the two-week period beginning on November 5, 2018 and ending on November 19, 2018, on or before November 5, 2018. The County will continue to fund to the Debtors in advance all Payroll Obligations on a bi-weekly basis for all Payroll Obligations that accrue until such time as the County, or a Third Party, and Debtors enter into the IMA or the OTA (defined below). In the event the County determines that the County or Third Party ultimately cannot enter into the IMA or the OTA, the County, subject in all respects to Paragraph 14 of this Order: (a) shall notify the Debtors that the County cannot further proceed with the transactions set forth in this Order (the "Termination Notice"); (b) shall fund a final, additional

two week payroll to provide the Debtors with sufficient time to shut down operations of the Clarksdale Hospital; and (c) shall not oppose the shut down of Clarksdale Hospital.  All such payments shall be made directly into the Debtors' Payroll Account to be used to fund only the Payroll Obligations in the actual amounts incurred and shall not be used for any other purpose.

9. The Debtors and the County shall, within fifteen (15) days after the end of each payroll period, reconcile the actual Payroll Obligations such that the County only pays the actual Payroll Obligations.  Under the Interim Payroll Option, the Debtors, subject to the *Interim Order (I) Authorizing The Debtors To (A) Obtain Postpetition Secured Financing And (B) Utilize Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay and (V) Scheduling a Final Hearing* entered in these cases on August 29, 2018 (Dkt. 60) (the "**Interim DIP Order**"), will continue to own and possess all receivables generated through the operations of Clarksdale Hospital until such time as the County and Debtors enter into the IMA or the OTA.

10. At such time as the County or a Third Party is ready to assume full operation of Clarksdale Hospital, the parties shall enter into an Operations Transfer Agreement (the "**OTA**") on an as is / where is basis, without any representations or warranties, and without any indemnification obligations by the Debtors or their estates to the County or a Third Party, however, that except as provided herein, the County or a Third Party shall not be obligated to assume any liabilities or obligations created by the actions or inactions of the Debtors prior to the earlier of the effective date of the IMA or the effective date of the OTA.  The form of the OTA and all ancillary documents to be executed in connection therewith shall in all respects be acceptable to the Debtors, the County, a Third Party, if applicable, the Committee, MidCap, and ServisFirst Bank and shall be filed with the Court for approval prior to its execution.  The

execution of the OTA shall not limit, alter or otherwise modify the treatment of Post-Effective Time Liabilities set forth herein.

11. The County or a Third Party, if applicable, shall be solely responsible for the provision of adequate assurance of future performance and payment of any cure amounts in connection with the assumption and assignment of any executory contracts and provider agreements to the County or a Third Party in connection with the OTA, and shall have no responsibility to cure or otherwise pay any rejected executory contracts or rejected provider agreements. The County or a Third Party, if applicable, shall have the sole discretion to decide which executory contracts and provider agreements, if any, shall be assumed and assigned in connection with the OTA in accordance with the Bankruptcy Code and subject to Bankruptcy Court approval. The Debtors shall file a notice listing executory contracts proposed to be assumed and assigned by the Debtors to the County or a Third Party and proposed cure amounts within five (5) business days after the execution of the OTA and set a deadline fourteen days thereafter for any objections to the proposed assumption and assignment of such executory contracts. If any timely objections to the proposed assumption and assignment of executory contracts have been filed, the Court shall schedule a hearing to determine whether the assumption and assignment should be authorized and the applicable cure amount.

12. Notwithstanding anything herein to the contrary, all executory contracts not previously rejected by the Debtors shall remain obligations of the Debtors under either the IMA Option and/or the Interim Payroll Option until such time that such executory contracts are rejected or assumed and assigned in accordance with the provisions of Paragraph 11 of this Order. For the avoidance of doubt, the rights of all executory contract counterparties, including all rights to assert any cure and/or rejection damage amounts, are expressly preserved hereunder.

7

65804400.10
Case 3:18-bk-05665    Doc 391    Filed 11/02/18    Entered 11/02/18 14:25:57    Desc Main
Document    Page 7 of 9

13. Subject to further order of the Court, all tangible personal property owned by the Debtors and located at the Clarksdale Hospital will be transferred to the County free and clear of all liens, claims and encumbrances for such consideration and on such terms that are agreeable to the Debtors, the Committee, MidCap and ServisFirst Bank, with all liens, claims and encumbrances attaching to the proceeds.

14. In the event the County provides the Termination Notice or fails to fund the Payroll Obligations as required by this Order, the Debtors shall promptly notify the Court and the Patient Care Ombudsman and seek an emergency hearing at which the Debtors shall request authority on an expedited basis to take all appropriate actions to ensure an orderly shutdown of the operations of Clarksdale Hospital.

15. The Court shall hold a telephonic status conference regarding the status of Clarksdale Hospital on **November 20, 2018, at 2:00 Central Time**.

16. The relief set forth herein is entered on an interim basis. Absent further order of this Court, this Interim Order shall become a final order at the Effective Time.

17. Good cause exists to waive the stay provisions of Bankruptcy Rules 6004(h) and the Court hereby waives such provisions. This Interim Order shall become effective immediately upon its entry.

18. The Debtors are authorized, but not directed, to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

19. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

**This Order Was Signed And Entered Electronically As Indicated At The Top Of The First Page**

APPROVED FOR ENTRY:

**POLSINELLI PC**

*/s/ Michael Malone*
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (Admitted *Pro Hac Vice*)
Caryn E. Wang (Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Atlanta, Georgia
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Counsel to the Debtors and
Debtors in Possession*