IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Curae Health, Inc., *et al.*[1] | ) | Case No. 18-05665 |
| | ) | |
| 1721 Midpark Road, Suite B200 | ) | Judge Walker |
| Knoxville, TN 37921 | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER (I) AUTHORIZING, APPROVING, AND DIRECTING THE
SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF PANOLA MEDICAL CENTER
TO THE SUCCESSFUL BIDDER IN ACCORDANCE WITH THE BIDDING
PROCEDURES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING THE PANOLA
APA; (III) APPROVING THE DEBTORS' MARKETING AND SALE PROCESS; AND
(IV) GRANTING RELATED RELIEF**

Upon consideration of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of Panola Medical Center, (II) Authorizing the Sale of Panola Medical Center Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Stalking Horse Purchaser, Break-up Fee, and Overbid Protections, (IV) Establishing Certain Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (V) Scheduling an Auction, (VI) Scheduling a Hearing and Objections Deadlines With Respect to the Sale of Panola Medical Center, (VII) Approving the Form and Manner of Notice Thereof, and (VIII) Granting Related Relief* (Docket No. 401) (the "**Sale Procedures Motion**");[2] and upon consideration of the Asset Purchase Agreement for the sale of Panola Medical Center (Docket No. 662) (the "**Panola APA**"); and after due consideration and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

[2] Capitalized terms used in this order and not otherwise defined shall have the meanings ascribed to them in the Sale Procedures Motion.

finding sufficient cause for the relief sought in the Sale Procedures Motion,

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**[3]

1. This Court has jurisdiction over this matter and over the property of the Debtors' estates, pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding, within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).

3. Venue is proper in this court, pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The relief in this order is granted pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

5. Proper, timely, adequate, and sufficient notice of the Sale Procedures Motion and relief sought in the Sale Procedures Motion has been provided, and such notice was sufficient and appropriate under the particular circumstances and no other or further notice of the Sale Procedures Motion or relief sought in the Sale Procedures Motion is necessary or required.

6. A reasonable opportunity to object or be heard regarding the requested relief in the Sale Procedures Motion and this order has been afforded to all parties entitled to notice of the Sale Procedures Motion and such relief.

7. The Debtors have the power and authority to sell the Proposed Purchased Assets free and clear of all liens, claims, and encumbrances pursuant to section 363 of the Bankruptcy Code, and all requirements for such sale pursuant to section 363 of the Bankruptcy Code have been satisfied.

---

[3] The findings of fact and conclusions of law herein constitute the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

8. The Debtors have the power and authority to assume and assign the contracts identified or to be identified in the Panola APA, and all requirements for such assumption and assignment pursuant to section 365 of the Bankruptcy Code have been satisfied.

9. Notwithstanding the foregoing, several objections were filed related to the assumption, assignment, and cure of certain contracts and leases that have not been resolved yet. These objections include the objections of the following parties: Medhost of Tennessee, Inc. and its affiliates [Docket Nos. 533 and 603]; GE HFS, LLC [Docket No. 550]; CHCT Mississippi, LLC [Docket No. 539]; and Tallahatchie Valley Electric Power Association [Docket No. 601] (collectively, the "**Objections**"). The Objections are being adjourned to a future hearing date for resolution. All issues raised in the Objections are being preserved to the adjourned hearing.

10. It is necessary and appropriate for this court to retain jurisdiction to, among other things, (a) interpret, implement, and enforce the terms and provisions of this order, the Panola APA, all amendments to the Panola APA, any waivers and consents under the Panola APA, and each of the agreements executed in connection with the Panola APA and (b) to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale of the Proposed Purchased Assets, and such jurisdiction is retained.

### PROPER NOTICE OF THE MOTION

11. The Debtors properly provided notice, pursuant to and in accordance with the Sale Procedures Order, and no other or further notice is necessary or required.

12. The Debtors have adequately disclosed all material terms and conditions regarding the Bidding Procedures, Panola APA, and sale of the Proposed Purchased Assets.

13. The notice provided by the Debtors was in substantial compliance with all applicable laws and satisfied all due process requirements.

14. The notice provided was reasonably calculated to apprise all interested parties of the sale of the Proposed Purchased Assets free and clear of all liens, claims, encumbrances, and other interests.

15. As a result, notice of the Sale Procedures Motion, Bidding Procedures, and Sale Hearing and a reasonable opportunity to object or be heard with respect to the foregoing has been afforded to all interested persons and entities, and the notice provided is appropriate and sufficient for all purposes, including the sale of the Proposed Purchased Assets free and clear of all liens, claims, encumbrances, and other interests; subject however, to resolution of the Objections.

### HIGHEST AND BEST OFFER

16. No competing bids were submitted for the Panola Medical Center and thus no Auction was conducted. Pursuant to the Panola APA and Bidding Procedures, the Successful Bidder was Progressive Medical Management of Batesville, LLC.

17. A true and correct copy of the Panola APA applicable to the Successful Bidder was filed at Docket No. 662 and is incorporated in this paragraph by reference.

18. The Successful Bidder submitted the highest or otherwise best offer to purchase the Proposed Purchased Assets.

19. Neither the sale of the Proposed Purchased Assets nor the Panola APA violate or are otherwise inconsistent with the Sale Procedures Order, the Bidding Procedures, or applicable law.

20. The Successful Bidder has confirmed that it did not engage in any collusion in connection with the Auction or the purchase of the Proposed Purchased Assets.

21. The Successful Bid and Panola APA constitute the highest and best offer for the Proposed Purchased Assets and will provide a greater recovery for the Debtors' creditors than would be provided by any other practical alternative.

22. The Debtors' determination that the Successful Bid and Panola APA constitute the highest and best offer for the Proposed Purchased Assets constitutes a valid and sound exercise of the Debtors' reasonable business judgment.

23. The Successful Bid and Panola APA represent a fair and reasonable offer to purchase the Proposed Purchased Assets under the circumstances of this bankruptcy case.

24. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' or their estates than the Successful Bidder.

25. The Debtors' decision to sell the Proposed Purchased Assets to the Successful Bidder pursuant to the Panola APA and this order is supported by good business reasons and sound justification based upon the Debtors' experience and the circumstances presented in this case.

### GOOD FAITH OF THE SUCCESSFUL BIDDER

26. The Successful Bidder is not an affiliate, subsidiary, or other insider of the Debtor.

27. The terms of the sale of the Proposed Purchased Assets, as set forth more specifically in the Panola APA, are fair and reasonable under the circumstances.

28. The sale of the Proposed Purchased Assets to the Successful Bidder in all respects complies with the Bidding Procedures, Sale Procedures Order, and applicable law.

29. The Successful Bidder negotiated the terms and conditions of the sale of the Proposed Purchased Assets in good faith and at arm's length.

30. The Successful Bidder is entering into the Panola APA and sale of the Proposed Purchased Assets in good faith and is a good faith purchaser for value.

31. The Successful Bidder will be acting in good faith in closing the sale of the Proposed Purchased Assets pursuant to the Panola APA after entry of this order.

32. The court has found that the Successful Bidder has acted in good faith in all respects in connection with this case, the Bidding Procedures, the Auction, and the sale of the Proposed Purchased Assets.

33. The Successful Bidder is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all the protections afforded by 363(m) of the Bankruptcy Code.

## NO FRAUDULENT TRANSFER

34. The consideration provided for the Proposed Purchased Assets under the Panola APA (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Proposed Purchased Assets, and (c) constitutes reasonably equivalent value for the Proposed Purchased Assets.

## VALIDITY OF TRANSFER

35. The Debtors' transfer of the Proposed Purchased Assets including fee title to the real property along pursuant to the Panola APA and this order will be a legal, valid, and effective transfer of the Proposed Purchased Assets including fee title to the real property and will indefeasibly vest the Successful Bidder with good and valid title in and to the Proposed Purchased Assets free and clear of any Liens (as defined below).

36. The Debtors have full power and authority to execute and consummate the Panola APA and all related documents and is directed to do so, and no consents or approvals (other than

6

those expressly provided for in the Panola APA) are required to consummate the transactions contemplated by the Panola APA and this order.

38. The Debtors and Successful Bidder proposed, negotiated, and entered into the Panola APA without collusion, in good faith, and from arm's length bargaining positions.

38. Neither the Debtors nor the Successful Bidder has engaged in any conduct that would cause or permit the Panola APA or transactions contemplated by the Panola APA to be avoided or otherwise set aside.

39. Holders of liens, claims, encumbrances, or others interests in, on, or to any of the Property who did not object, or who withdrew their objections, to the Sale Procedures Motion are deemed to have consented to entry of this order, pursuant to section 363(f)(2) of the Bankruptcy Code.

40. The sale of the Proposed Purchased Assets to the Successful Bidder does not amount to a consolidation, merger, or de facto merger of the Successful Bidder and the Debtors or the Successful Bidder and the Debtors' estates, there is not substantial continuity between the Successful Bidder and the Debtors or the Successful Bidder and the Debtors' estates, there is no continuity of enterprise between the Successful Bidder and the Debtors or the Successful Bidder and the Debtors' estates, the Successful Bidder is not a mere continuation of the Debtors or Debtors' estates, and the Successful Bidder does not constitute a successor to the Debtors or the Debtors' estates.

41. Without limiting the generality of the foregoing, the Successful Bidder shall have no successor or transferee liability of any kind or character with respect to any "claim" (as defined in the Bankruptcy Code) against the Debtors or any other liability or obligation of any kind or nature whatsoever of the Debtors, as a result of its purchase of the Proposed Purchased

7

Assets, its operation of the business formerly operated by the Debtors, or otherwise (except as expressly assumed).

42. Neither the Debtors nor the Successful Bidder has engaged in any conduct that would cause or permit the sale of the Property to the Successful Bidder to be avoided under section 363(n) of the Bankruptcy Code.

**BASED UPON THE FOREGOING FINDINGS AND CONCLUSIONS, IT IS HEREBY:**

1. **ORDERED** that the Motion is GRANTED as set forth in this order; and it is further.

2. **ORDERED** that all objections to the Sale Procedures Motion concerning the Auction, Successful Bid, Successful Bidder, marketing process employed by the Debtor, Panola APA or otherwise relating to the sale of the Proposed Purchased Assets and relief granted in this order that have not been withdrawn, waived, resolved, sustained, or settled are expressly denied and overruled in their entirety; provided, however, the Objections are not denied and overruled and their resolution is adjourned to the hearing on February 21, 2019 at 9:00 a.m.; and it is further

3. **ORDERED** that the Panola APA, as filed at Docket No. 662, is approved in its entirety; and it is further

4. **ORDERED** that the Debtors are directed to sell the Proposed Purchased Assets free and clear of all Liens (as defined below) in accordance with the Bidding Procedures, Panola APA and this order; and it is further

5. **ORDERED** that the Debtors are authorized to take all actions to consummate the sale of the Proposed Purchased Assets pursuant to and in accordance with the Bidding

Procedures, Panola APA, and this order, including transferring and conveying the Proposed Purchased Assets to the Successful Bidder; and it is further

6. **ORDERED** that the Debtors are authorized, directed, and empowered to consummate and implement fully the Panola APA, together with all additional instruments and documents that may be necessary or desirable to implement and consummate the sale of the Proposed Purchased Assets in accordance with the Panola APA and this order; and it is further

7. **ORDERED** that the Debtors are authorized and directed to take all actions necessary or desirable for the purpose of assigning, transferring, granting, conveying, and conferring the Proposed Purchased Assets to the Successful Bidder; and it is further

8. **ORDERED** that any assignee of the Successful Bidder shall have the same substantive and procedural protections of the Panola APA and of this order as the Successful Bidder; and it is further

9. **ORDERED** that, time being of the essence, the Successful Bidder is directed to use its best efforts to close the sale of the Proposed Purchased Assets in accordance with the terms of the Panola APA and this order as soon as reasonably practicable; and it is further

10. **ORDERED** that, in the Debtors' sole discretion, any agreements, documents, or other instruments executed in connection with the Panola APA may be modified, amended, or supplemented by the Debtors and Successful Bidder, in accordance with the terms of the Panola APA, without further notice or order of this court, <u>provided</u> <u>that</u> any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors; and it is further

11. **ORDERED** that, except as to the issues reserved in Paragraph 9 of the Findings of Fact above (relating to the Objections), the transfer of the Proposed Purchased Assets to the

Successful Bidder shall be free and clear of any and all liens, encumbrances, claims, charges, defenses, offsets, recoupments, and interests on the foregoing and against the foregoing of whatever type or description, including, without limitation, any restrictions on or conditions to transfer or assignment, liens, mortgages, security interests, pledges, hypothecations, control agreements, equities and other claims and interests having arisen, existed, or accrued prior to and through the Closing Date, whether direct or indirect, monetary or non-monetary, arising at law or in equity, contract or tort, absolute or contingent, matured or unmatured, voluntary or involuntary, liquidated or unliquidated, of, by, or against the Proposed Purchased Assets (collectively, the "*Liens*"), with such Liens to attach to the net proceeds of the sale of the Proposed Purchased Assets in accordance with the same validity, priority, and enforceability as existed prior to the sale; and it is further

12. **ORDERED** that all holders of Liens on any of the Proposed Purchased Assets are directed, upon Closing, to execute such documents and take all other actions as may be necessary or requested by the Debtors or the Successful Bidder, to terminate and release any filed or recorded documents evidencing their respective Liens on any of the Proposed Purchased Assets; and, if any such holder does not deliver to the Debtors or the Successful Bidder by Closing, in proper form for filing (and, if necessary, executed by the appropriate parties), termination statements, instruments of satisfaction, releases of liens and easements, or any other documents necessary, or requested by the Debtors or the Successful Bidder, for the purpose of terminating or releasing any filed or recorded document evidencing a Lien on any of the Property, the Debtors and the Successful Bidder each are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of any such holder with respect to any of the Proposed Purchased Assets; and it is further

13. **ORDERED** that any person or entity that is presently, or as of Closing, in possession of some or all of the Proposed Purchased Assets is hereby directed to surrender possession of such Proposed Purchased Assets to the Successful Bidder upon Closing; and it is further

14. **ORDERED** that any and all Liens will attach to the net proceeds of the sale of the Proposed Purchased Assets with the same effect, validity, enforceability, and priority of such Liens, if any, as such Liens had against the Proposed Purchased Assets prior to the sale authorized by this order, subject to any rights, claims, defenses, and objections of the Debtors and all interested parties with respect to such Liens; and it is further

15. **ORDERED** that the transfer of the Proposed Purchased Assets to the Successful Bidder may not be avoided under any applicable law, because the Successful Bidder is a good faith purchaser and is providing the Debtors' estates with reasonably equivalent value; and it is further

16. **ORDERED** that the provisions of this order authorizing the sale of the Proposed Purchased Assets free and clear of any Liens shall be and are self-executing, and the Debtors and Successful Bidder shall not be required, but are permitted in their discretion, to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of the Panola APA and this order; and it is further

17. **ORDERED** that neither the purchase of the Proposed Purchased Assets nor the subsequent operation of the Proposed Purchased Assets by the Successful Bidder shall cause the Successful Bidder or its affiliates, successors, or assigns or their respective properties (including the Proposed Purchased Assets) to be deemed a successor in any respect of the Debtors' or

Debtors' business operations within the meaning of any laws, rules, or regulations relating to any tax, revenue, pension, benefit, ERISA, environmental, labor, employment, products liability, or other law, rule, or regulation of any federal, state, or local government; and it is further

18. **ORDERED** that this order and the documents executed in connection with and pursuant to this order constitute a full and complete general assignment, conveyance, and transfer of the Proposed Purchased Assets or a deed or a bill of sale transferring good and marketable title in the Proposed Purchased Assets to the Successful Bidder on the Closing Date, free and clear of all Liens, and each and every federal, state, and local governmental agency or department is directed to accept this order as such an assignment, deed or bill of sale or any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Panola APA and this order; and it is further

19. **ORDERED** that, if necessary, this order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to the Proposed Purchased Assets to the Successful Bidder; and it is further

20. **ORDERED** that this order is effective as a determination that any and all Liens, if any, will be, and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Proposed Purchased Assets; and it is further

21. **ORDERED** that this court retains exclusive jurisdiction to (a) enforce and implement the Panola APA and any other agreements, documents, and instruments executed in connection with the Panola APA, (b) compel delivery of possession of the Proposed Purchased Assets (or any part of the Proposed Purchased Assets) to the Successful Bidder, (c) resolve any disputes, controversies, or claims arising out of or relating to the Panola APA, this order, or the sale of the Proposed Purchased Assets, including the Objections described in Paragraph 9 of the

12
Case 3:18-bk-05665    Doc 683    Filed 01/18/19    Entered 01/18/19 07:48:27    Desc Main
Document    Page 12 of 17

Findings of Fact above, and (d) interpret, implement, and enforce the provisions of this order; and it is further

22. **ORDERED** that the terms and conditions of the Panola APA and this order will be binding in all respects upon, and will inure to the benefit of, the Debtors, Successful Bidder, and their respective affiliates, successors and assigns, and any affected third parties; and it is further

23. **ORDERED** that all persons who hold Liens against the Debtors' estates, the Debtors, insiders of the Debtors, or the Proposed Purchased Assets are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Successful Bidder, its affiliates, successors or assigns, or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Proposed Purchased Assets; and it is further

24. **ORDERED** that nothing contained in any plan of reorganization or plan of liquidation confirmed in the Debtors' chapter 11 case, in any order confirming such a plan, or in any other order of this court, shall conflict with or deviate from the provisions of the Panola APA or the terms of this order, and to the extent such provisions do conflict, then the terms of the Panola APA or this order, as the case may be, shall control over such conflicting plan or order; and it is further

25. **ORDERED** that, to the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Panola APA and this order, the provisions contained in the Panola APA control; and it is further

26. **ORDERED** that the reversal or modification of this order on appeal shall not affect the validity of the sale of the Proposed Purchased Assets to the Successful Bidder, because

the Successful Bidder acted in good faith in participating in the Bidding Procedures and Auction and in purchasing the Proposed Purchased Assets in accordance with the Panola APA; and it is further

27. **ORDERED** that the authority granted to the Debtors to close the sale of the Proposed Purchased Assets pursuant to and in accordance with the Panola APA and this order shall not be stayed if this order is appealed; and it is further

28. **ORDERED** that there is no just delay for the implementation of this order and, for all purposes, this order shall be a final order with respect to the sale of the Proposed Purchased Assets and other relief granted in this order; and it is further

29. **ORDERED** that time is of the essence and, accordingly, the fourteen (14) day stays imposed by Rules 6004(h) and 6006(d) of the Bankruptcy Rules are waived with respect to this order, and this order shall take effect immediately upon its entry.

30. **ORDERED** that notwithstanding anything to the contrary in this Order, or in any order or notice filed in connection with the sale of the Proposed Purchased Assets, the following agreements shall be assumed and assigned to the Successful Bidder as of the effective date of sale of the Proposed Purchased Assets: (a) the *Hospital Services Agreement* between Debtor Batesville Regional Medical Center, Inc. and Cigna Health and Life Insurance Company ("**CHLIC**"), effective August 1, 2017, including all amendments, addendums, exhibits, schedules, etc. related thereto; (b) the *Provider Group Services Agreement* between Debtor Batesville Regional Physicians, LLC and CHLIC, effective August 1, 2017, including all amendments, addendums, exhibits, schedules, etc. related thereto; and (c) the *Institutional Services Agreement* between Debtor Batesville Regional Medical Center, Inc. and Cigna Behavioral Health, Inc. (jointly with CHLIC, "**Cigna**"), effective April 1, 2016, including all

amendments, addendums, exhibits, schedules, etc. related thereto (collectively, the "**Cigna Provider Agreements**"). Upon the effective date of the sale of the Proposed Purchased Assets, a cure payment of $1,104.47 shall be paid to Cigna by the Successful Bidder, which shall cure any and all defaults under the Cigna Provider Agreements and compensate Cigna for its actual pecuniary losses as required by section 365(b)(1) of the Bankruptcy Code. Cigna, the Successful Bidder, and the Debtors shall cooperate, and execute and deliver any instruments, consents or other documents that may be required to effectuate the assignment of the Cigna Provider Agreements to the Successful Bidder in accordance with this Order. This shall fully and finally resolve the *Limited Objection of Cigna to Notice of: (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property; and (II) Cure Amounts Related to the Foregoing* [Docket No. 524].

31. **ORDERED** that the *Objection of CHS PSC, LLC to Notice of (I) Debtors' Intent to Assume or Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property; and (II) Cure Amounts Related to the Foregoing* [Docket No. 553] is hereby resolved. The Contracts listed in *Notice of (I) Debtors' Intent to Assume or Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property; and (II) Cure Amounts Related to the Foregoing* [Docket No. 513] (the "**Assumption Notice**") between CHS PSC, LLC and Debtor Batesville Regional Medical Center (the "**CHS Agreements**") shall not be assumed and/or assigned to the Successful Bidder (or any other purchaser) and the CHS Agreements shall be deemed to be removed from the Assumption Notice and the *Notice of (I) Stalking Horse Purchaser's Intent to Assume or Assign Certain Executory Contracts, Unexpired Leases of*

*Personal Property, and Unexpired Leases of Nonresidential Real Property; and (II) Cure Amounts Related to the Foregoing* [Docket No. 549] (the "**Stalking Horse Assumption Notice**").

32. **ORDERED** that the *Objection of Cardinal Health 110, LLC to Notice of (I) Debtors' Intent to Assume or Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property; and (II) Cure Amounts Related to the Foregoing* [Docket No. 563] is hereby resolved. The Contracts listed in the Assumption Notice between Cardinal Health 110, LLC and Debtor Batesville Regional Medical Center (the "**Cardinal Health Agreements**") shall not be assumed and/or assigned to the Successful Bidder and the Cardinal Health Agreements shall be deemed to be removed from the Assumption Notice and the Stalking Horse Assumption Notice.

33. **ORDERED** that the Objections are hereby adjourned, and all issues raised in the Objections are preserved to the adjourned hearing described below. No contract at issue in the Objections shall be assumed and assigned pursuant to this Sale Order without either: (a) further agreement and stipulation of the relevant parties; or (b) order of this Court. A separate Order shall be submitted setting an adjourned hearing for February 21, 2019 at 9:00 a.m.

**This Order Was Signed And Entered Electronically As Indicated At The Top Of The First Page**

Prepared and submitted by:

POLSINELLI PC

/s/ Michael Malone
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (*Pro Hac Vice*)
Caryn E. Wang (*Pro Hac Vice*)
1201 West Peachtree Street NW, Suite 1100
Atlanta, Georgia
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Counsel to the Debtors and
Debtors in Possession*