**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Lead Case No. 18-05665 |
| Curae Health, Inc., *et al.*[1] |  |
|  | Judge Walker |
| 1721 Midpark Road, Suite B200 |  |
| Knoxville, TN 37921 | Jointly Administered |
| Debtors. |  |

## DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

6090784 v4
67632320.1

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     DESCRIPTION OF THE DEBTORS' BUSINESSES AND REASONS FOR
        THE DEBTORS' CHAPTER 11 FILINGS.............................................................. 3

        A.      The Debtors ........................................................................................ 3

        B.      The Debtors' Capital Structure and Prepetition Indebtedness. ...................... 4

                1.      The Debtors' Prepetition Capital Structure .................................. 4

        C.      Factors Precipitating the Debtors' Chapter 11 Filings ................................ 7

III.    THE CHAPTER 11 CASE ............................................................................... 7

        A.      Significant Events During the Bankruptcy Cases ..................................... 7

                1.      The Employment of Professionals ............................................ 7

                2.      Appointment of Committee ..................................................... 8

                3.      Postpetition Financing and Use of Cash Collateral ...................... 8

                4.      Cash Management ............................................................... 9

                5.      Hospital Sale and Transition Processes .................................... 9

                6.      Potential Unencumbered Assets ............................................ 11

                7.      Potential Adversary Proceedings; Post-Confirmation Causes of
                        Action; Reservation and Preservation Claims and Causes of
                        Action ........................................................................... 12

                8.      Establishment of Bar Dates ................................................. 15

IV.     SUMMARY OF THE PLAN ............................................................................ 16

        A.      Introduction ..................................................................................... 16

        B.      Voting Procedures and Confirmation Requirements.............................. 17

                1.      Ballots and Voting Deadlines .............................................. 17

                2.      Parties in Interest Entitled to Vote ........................................ 17

                3.      Definition of Impairment ................................................... 17

        C.      Confirmation Procedure ..................................................................... 18

                1.      Confirmation Hearing ....................................................... 18

                2.      Procedure for Objections ................................................... 18

                3.      Requirements for Confirmation ............................................ 19

                4.      Voting and Acceptance of the Plan........................................ 19

5.    Best Interests Test ................................................................ 19

6.    Liquidation Analysis ............................................................. 20

7.    The Feasibility Test ............................................................... 21

8.    The Fair and Equitable Test ................................................. 22

9.    Other Requirements of Section 1129 .................................... 22

D.    Classification of Claims and Interests and Their Treatment Under the Plan .............................................................................................. 22

1.    Classification of Claims ........................................................ 22

2.    Unclassified Claims .............................................................. 23

3.    Classified Claims and Interests ............................................ 24

4.    General Claim Treatment Provisions .................................... 27

E.    Estimated Range of Potential Recoveries for Impaired Classes of Claims and Interests .................................................................... 29

F.    Means for Execution of the Plan ................................................... 30

1.    Overview ............................................................................... 30

2.    Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims and Tort Claims ............................................ 30

3.    Income Tax Status ................................................................ 31

4.    Powers and Authority of the Liquidating Trustee ............... 31

5.    Funding of the Liquidating Trust ......................................... 32

6.    Liquidating Trust's Post-Effective Date Expenses ............. 32

7.    Use of Existing Accounts ..................................................... 33

8.    Employment and Compensation .......................................... 33

9.    Vesting of Authority in Debtor Representative ................... 33

10.   Termination of the Committee; Creation of POC .............. 34

11.   Liquidating Trustee as Successor in Interest to the Debtors and Committee ...................................................................... 34

12.   Termination of the Liquidating Trust Estate ....................... 35

13.   Objections to Claims ............................................................ 35

14.   Disallowance of Untimely Claims ....................................... 36

15.   Continued Corporate Existence ............................................ 37

# TABLE OF CONTENTS
### (CONTINUED)

**PAGE**

16. Limited Consolidation for Voting and Distribution Purposes .......... 37

17. Right of Relief from Limited Consolidation ........................................ 38

G. Provisions Governing Distributions ................................................................. 38

1. Delivery of Distributions. ........................................................................ 38

2. Undeliverable Distributions. ................................................................... 38

3. Failure to Claim Undeliverable Distributions. ................................... 38

4. Compliance with Tax Requirements. .................................................... 39

5. Minimum Distributions. ........................................................................... 39

6. Rounding. ..................................................................................................... 39

7. Setoffs and Recoupments. ........................................................................ 39

8. Settlement of Claims and Controversies. .............................................. 40

9. Distributions Free and Clear. .................................................................. 40

10. Not Securities; Section 1145 Exemption. ............................................. 40

H. Procedures for Treatment of Disputed Claims and Claims that Have Otherwise Not Been Allowed ................................................................................ 40

1. Payments and Distributions on Disputed Claims and Claims that Have Otherwise Not Been Allowed. ................................. 40

2. Safekeeping of Distributable Property. ................................................ 40

3. Allowance of Claims. ................................................................................. 41

I. Jurisdiction ............................................................................................................. 41

1. Retention of Jurisdiction. ......................................................................... 41

2. Consent to Jurisdiction. ............................................................................ 42

J. Treatment of Executory Contracts and Unexpired Leases .......................... 42

1. Rejection of Executory Contracts and Unexpired Leases. .............. 42

2. Bar Date for Rejection Damages. ........................................................... 43

3. Insurance Policies. ...................................................................................... 43

4. Postpetition Agreements ........................................................................... 43

K. Exculpations, Releases, and Related Provisions ............................................ 44

1. Term of Bankruptcy Injunction or Stay. .............................................. 45

2. Exculpation. ................................................................................................. 45

3. Release. .......................................................................................................... 46

|   | 4. | Limitation on Liability of Liquidating Trustee and Debtor Representative. | 48 |
|   | 5. | Injunction. | 48 |
|   | 6. | Nondischarge of the Debtor. | 48 |
|   | 7. | Cancellation of Documents. | 49 |
|   | 8. | Effect of Plan on Released Claims and Liens. | 49 |
| L. | | Miscellaneous Provisions | 49 |
|   | 1. | Conditions to Confirmation and the Effective Date. | 49 |
|   | 2. | Effect of Failure of Condition. | 49 |
|   | 3. | Waiver of Conditions to Confirmation and Effective Date. | 50 |
|   | 4. | Modification of the Plan. | 50 |
|   | 5. | Extension of time. | 50 |
|   | 6. | Post-Effective Date Notice List. | 50 |
|   | 7. | Revocation of Plan. | 51 |
|   | 8. | Successors and Assigns. | 51 |
|   | 9. | Reservation of Rights. | 51 |
|   | 10. | Service of Documents. | 51 |
|   | 11. | Filing of Additional Documents and Notice of Effective Date. | 52 |
|   | 12. | Severability. | 52 |
|   | 13. | Entire Agreement. | 52 |
|   | 14. | Governing law. | 52 |
|   | 15. | Closing of the Chapter 11 Cases. | 52 |
| V. | | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 53 |
| A. | | Chapter 7 Liquidation | 53 |
| B. | | Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code | 53 |
| C. | | Dismissal of the Debtors' Chapter 11 Cases. | 53 |
| VI. | | CERTAIN FEDERAL TAX CONSEQUENCES | 54 |
| A. | | General | 54 |
| B. | | U.S. Federal Income Tax Consequences to the Debtors | 55 |
| C. | | U.S. Federal Income Tax Treatment with Respect to the Liquidating Trust | 55 |

# TABLE OF CONTENTS
(CONTINUED)

PAGE

      D.      **U.S. Federal Income Tax Treatment with Respect to Holders of Allowed Claims that are Beneficiaries of the Liquidating Trust.**.................. 57

VII.     RISK FACTORS IN CONNECTION WITH THE PLAN............................................. 58

      A.      **Bankruptcy Considerations** ............................................................ 58

      B.      **No Duty to Update Disclosures** ...................................................... 59

      C.      **Representations Outside this Disclosure Statement** ....................... 59

      D.      **No Admission**................................................................................ 59

      E.      **Tax and Other Related Considerations** .......................................... 59

VIII.    RECOMMENDATION AND CONCLUSION............................................................ 60

**EXHIBITS**

Exhibit A –    Joint Chapter 11 Plan of Liquidation

Exhibit B –    Schedule of the Estimated Potential Range of Recovery to Holders of Allowed Claims and Interests in Impaired Classes

Exhibit C –    Liquidating Trust Agreement (to be filed on the docket at least five (5) days prior to the Confirmation Hearing)

Exhibit D –    Cooperation Agreement (to be filed on the docket at least five (5) days prior to the Confirmation Hearing)

## DISCLAIMER

**THIS DISCLOSURE STATEMENT (THE "<u>DISCLOSURE STATEMENT</u>"), THE JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED FEBRUARY \_\_, 2019, ATTACHED HERETO AS <u>EXHIBIT A</u> (THE "<u>PLAN</u>"), AND THE ACCOMPANYING BALLOTS AND/OR RELATED MATERIALS DELIVERED HEREWITH, ARE BEING PROVIDED BY CURAE HEALTH, INC., *ET AL.* (THE "<u>DEBTORS</u>") AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "<u>COMMITTEE</u>", TOGETHER WITH THE DEBTORS THE "<u>PLAN PROPONENTS</u>") TO KNOWN HOLDERS OF CLAIMS AND INTERESTS PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN PROPOSED BY THE PLAN PROPONENTS.**

**IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS DISCLOSURE STATEMENT. THE PLAN PROPONENTS URGE YOU TO VOTE TO ACCEPT THE PLAN.**

**EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND BANKRUPTCY CODE SECTION 1125. NO HOLDER OF A CLAIM OR INTEREST SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTORS, THEIR PROPERTY, OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS.**

**THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE PLAN. NO SOLICITATIONS FOR OR AGAINST THE PLAN MAY BE MADE EXCEPT THROUGH THIS DISCLOSURE STATEMENT.**

**THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. ALTHOUGH THE PLAN PROPONENTS HAVE MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST SHOULD REVIEW THE PLAN IN ITS ENTIRETY.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN**

OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTEREST IN THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR. NO PERSON OR ENTITY SHOULD RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS DISCLOSURE STATEMENT OR THE PLAN, INCLUDING IN CONNECTION WITH ANY PURCHASE OR SALE OF THE DEBTORS' SECURITIES PRIOR TO THE CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

6090784 v4
67632320.1

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

HOLDERS OF CLAIMS AND INTERESTS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS INJUNCTIONS, EXCULPATIONS, RELEASES, AND LIMITATIONS OF LIABILITY THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSES PERFORMED BY THE PLAN PROPONENTS AND THEIR PROFESSIONALS. ALTHOUGH THE PLAN PROPONENTS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN AND IN THE EXHIBITS ATTACHED HERETO, THE PLAN PROPONENTS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION. <u>MOREOVER, THE STATEMENTS IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE INFORMATION AVAILABLE TO THE PLAN PROPONENTS AT THE TIME OF ITS FILING, AND ARE SUBJECT TO CHANGE BASED UPON NEW INFORMATION OR CIRCUMSTANCES.</u>

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS THE DEBTORS' STATEMENT OF THE STATUS OF THE RESPECTIVE MATTER. <u>FURTHER, AS SET FORTH IN DETAIL IN SECTION III(A)(6) OF THIS DISCLOSURE STATEMENT AND SECTION II OF THE PLAN (INCLUDING AS SET FORTH IN THE PLAN'S DEFINITION OF "CAUSES OF ACTION"), EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL CAUSES OF ACTION AND RIGHTS RELATED THERETO ARE EXPRESSLY RESERVED AND PRESERVED UNDER THE PLAN.</u>

THE PLAN PROPONENTS RECOMMEND THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN. IT IS THE OPINION OF THE PLAN PROPONENTS THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

6090784 v4
67632320.1

## I.   INTRODUCTION

On August 24, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Tennessee (the "**Bankruptcy Court**").  The cases (the "**Chapter 11 Cases**") are jointly administered under lead bankruptcy case number 18-05665.  Since the Petition Date, the Debtors have remained in possession of their assets and have managed their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On September 6, 2018, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

The Plan Proponents submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of votes to accept or reject the Plan, dated February __, 2019, a copy of which is attached hereto as Exhibit A.[2]  The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  To the extent that the information provided in this Disclosure Statement and the Plan (including any Plan supplements or amendments) conflict, the terms of the Plan (including any Plan supplements or amendments) will control.  Terms not otherwise specifically defined herein will have the meanings attributed to them in the Plan.  Each definition in this Disclosure Statement and in the Plan includes both the singular and plural.  Headings are for convenience or reference and shall not affect the meaning or interpretation of this Disclosure Statement.  Additional rules of interpretation are set forth in section I(B) of the Plan.

At a hearing to be held on the adequacy of this Disclosure Statement, the Plan Proponents will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information" in accordance with section 1125(b) of the Bankruptcy Code to enable a hypothetical, reasonable investor typical of claimholders in a Class of Claims or interests entitled to vote as set forth in the Plan to make an informed judgment about whether to accept or reject the Plan.  A hearing to consider the adequacy of this Disclosure Statement (the "**Disclosure Statement Hearing**") will be held on February 28, 2019 at 9:00 a.m. (prevailing Central Time), before the Honorable Charles M. Walker, United States Bankruptcy Judge, at the Bankruptcy Court, 701 Broadway, Nashville, TN 37203.

After the Disclosure Statement is approved, the Bankruptcy Court will set a deadline to file and serve objections, if any, to confirmation of the Plan, in the manner described in section IV(C) of this Disclosure Statement.  The hearing to confirm the Plan (the "**Confirmation Hearing**") may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

The following documents are attached as Exhibits to this Disclosure Statement:

---

[2]  Unless otherwise defined in this Disclosure Statement, all capitalized terms contained in this Disclosure Statement have the meanings ascribed to them in the Plan.  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

Exhibit A:     The Plan

Exhibit B:     Schedule of the Estimated Potential Range of Recovery to
               Holders of Allowed Claims and Interests in Impaired Classes

Exhibit C:     Liquidating Trust Agreement (to be filed on the docket at least
               five (5) days prior to the Confirmation Hearing)

Exhibit D:     Cooperation Agreement (to be filed on the docket at least five (5)
               days prior to the Confirmation Hearing)

You are urged to carefully review the contents of the Plan and Disclosure Statement, including all exhibits attached thereto, before making your decision to vote to accept or reject the Plan. If your Claim is part of an "impaired" Class (as defined in section IV(B)(3) of this Disclosure Statement), you are entitled to vote to accept or reject the Plan. (As set forth herein, holders of interests in the Debtors are conclusively presumed to reject the Plan for the reason that they will not receive any distribution under the Plan.) Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they may presently exist, including, but not limited to, the provisions which provide for injunctions, exculpations, releases, and limitations of liability.

This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtors' Creditors to make an informed judgment about the Plan, including whether to accept or reject the Plan. This Disclosure Statement sets forth certain information regarding (i) the Debtors' prepetition operating and financial history; (ii) the Debtors' need to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the Debtors' Chapter 11 Cases; (iv) the terms of the Plan; (v) the manner in which distributions will be made under the Plan; (vi) certain effects of confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

This Disclosure Statement is subject to the Bankruptcy Court's approval as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Plan. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE PLAN. ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN.**

6090784 v4
67632320.1

## II. DESCRIPTION OF THE DEBTORS' BUSINESSES AND REASONS FOR THE DEBTORS' CHAPTER 11 FILINGS[3]

### A. The Debtors

Curae Health, Inc. ("**Curae**") is a Tennessee nonprofit corporation, and the sole member and sponsoring organization of the Tennessee nonprofit corporations Amory Regional Medical Center, Inc. ("**Amory Medical**"), Batesville Regional Medical Center, Inc. ("**Batesville Medical**"), and Clarksdale Regional Medical Center, Inc. ("**Clarksdale Medical**"). Amory Medical is the sole member of Amory Regional Physicians, LLC ("**Amory Physicians**"); Batesville Medical is the sole member of Batesville Regional Physicians, LLC ("**Batesville Physicians**"); and Clarksdale Medical is the sole member of Clarksdale Regional Physicians, LLC ("**Clarksdale Physicians**"), each Tennessee limited liability companies.

In 2017, the Debtors acquired three Mississippi hospitals from Community Health Systems, Inc. ("**CHS**") and operated them as follows:

      (1)     Amory Medical owned and operated a 95-bed hospital in Amory, Mississippi ("**Gilmore Medical Center**") that provided emergency care, intensive care, a wound care center, diagnostics, surgery, and other inpatient and outpatient medical services, treatments, and programs. Amory Physicians employed some of the physicians that worked at the Amory hospital.

      (2)     Batesville Medical owned and operated a 112-bed hospital and certain other healthcare-related facilities in Batesville, Mississippi (collectively, "**Panola Hospital**") that offered services in emergency care, surgery, radiology, labor and delivery, cardiopulmonary services, physical therapy, cardiac rehab, pharmacy, primary care, pediatrics, sleep, adult medicine, and women's health clinics. Batesville Physicians employed some of the physicians that worked at the Batesville facilities.

      (3)     Clarksdale Medical owned and operated a 181-bed regional medical center in Clarksdale, Mississippi ("**Clarksdale Medical Center**") in facilities leased from Coahoma County, Mississippi, and which included a 10-bed intensive care unit; a 33-bed telemetry stepdown unit; 20 ambulatory surgery beds; a 10-bed emergency department; a 7-room operating suite; a 12-bed recovery room; a labor and delivery suite including 2 labor and delivery rooms, 5 regular labor rooms, 2 delivery rooms, and a 23-bassinet newborn and intensive care nursery); a pavilion dedicated for women and children; a wound healing center; and medical and surgical units. The facilities were leased from

---

[3] All representations in this section, including with respect to the Debtors' background, prepetition events, and the Debtors' reasons for filing the Chapter 11 Cases, are based on the Debtors' characterization of the relevant facts and prior representations in these Chapter 11 Cases. The Committee, the Liquidating Trustee, and the Debtor Representative reserve the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this section shall bind the Committee, the Liquidating Trustee, or the Debtor Representative or be construed to constitute an admission or any fact or waiver or limitation of any right by the Committee, the Liquidating Trustee, or the Debtor Representative. All rights, claims, and defenses of or assertable by the Committee, the Liquidating Trustee, or the Debtor Representative are expressly reserved and preserved, including with respect to all loan and other financial agreements or instruments purportedly executed by any of the Debtors in favor of any party.

6090784 v4
67632320.1

Coahoma County. Clarksdale Physicians employed some of the physicians that worked at the Clarksdale facilities.

As set forth in detail in the *Declaration of Stephen N. Clapp, Chief Executive Officer of Curae Health, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [Docket No. 49], Curae was also the sole member and organizational sponsor of Russellville Hospital Inc. ("**Russellville Hospital**"), which owns and operates a 100-bed hospital in Russellville, Alabama and is the sole member of Russellville Physicians, LLC. Russellville Hospital and Russellville Physicians, LLC have not filed any bankruptcy petition and are not debtors in these cases. Curae has entered into a member substitution agreement with Dava Foundation, Inc. ("**Dava**"), which, among other things, removed Curae as the sole member of Russellville Hospital and replaced Curae with Dava in exchange for consideration from Dava consisting of (i) the assumption of $4 million in debt owed by Curae and its affiliates to the United States Department of Agriculture, (ii) the payoff of all monetary obligations owed by Russellville Hospital to ServisFirst, and (iii) payment of certain additional amounts detailed in the member substitution agreement, a copy of which was filed with the Bankruptcy Court at docket number 461. The member substitution agreement was approved by the Bankruptcy Court on November 30, 2018.

## B.     The Debtors' Capital Structure and Prepetition Indebtedness.

### 1.     The Debtors' Prepetition Capital Structure

#### a.     Purported ServisFirst Debt

On May 1, 2017, Amory Medical and Batesville Medical, with Curae as guarantor, entered into a Loan Agreement (as amended, restated or otherwise modified from time to time, the "**Loan Agreement**") with ServisFirst Bank ("**ServisFirst**"), under which ServisFirst agreed to, among other things: (i) make advances to Amory Medical and Batesville Medical on a revolving credit basis up to $5 million, and (ii) make a single advance to Amory Medical and Batesville medical on a term basis in the principal amount of $14 million. In connection with the Loan Agreement, Amory Medical and Batesville Medical jointly executed a Revolving Credit Note (the "**Revolving Credit Note**") and a Term Note (the "**Term Note**," and together with the Revolving Note, the "**Notes**")) in favor of ServisFirst.

On December 13, 2017, the parties to the Loan Agreement agreed to, among other things, (i) join Clarksdale as a borrower under the Loan Agreement and Notes, (ii) cancel the Revolving Credit note and convert the balance to the Term Note, and (iii) increase the principal amount of the Term Note to $18.783 million.

Amory Medical, Batesville Medical, and Clarksdale Medical each executed a Mississippi Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing in favor of Robert C. Hannon as trustee, for the use and benefit of ServisFirst for the purpose of securing repayment of the Note obligations. As a result, ServisFirst has asserted a first-priority lien on substantially all real estate assets of Amory Medical, Batesville Medical, and Clarksdale Medical.

Curae, as set forth above, guaranteed the asserted obligations under the Loan Agreement and Notes pursuant to a Guaranty dated April 28, 2017, and entered into a Guarantor Security

-4-

Agreement dated April 28, 2017 granting a security interest in substantially all of Curae's assets and personal property. ServisFirst has accordingly asserted a first-priority lien on those assets.

As of the Petition Date, the Debtors believed the outstanding balance of principal, interest, and fees under the Loan Agreement and Notes, to the extent of such documents' validity, to be approximately $18.783 million.

The Committee disputes the secured claims and liens asserted by ServisFirst in the Chapter 11 Cases, and has filed an adversary proceeding to avoid, challenge, or otherwise determine the extent, validity, and/or priority of the secured claims and liens asserted by ServisFirst and pursue other Causes of Action against ServisFirst as set forth in detail in the complaint therein.

### b.    Purported CHS Debt

In connection with the purchase and sale of the Amory and Batesville facilities to Amory Medical and Batesville Medical, Amory Medical and Batesville Medical, with Curae as guarantor, entered into a Loan Agreement dated May 1, 2017 with CHS (as amended, restated, or otherwise modified from time to time, the "**CHS Loan Agreement**"), under which CHS agreed to finance $14.2 million of the purchase price of the Amory and Batesville facilities. In connection with the CHS Loan Agreement, Amory and Batesville executed a Term Note dated May 1, 2017 (the "**CHS Note**") in favor of CHS in the principal amount of $14.2 million.

On November 1, 2017, the parties to the CHS Loan Agreement agreed to, among other things, add Clarksdale Medical as a borrower to the CHS Loan Agreement. In connection with the foregoing, Clarksdale Medical executed a Promissory Note dated November 1, 2017 (the "**Clarksdale Note**") in favor of CHS in the principal amount of $13,133,839.64.

In connection with the CHS Loan Agreement, the CHS Note, and the Clarksdale Note, Amory Medical, Batesville Medical, and Clarksdale Medical each granted liens on and security interests in substantially all of their respective real property.

Curae, as set forth above, guaranteed the asserted obligations under the CHS Loan Agreement, CHS Note, and Clarksdale Note pursuant to a Guaranty dated May 1, 2017, and entered into a Guarantor Security Agreement dated May 1, 2017 granting a security interest in substantially all of Curae's assets and personal property.

In connection with the foregoing transactions, CHS agreed to subordinate its asserted liens to the asserted liens of ServisFirst pursuant to a Debt Subordination Agreement dated May 1, 2017. CHS accordingly asserted a subordinated lien on Curae's assets and substantially all real estate assets of Amory Medical, Batesville Medical, and Clarksdale Medical.

On March 6, 2018, CHS, Amory Physicians, Batesville Physicians, and Clarksdale Physicians entered into a Guaranty and a Guarantor Security Agreement under which Amory Physicians, Batesville Physicians, and Clarksdale Physicians guaranteed certain asserted outstanding debts of Amory Medical, Batesville Medical, and Clarksdale Medical to CHS and grant CHS a security interest in substantially all of their respective property. CHS accordingly

6090784 v4
67632320.1

asserted a lien on substantially all of the assets of Amory Physicians, Batesville Physicians, and Clarksdale Physicians.

As of the Petition Date, the Debtors believed the outstanding balance of principal, interest, and fees under the CHS Loan Agreement, CHS Note, and Clarksdale Note, to the extent of such documents' validity, to be approximately $28,609,419.

The Debtors and the Committee dispute the secured claims and liens asserted by CHS in the Chapter 11 Cases, and, among other things, the Committee has filed, or intends to file, an adversary proceeding to avoid, challenge, or otherwise determine the extent, validity, and/or priority of the secured claims and liens asserted by CHS. The Debtors and the Committee further believe that the Debtors or their Estates may have avoidance claims and other Causes of Action against CHS.

### c.     Midcap Debt

On December 13, 2017, Amory Medical, Batesville Medical, and Clarksdale Medical entered into a Credit and Security Agreement (as amended, restated, or otherwise modified from time to time, the "**MidCap Credit Agreement**") with MidCap Financial Trust ("**MidCap**"), under which MidCap agreed to make advances to Amory Medical, Batesville Medical, and Clarksdale Medical on a revolving credit basis up to $13 million. In connection with the MidCap Credit Agreement, Amory Medical, Batesville Medical, and Clarksdale Medical jointly executed a Revolving Loan Note in favor of MidCap (as amended, restated, or otherwise modified from time to time, the "**MidCap Revolving Loan Note**") in favor of MidCap.

In addition, Amory Medical, Batesville Medical, Clarksdale Medical, and their respective physician entities granted MidCap liens on and security interests in certain of their personal property. Accordingly, MidCap asserted a lien on substantially all of the Debtors' assets other than their real estate assets.

As of the Petition Date, the Debtors believed the outstanding balance of principal, interest, and fees under the MidCap Credit Agreement and MidCap Revolving Loan Note to be approximately $10,188,139.

### d.     Intercreditor Agreements

ServisFirst, CHS, and MidCap entered into a number of subordination and intercreditor agreements, including a December 13, 2017 Intercreditor and Lien Subordination Agreement between ServisFirst and MidCap (the "**Intercreditor Agreement**"), which established relative priorities between ServisFirst and MidCap with respect to their asserted liens on the Debtors' property, and with respect to postpetition financing and other bankruptcy-related rights. Under the Intercreditor Agreement, ServisFirst and MidCap purportedly agreed that each would have asserted first priority liens on different Debtor assets.

On December 17, 2017, CHS and MidCap executed a Subordination Agreement (the "**Subordination Agreement**"), which purported to establish relative priorities between CHS and MidCap with respect to their asserted liens on the Debtors' property, and with respect to

postpetition financing and other bankruptcy-related rights. Under the Subordination Agreement, MidCap and CHS agreed that MidCap's asserted liens would have priority over CHS's.

### e. Unsecured and Trade Debt

As of the Petition Date, the Debtors believed the amount owed to their prepetition creditors totaled approximately $24 million.

## C. Factors Precipitating the Debtors' Chapter 11 Filings

Curae and Amory Medical, Batesville Medical, and Clarksdale Medical purchased the Amory, Batesville, and Clarksdale facilities from CHS in or about May 2017 for an approximately $51 million purchase price. Substantial questions exist as to whether the obligations incurred by the Debtors in connection with the acquisition of these assets from CHS were for reasonably equivalent value.

In addition, between 2013 and 2018, annual net revenue declined by more than $23 million, and the Debtors incurred higher-than-anticipated information systems costs. As the Debtors' accounts payables grew, several of the Debtors' largest vendors requested payment plans for older invoices, and some required payment before delivering new supplies or services.

All of the foregoing factors, as well as the accumulation of the purported debt described in section II(B) above, led to a liquidity crisis, prompting the Debtors to file their chapter 11 petitions to attempt to ensure continued operation of their respective facilities.

## III. THE CHAPTER 11 CASE

The Debtors filed their respective chapter 11 petitions on the Petition Date, August 24, 2018. The following is a summary of the significant events in these Chapter 11 Cases.

## A. Significant Events During the Bankruptcy Cases

### 1. The Employment of Professionals

During the course of the Chapter 11 Cases, the Court approved the employment of the following professionals:

- Polsinelli PC: counsel for the Debtors, retained October 5, 2018 *nunc pro tunc* to the Petition Date;

- GlassRatner Advisory & Capital Group, LLC: financial advisors for the Debtors, retained October 5, 2018, *nunc pro tunc* to the Petition Date;

- BMC Group, Inc.: noticing and claims agent for the Debtors, retained October 5, 2018, *nunc pro tunc* to the Petition Date;

- Egerton, McAfee, Armistead & Davis, P.C.: special transactional counsel for the Debtors, retained October 9, 2018, *nunc pro tunc* to the Petition Date;

-7-

- Manier & Herod, P.C.: co-counsel for the Committee, retained October 11, 2018, *nunc pro tunc* to September 6, 2018;

- Sills Cummis & Gross P.C.: co-counsel for the Committee, retained October 15, 2018, *nunc pro tunc* to September 6, 2018;

- SAK Management Services, LLC: medical operations advisor for Suzanne Koenig, as patient care ombudsman (the "**Ombudsman**"), retained November 2, 2018, *nunc pro tunc* to September 28, 2018;

- Greenberg Traurig, LLP: counsel for the Ombudsman, retained November 2, 2018, *nunc pro tunc* to September 18, 2018;

- EisnerAmper LLP: financial advisor for the Committee, retained November 5, 2018, *nunc pro tunc* to September 2, 2018;

- Coulter & Justus, P.C.: tax accounting consultant for the Debtors, retained November 26, 2018; and

- Great American Group Advisory & Valuation Services, LLC: provider of valuation services, retained February 25, 2019.

## 2. Appointment of Committee

On September 6, 2018, the Office of the U.S. Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

## 3. Postpetition Financing and Use of Cash Collateral

On August 29, 2018, the Bankruptcy Court entered an interim order that, among other things, authorized the Debtors to: (i) obtain senior secured postpetition financing from MidCap, (ii) enter into a postpetition financing agreement and related financing documents with MidCap; (iii) on an interim basis, borrow up to $15 million from MidCap on a revolving basis; (iv) on a final basis, borrow up to $15 million from MidCap on a revolving basis; (v) grant MidCap allowed super-priority administrative expense claims for the Debtors' postpetition financing obligations; (vi) grant MidCap automatically perfected first priority senior security interests and liens in substantially all of the Debtors' assets, including all cash collateral but excluding the Debtors' potential avoidance actions, subject to a carve-out for U.S. Trustee and professional fees and certain other expenses; (vii) use the postpetition financing proceeds in accordance with an approved budget, including for the purposes of satisfying all outstanding prepetition MidCap debt obligations described in section II(B)(1)(c) above; (viii) utilize the cash collateral of the Debtors' prepetition secured lenders in accordance with an approved budget; and (ix) schedule a final hearing with respect to the Debtors' request for approval of postpetition financing.

On November 15, 2018, following negotiations among the Debtors, the Committee, and MidCap; an objection by the Committee; and a hearing to consider the Debtors' request for final approval of postpetition financing, the Bankruptcy Court entered a final order approving such

6090784 v4
67632320.1

financing and providing for, *inter alia*, (i) an expanded carve-out applying to secured lenders' prepetition liens and covering, among other things, accrued but unpaid postpetition expenses of the Debtors' incurred in connection with any closure of their facilities; (ii) the investigation of liens asserted by the Debtors' prepetition lenders; (iii) the preservation of the Committee's right to challenge such liens; and (iv) the exclusion of any Debtor Causes of Action against the secured lenders and the Debtors' current and former officers, directors, and professionals from the postpetition financing collateral.

### 4.     Cash Management

On the Petition Date, the Debtors filed the *Expedited Motion of Debtors for an Order Authorizing (i) Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms; (ii) Suspension of Certain U.S. Trustee Bank Account Requirements; and (iii) Continuation of Existing Deposit Practices* (the "**Cash Management Motion**") [Docket No. 7], seeking to continue the Debtors' prepetition cash management practices. As set forth in detail in the Cash Management Motion and the First Day Declaration, under the Debtors' cash management system, both before and after the Petition Date, the Debtors' collective income has been passed up to Curae and utilized by Curae to pay the Debtors' operating expenses.

The foregoing cash management structure has raised questions regarding, among other things, whether and to what extent the Debtors' respective assets have been used to satisfy other Debtors' liablities, the impact of the cash management structure on the Debtors' and their Estates, and whether substantive consolidation is required in the Chapter 11 Cases. The Committee objected to the Cash Management Motion and has undertaken an investigation into the foregoing and related issues. In order to avoid unnecessessarily delaying the cases, disrupting the Debtors' operations and potential sale and transition opportunities, and causing the Estates to incur unnecessary additional and ongoing expenses, the Committee negotiated a resolution to the Cash Management Motion as set forth at docket number 451 (including the requirement that the Debtors' trace and maintain records of all postpetition transactions within the cash management system and between Debtors, as well as a reservation of the Debtors' respective rights). Further, in order to establish a framework for continuing the Committee's investigations of the foregoing issues and the Claims and Causes of Action of the Debtors and their Estates, and for equitably administering the assets of the Estates and addressing Claims against them, the Plan provides for a limited consolidation for voting and distribution purposes as set forth in sections IV(F)(5), (16), and (17) below and sections VII(E), (P), and (Q) of the Plan.

On November 15, 2018, following negotiations among the Debtors, the Committee, and MidCap; an objection by the Committee; and a hearing to consider the Debtors' request for final approval of the Cash Management Motion, the Bankruptcy Court entered a final order approving the Cash Management Motion, providing for, *inter alia*, (i) continued use of the Debtors' cash management system; (ii) suspension of certain U.S. Trustee bank account requirements; and (iii) continued use of existing deposit practices [Docket No. 456].

### 5.     Hospital Sale and Transition Processes

6090784 v4
67632320.1

The Debtors intend to sell the health care facilities owned and operated by Amory Medical and Batesville Medical (Gilmore Medical Center and Panola Hospital, respectively). To that end, on August 31, 2018, the Debtors filed a motion for approval of, among other things, the sale of Gilmore Medical Center and the approval of a stalking horse bidder (North Mississippi Health Services, Inc. ("**NMHS**")) and sale and bidding procedures with respect thereto. On September 28, 2018, the Bankruptcy Court entered an order approving NMHS as the stalking horse bidder, as well as the sale and bidding procedures. No competing bids were received for Gilmore Medical Center, and on November 30, 2018, the Bankruptcy Court entered an order approving the sale of Gilmore Medical Center to NMHS for consideration including (i) $15 million in cash, subject to adjustments based on the amount of Net Working Capital (as defined in the purchase agreement) and certain assumed lease obligations, and (ii) the assumption of additional liabilities, including with respect to cure costs for assumed contracts, all as set forth in detail in the form of asset purchase agreement filed with the Bankruptcy Court at docket number 499. Closing occurred on December 31, 2018.

On November 6, 2018, the Debtors filed a motion for approval of, among other things, the sale of Panola Hospital and the approval of a stalking horse bidder (Progressive Medical Management of Batesville, LLC ("**Progressive**")) and sale and bidding procedures with respect thereto. On November 30, 2018, the Bankruptcy Court entered an order approving Progressive as the stalking horse bidder, as well as the sale and bidding procedures. No competing bids were received for Panola Hospital. At a hearing held January 11, 2019, the Bankruptcy Court approved the sale to Progressive for consideration including (i) $2.5 million in cash and (ii) the assumption of certain additional liabilities, all as set forth in detail in the form of revised asset purchase agreement filed with the Bankruptcy Court at docket number 662.

In addition to the foregoing, on October 12, 2018, in the face of mounting operating losses and a lack of immediate sale prospects for Clarksdale Medical Center (which Clarksdale Medical operated in facilities leased from Coahoma County, Mississippi), the Debtors filed an emergency motion to (i) shut down Clarksdale Medical Center and reject related unexpired leases and contracts or, in the alternative, (ii) transfer Clarksdale Medical Center's operations to a new operator and assume the lease with Coahoma County and other related unexpired leases and contracts. As a result of negotiations among the Debtors, the Committee, Coahoma County, and other relevant parties, the motion was granted on an interim basis on November 2, 2018, and Coahoma County agreed to provide certain financial assistance to ensure continued operation. Subsequently, on December 13, 2018, the Bankruptcy Court authorized the Debtors to enter into an interim management services agreement [Docket No. 558] with Clarksdale HMA, LLC ("**Clarksdale HMA**"), Coahoma County, and CHS to provide for the transition of Clarksdale Medical Center's operations to Coahoma County and Clarksdale HMA, with Clarksdale HMA assuming responsibility for all operating expenses from and after December 16, 2018, until the earlier of (a) the closing a sale of the assets and assumption of the lease of Clarksdale Medical Center or (b) termination of the agreement. It is contemplated that CHS will purchase the assets and assume the lease of Clarksdale Medical Center, and upon the closing, CHS would assume, and be financially responsible, for all operations of Clarksdale Medical Center. If the closing of a sale and assumption to CHS does not occur and no motion to approve a sale and assumption to CHS or another party has been filed by January 25, 2019, the interim management services agreement may be terminated, provided that, as set forth in the agreement, "(i) such termination shall not be effective until thirty (30) days after January 25, 2019; (ii) upon such termination,

-10-

[Coahoma] County will immediately take the necessary steps to operate [Clarksdale Medical Center] at its cost and expense and on an emergency basis as it may determine in its sole discretion in accordance with applicable Mississippi law; and (iii) [Clarksdale HMA], [Clarksdale Medical and Clarksdale Physicians], and [Coahoma] County agree to work in good faith to achieve a transition of management of [Clarksdale Medical Center] to [Coahoma] County or to [Coahoma] County's designee within such thirty (30) day period, provided that neither [Clarksdale Medical, Clarksdale Physicians], nor [their] bankruptcy estate[s] shall bear any costs or expenses in connection with such transition." As of the date of this Disclosure Statement, Clarksdale Medical Center's operations had not yet been transferred to Coahoma County and Clarksdale HMA.

### 6. Potential Unencumbered Assets

The Plan Proponents have worked diligently to preserve the Estates' assets by identifying and pursuing Assets or proceeds thereof that may be unencumbered by liens of secured creditors in the Chapter 11 Cases, which are asserted against substantially all of the Debtors' real and personal property. The extent and value to the Estates of any such Assets, which include certain of the Debtors' and the Estates' Causes of Action (including causes of action under chapter 5 of the Bankruptcy Code and the D&O Claims and Tort Claims), are dependent upon numerous factors including the success of the prosecution of Claims and Causes of Action belonging to the Debtors and their Estates, including any challenges to the liens of the Debtors' purported prepetition secured creditors. Such Assets also may include, but are not limited to, the following:

- An approximately $950,000 debt service reserve account for Russellville Hospital maintained by Curae to secure Russellville Hospital debt, in which ServisFirst, at least two other purported creditors, and the Estates assert an interest[4];

- Any amounts paid, due from, or otherwise payable to any Debtor by the Mississippi Division of Medicaid ("**MDOM**") or any other governmental or administrative agency, including, but not limited to, any disproportionate-share hospital (DSH) or upper payment limit (UPL) funds or other reimbursements[5];

---

[4] The debt service reserve is addressed by the *Expedited Order (i) Authorizing the Debtors to Enter Into the Member Substitution Agreement With Respect to the Russellville Hospital and (ii) Granting Related Relief* [Docket No. 511], which states in paragraph 3 as follows: "The $950,020.00 held in the Debt Service Reserve Fund shall continue to be held in the ServisFirst account subject to a consensual agreement among the Debtors, the [Committee], [MidCap], and ServisFirst or further order of the Court. All rights of the Debtors, the Committee, [MidCap], and ServisFirst with respect to the Debt Service Reserve Fund shall be reserved, and ServisFirst shall not set off or apply any of the funds in the Debt Service Reserve Fund to the ServisFirst indebtedness absent the consent of the Debtors, [MidCap], and the Committee or further order of the Court."

[5] The Debtors have received, or may receive, pre- and postpetition payments from MDOM or other agencies in which certain parties including ServisFirst assert an interest. The Debtors, the Committee, the Liquidating Trustee, and the Debtor Representative reserve all rights with respect to all such amounts, including any such amounts held in escrow by ServisFirst. In addition, MDOM has offset payments to the Debtors totaling at least $500,000 on

6090784 v4
67632320.1

- Assets identified as "Excluded Assets" in the applicable purchase agreements or otherwise excluded from the sales and other transactions described in section III(A)(5) above; and

- Claims and Causes of Action (as defined in the Plan) belonging to the Debtors and their Estates, including all Claims and Causes of Action discussed in section III(A)(7) below.

**All of the foregoing unencumbered and potentially unencumbered assets, and all proceeds thereof, are essential to the Plan.**

### 7. Potential Adversary Proceedings; Post-Confirmation Causes of Action; Reservation and Preservation Claims and Causes of Action

Unless any Causes of Action against any party are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court Order, the Plan Proponents expressly reserve, retain, and preserve all Claims and/or Causes of Action (both as defined in section II(A) of the Plan)[6] of the Debtors and their Estates of any kind or nature

---

account of purported mutual amounts owed by the Debtors, without prejudice to the rights of the Debtors, the Committee, the Liquidating Trustee, and the Debtor Representative to challenge any such setoff or any other past or future setoff, and subject to all applicable rights and defenses.

[6] The Plan defines Causes of Action as follows: "any and all Claims, actions, causes of action, choses in action, rights, demands, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of setoff, rights of recoupment, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or the Estates), whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the Effective Date or instituted hereafter against any Entity, based in law or equity, including under the Bankruptcy Code or any under any other federal or state statute, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the Effective Date, including, without limitation, (i) the right to object to, challenge or otherwise contest any Claims, whether or not any such Claim is the subject of a proof of claim; (ii) all Claims, causes of action (avoidance actions or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, including all Chapter 5 Actions, or similar or equivalent Claims, causes of action, objections, rights, and remedies arising under state law; (iii) all Tort Claims and D&O Claims; (iv) Claims under any Insurance Policies applicable to the Debtors; (v) all Claims of any kind or nature arising under state or federal law against any of the Debtors' consultants, managers (current or past), advisors, auditors, or other professionals relating to services rendered prior to the Petition Date; (vi) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting secured claim in these cases, other than Claims or Causes of Action released or otherwise waived during the cases; (vii) all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors; (viii) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting secured claim in these cases, other than Claims or Causes of Action released or otherwise waived during the cases; (ix) all Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice; (x) all Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under based upon the formation and capitalization of the Debtors; (xi) all Claims and/or Causes of Action of any kind or nature arising state law based fraudulent conveyance theories; and (xii) all Claims and/or Causes of Action of any kind or nature arising from the payment and/or repayment of Claims by and/or to any Affiliate of any Debtor herein. The foregoing definition shall be construed in

-12-

whatsoever, whether arising before or after the Petition Date, without limitation. Consistent with section 1123(b)(3) of the Bankruptcy Code, this reservation, retention, and preservation is intended to provide for settlement and/or adjustment of Claims and/or retention and/or enforcement of all Claims and Causes of Action. This reservation, retention, and preservation is intended to be broad in scope, and provides notice to enable Creditors to (i) identify the Claims and Causes of Action (or potential Claims and Causes of Action) at issue and (ii) evaluate whether those Claims and Causes of Action might provide additional assets for distribution.

This reservation, retention, and preservation of Claims and Causes of Action further provides notice to Creditors and other parties in interest herein about **the types and categories of Claims and Causes of Action** that might enlarge the Estates, and is based upon information known by the Plan Proponents to date. To the extent that any Creditor or party in interest has any questions or concerns regarding the scope and breadth of the types and/or categories of Claims and Causes of Action reserved, retained, and preserved, any such Creditor or party in interest should object to this Disclosure Statement and request that the Bankruptcy Court require a more complete description of the types or categories of Claims and Causes of Action reserved, retained, and preserved.

Further, no Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Claim and/or Cause of Action against them as any indication that the Plan Proponents, Debtor Representative, Liquidating Trustee, or the Liquidating Trust, as applicable, will not pursue any and all available Claims and/or Causes of Action against them, it being the intent of the Plan Proponents that all Claims and Causes of Action described herein shall be reserved, retained, and preserved for the benefit of all Creditors and parties in interest. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Claims and/or Causes of Action upon, after, or as a consequence of the Plan's confirmation or occurrence of the Effective Date. Any counterparty to a Claim or Cause of Action that is concerned whether a Claim and/or Cause of Action may or will be asserted against it, him, or her, may contact the Plan Proponents in connection with the Plan confirmation process described in this Disclosure Statement for further information.

The Debtors have been advised that the Committee is currently investigating the facts and circumstances regarding the formation and capitalization of the Debtors and whether the assets acquired, or obligations incurred, by the Debtors and/or any affiliates of any Debtors were acquired or incurred for fair value or for reasonably equivalent value, and whether the Debtors received fair value or reasonably equivalent value for the transfers they made, including those made to acquire assets. The Committee is also investigating the facts and circumstances of the sale, transfer, and/or other disposition of assets owned or previously owned by the Debtors and related parties in Alabama, and the obligations incurred by the Debtors and transfers made by the Debtors in connection with those assets. The Committee has advised the Debtors that there may be Claims and Causes of Action against CHS, ServisFirst, directors and officers (past and current), managers, appraisers, and other professionals retained by the Debtors, and all such

---

accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity. **Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan.**"

6090784 v4
67632320.1

Claims and Causes of Action may be pursued and provide additional assets for distribution to Creditors herein. The Committee is also pursuing, or plans to pursue, Claims and/or Causes of Action against ServisFirst to determine the extent, priority, and validity of the liens and Claims asserted by ServisFirst herein, as well as other affirmative Claims, including, but not limited to, fraudulent conveyance and preference claims. The Claims and Causes of Action against CHS and ServisFirst may provide additional assets for distribution to Creditors herein.

In addition to the foregoing, and as set forth below and herein, consistent with applicable law[7], and subject to the exculpation and release provided in Article XI of the Plan, the Plan Proponents identify the following type and categories of Claims and Causes of Action to be preserved and reserved:

a. The right to object to, challenge or otherwise contest any Claims, whether or not any such Claim is the subject of a proof of claim;

b. All Claims, causes of action (avoidance actions or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, including all Chapter 5 Actions, or similar or equivalent Claims, causes of action, objections, rights, and remedies arising under state law;

c. All Claims arising under Chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance, voidable preference, or avoidable transfer Claims that, in any instance, could be brought under state or federal law, including, but not limited to, all causes of action under Chapter 5 of the Bankruptcy Code and any similar state or federal law against persons and entities identified as recipients of transfers from any of the Debtors prior to the Petition Date identified in the Debtors' respective Statements of Financial Affairs, which are available at https://www.bmcgroup.com/restructuring/clinets.aspx;

d. All Tort Claims (as defined in the Plan);

e. All D&O Claims (as defined in the Plan);

f. All Claims under any Insurance Policies applicable to the Debtors;

g. All Claims of any kind or nature arising under state or federal law against any of the Debtors' consultants, managers (current or past), advisors, auditors, or other professionals relating to services rendered prior to the Petition Date;

h. All Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting secured claim in these cases, other than Claims or Causes of Action released or otherwise waived during the cases;

---

[7] *See e.g. Nestlé Waters N. Am., Inc. v. Mt. Glacier LLC (In re Mt. Glacier LLC)*, 877 F.3d 246, 248, 2017 U.S. App. LEXIS 24907, *2, Bankr. L. Rep. (CCH) P83,189, 64 Bankr. Ct. Dec. 256, 2017 WL 6273824 (6th Cir. 2017).

-14-

**i.**  All Claims and/or Causes of Action of any kind or nature arising under state or federal law against any of ServisFirst, CHS, and Strategic, including any Tort Claims, D&O Claims, or contract-based claims against such parties;

**j.**  All Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice;

**k.**  All Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under based upon the formation and capitalization of the Debtors;

**l.**  All Claims and/or Causes of Action of any kind or nature arising state law based fraudulent conveyance theories;

**m.**  All Claims and/or Causes of Action of any kind or nature arising from the payment and/or repayment of Claims by and/or to any Affiliate of any Debtor herein;

**n.**  All legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors; and

**o.**  All Claims, demands, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtors and/or the Estates against any other Person or Entity, that have not otherwise been resolved or disposed of, all of which are preserved in full, whether or not such Claims or Causes of Action are specifically identified in this Disclosure Statement.

**This Disclosure Statement constitutes notice to any party in interest of the intent to pursue any and all such Causes of Action described and defined herein to judgment and collection, and that the proceeds of all such Causes of Action are essential to the Plan.**

**8. Establishment of Bar Dates**

(A)  *Bar Date for Prepetition Claims*.  On December 11, 2018, the Bankruptcy Court entered the General Bar Date Order establishing (i) January 21, 2019 as the last day for filing proofs of claim (other than Claims of Governmental Units) for Claims against the Debtors arising prior to the Petition Date, including Claims under section 503(b)(9) of the Bankruptcy Code; and (ii) February 20, 2019 as the last day for filing proofs of claim for Claims of Governmental Units against the Debtors arising prior to the Petition Date.

Any Claim required to be filed before the aforementioned dates that is not timely filed is forever barred from assertion against the Debtors, the Estates, or property thereof, and the Holder of such Claim is not entitled to vote on the Plan or to participate in any distribution in the Chapter 11 Cases.

(B)  *Administrative Bar Date*.  The Plan establishes the date that is sixty (60) days after the Effective Date of the Plan as the date by which requests for payment of Administrative

6090784 v4
67632320.1

Expense Claims (as defined in the Plan, including Claims for actual and necessary costs and expenses of preserving the Estates incurred after the Petition Date) other than Professional Compensation and Reimbursement Claims and Section 503(b)(9) Claims (the latter of which are subject to the January 21, 2019 prepetition Claim bar date) must be filed.

Any request for payment of Administrative Expense Claims required to be filed before the aforementioned date is forever barred from assertion against the Debtors, the Estates, or property thereof, and the Holder of such Claim is not entitled to participate in any distribution in the Chapter 11 Cases.

Notwithstanding the fact that a Creditor may have provided goods or services to the Debtors and such Claims may otherwise be entitled to administrative expense status or listed on the Debtors' books and records, **only Creditors who timely file requests for payment of Administrative Expense Claim, and only to the extent such Claims become Allowed, will be entitled to participate in any distribution as Holders of Administrative Expense Claims in the Chapter 11 Cases.**

## IV.    SUMMARY OF THE PLAN

THIS SECTION PROVIDES A SUMMARY OF THE PLAN STRUCTURE, CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, AND MEANS FOR IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.    THIS SUMMARY DOES NOT PURPORT TO BE COMPLETE, AND CREDITORS ARE URGED TO READ THE PLAN IN FULL.

The Claims against and interests in the Debtors are divided into Classes according to their kind, seniority, and other criteria.    These Classes, and the funds and other property to be distributed under the Plan, are described more fully below.

### A.    Introduction

Pursuant to the Plan, the Plan Proponents propose an orderly liquidation of the Debtors' remaining Assets.    The Plan provides that all funds realized from the collection and liquidation of the Debtors' Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and the Plan.    The Plan will be implemented by establishing a Liquidating Trust that will be administered by the Liquidating Trustee.    On the Effective Date, the Debtors' Assets, except the D&O Claims, Tort Claims, and rights in and proceeds of any related Insurance Policies, will be transferred to the Liquidating Trust for the benefit of Holders of Allowed Claims.    Thereafter, the Liquidating Trustee will be responsible for liquidating the Assets, including the pursuit and resolution of any Causes of Action other than the D&O Claims and Tort Claims, and making distributions to Holders of Allowed Claims in accordance with the terms of the Plan.

On the Effective Date, the Estate's interest in any D&O Claims, Tort Claims, and rights in and proceeds of any related Insurance Policies will revest in the Debtors.    The Debtor Representative shall be authorized to institute and to prosecute through final judgment or settle any D&O Claims and Tort Claims.    Upon the entry of a final judgment or settlement, the

relevant proceeds of the D&O Claims and Tort Claims shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Claims, in accordance with the provisions of the Plan.

## B.     Voting Procedures and Confirmation Requirements

### 1.     Ballots and Voting Deadlines

After approval of this Disclosure Statement, a Ballot for acceptance or rejection of the Plan will be sent to all Creditors entitled to vote on the Plan. Ballots must be timely filed, and all Creditors will be given notice of the deadline to file Ballots (the "**Voting Deadline**"). Ballots not actually received by the Voting Deadline may not be counted, and Ballots that do not indicate either an acceptance or rejection of the Plan will not be counted. If you have any questions regarding the procedure for voting, please contact:

| **If by regular mail:** | **If by messenger or overnight delivery:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| Attn: Curae Health, Inc | Attn: Curae Health, Inc. |
| PO Box 90100 | 3732 West 120th Street |
| Los Angeles, CA 90009 | Hawthorne, CA 90250 |

Tel: (888) 909-0100
Fax: (310) 321-5539

It is important for all Creditors that are entitled to vote on the Plan to exercise their right to vote to accept or reject the Plan. Even if you do not vote to accept the Plan, you may be bound by the Plan if it is accepted by the requisite Holders of Claims and confirmed by the Bankruptcy Court.

### 2.     Parties in Interest Entitled to Vote

Any Holder of a Claim against a Debtor whose Claim has not been Disallowed previously by the Bankruptcy Court is entitled to vote to accept or reject the Plan if such Claim belongs to an "Impaired" Class (see subsection 3 below) under the Plan and either (i) has been scheduled by the Debtors and is not scheduled as disputed, contingent, or unliquidated, or (ii) such Holder has filed a proof of Claim before the applicable Bar Date. In addition, any Claim to which an objection has been filed is not entitled to vote unless the Bankruptcy Court, upon application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before the Voting Deadline. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

### 3.     Definition of Impairment

Pursuant to section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan:

6090784 v4
67632320.1

1.  leaves unaltered the legal, equitable, and contractual rights of the holder of the claim or equity interest; or

2.  notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

    (A)  cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

    (B)  reinstates the maturity of such claim or interest as it existed before such default;

    (C)  compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law;

    (D)  if such claim or such interests arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensates the Holder of such claim or such interest (other than the debtor or an insider) for actual pecuniary loss incurred by such Holder as a result of such failure; and

    (E)  does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the Holder of such claim or interest.

**The following Classes are impaired under the Plan and entitled to vote:**

- **Class 5 (General Unsecured Claims)**
- **Class 6 (Deficiency Claim of ServisFirst)**
- **Class 7 (Deficiency Claim of CHS)**

**C.  Confirmation Procedure**

**1.  Confirmation Hearing**

After approval of this Disclosure Statement, the Confirmation Hearing will be set before the Honorable Charles M. Walker, United States Bankruptcy Judge. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

**2.  Procedure for Objections**

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim or nature of the interest held by the objector. Any such objection must be filed with the

6090784 v4
67632320.1

Bankruptcy Court and served on counsel for the Plan Proponents, the U.S. Trustee, and all parties who have filed a notice of appearance by the deadline set by the Bankruptcy Court.

### 3.    Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if it meets all the requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation are that the Plan be: (a) accepted by all Impaired Classes of Claims and interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; (b) feasible; and (c) in the "best interests" of Creditors impaired under the Plan that have not voted to accept the Plan. The Bankruptcy Court also must find that:

- the Plan has classified Claims in a permissible manner;

- the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

- the Plan has been proposed in good faith.

### 4.    Voting and Acceptance of the Plan

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) number of those claims in that class actually voting. Holders of Claims who fail to vote will not be counted as either accepting or rejecting the Plan. A vote, moreover, may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that it was not made or solicited in good faith.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by at least two-thirds in amount of the interests of such class actually voting in such class. Holders of interests who fail to vote will not be counted as either accepting or rejecting the Plan. A vote, moreover, may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that it was not made or solicited in good faith.

Classes of Claims and interests that are not "impaired" under the Plan are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote. Classes of Claims and interests that receive no distribution under the Plan are conclusively presumed to have rejected the Plan and are not entitled to vote.

### 5.    Best Interests Test

The "best interests" of impaired creditors (and interest holders) test requires that each Holder of a Claim or interest that has not voted to accept the Plan and belongs to an impaired Class receive or retain under the Plan property of a value that is not less than the value such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To determine what members of each impaired Class of Claims or interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that a liquidation of the Debtors' assets would generate in the context of a chapter 7 liquidation. The amount available for satisfaction of Claims and interests would consist of the proceeds resulting

-19-

from the liquidation, reduced by the Claims of secured creditors to the extent of the value of their collateral, and the costs and expenses of the liquidation.

These are liquidating Chapter 11 Cases. There are no further business operations of the Debtors, and with substantially all of the assets being sold, the Debtors cannot commence operations again. The only viable alternative to confirmation of the Plan is a conversion to cases under Chapter 7. That is not a desirable exit strategy in the view of the Plan Proponents. Conversion to cases under Chapter 7 would require a Chapter 7 trustee to be appointed, and, without any background in these cases, the cost for the Chapter 7 trustee and his/her professionals to gain insight into what the Plan Proponents and the Liquidating Trustee already know would be a significant cost would reduce the available funds that might otherwise go to pay the claims of unsecured creditors.

Because the Plan is a plan of orderly liquidation, each Class of Claims and interests will receive substantially the same treatment that it would receive if the Debtors' Assets were liquidated pursuant to chapter 7 of the Bankruptcy Code, except that the Estates will neither be taxed with the additional expenses and commissions of a chapter 7 trustee nor delayed by such a trustee's appointment and need to become familiar with these cases. There will be a greater distribution to Creditors and interest holders pursuant to the Plan than Creditors would receive in a hypothetical chapter 7 liquidation. Accordingly, the Plan Proponents believe the Plan satisfies the "best interests" of impaired Creditors and interest holders test.

6.      **Liquidation Analysis[8]**

In addition to the discussion contained in other sections of this Disclosure Statement with respect to alternative to confirmation and consummation of the Plan, the Debtors also submit this liquidation analysis in support of confirmation of the Plan. This analysis explains that in the event that the Plan (or an amended version of the Plan) is not confirmed, and the Debtors' assets are liquidated in Chapter 7, it is unlikely that the general unsecured creditors will receive any distribution.

Pursuant to the Final DIP Order [Docket No. 455]. Midcap has first priority liens on and security interests in all of the Debtors' real and personal property. The DIP Obligations (as defined in the Final DIP Order) must be paid in full pursuant to the terms of the Final DIP Order. As of January 20, 2019, the outstanding DIP Obligations total approximately $5.9 million.

Subject to Midcap's liens and security interests, Servisfirst asserts a first priority lien on Debtors' real estate assets and substantially all of the Debtors' assets and personal property. As

---

[8] All representations in this section are based on the Debtors' characterization of the relevant facts. The Committee, the Liquidating Trustee, and the Debtor Representative reserve the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this section shall bind the Committee, the Liquidating Trustee, or the Debtor Representative or be construed to constitute an admission or any fact or waiver or limitation of any right by the Committee, the Liquidating Trustee, or the Debtor Representative. All rights, claims, and defenses of or assertable by the Committee, the Liquidating Trustee, or the Debtor Representative are expressly reserved and preserved, including with respect to all loan and other financial agreements or instruments purportedly executed by any of the Debtors in favor of any party.

6090784 v4
67632320.1

of the Petition Date, the Debtors believed the outstanding balance of principal, interest, and fees under the Servisfirst Loan Agreement and Notes, to the extent of such documents' validity, to be approximately $18.783 million.

CHS also has purported liens on and security interests in the Debtors' real estate assets and substantially all of Curae's assets and personal property. As of the Petition Date, the Debtors believed the outstanding balance of principal, interest, and fees under the CHS Loan Agreement, CHS Note, and Clarksdale Note, to the extent of such documents' validity, to be approximately $28,609,419.

Accordingly, in addition to the DIP Obligations, Servisfirst, and CHS, collectively, assert approximately $47 million in secured claims against the Debtors in the aggregate.

The Debtors are in the process of selling substantially all of their assets and reducing the majority of their assets to cash. In the aggregate, it is estimated that the Debtors' assets have a value in the range of approximately $16.1 million and $19.1 million.[9] Therefore, absent avoidance of a significant portion of Servisfirst's or CHS' secured claims, priority creditors will not be paid in full, and general unsecured creditors will not receive any distribution.

Absent the existence of a Chapter 11 plan, the Bankruptcy Court would likely require the Debtors to liquidate their assets and assert any avoidance action claims against Servisfirst or CHS in Chapter 7 cases as opposed to Chapter 11 cases. A conversion to Chapter 7 would necessarily require the appointment of a Chapter 7 trustee. A Chapter 7 trustee would be unfamiliar with the extensive history and background of the Debtors and their Chapter 11 Cases. A Chapter 7 trustee would be entitled to engage the professionals of his or her choice and the cost to the Debtors' estate of familiarizing the Chapter 7 trustee and his or her professionals with the Debtors and their extensive history and background would be significant and would further reduce, and likely delay, distributions to all creditors. While those costs are extremely difficult to quantify, these is little doubt that they would be significant and would meaningfully reduce distributions to all creditors. The attendant costs, delays, and uncertainties associated with a conversion to Chapter 7 further mitigate in favor of the Plan as opposed to a Chapter 7 liquidation.

Accordingly, the Debtors respectfully submit that creditors are receiving more under the Plan than they would receive in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code, and that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code as to all Classes of Creditors.

7.     **The Feasibility Test**

---

[9] This estimation does *not* take into account, *inter alia*, the following: (i) liabilities associated with the operation of Batesville Medical for the month of February; (ii) Professional Compensation and Reimbursement Claims; (iii) Administrative Expense Claims; (iv) US Trustee Fees; (v) amounts that may be owed to MDOM or any other governmental or administrative agency, including, but not limited to, any disproportionate-share hospital (DSH) or upper payment limit (UPL) funds or other reimbursements; (vi) any tail Insurance Policies; (vii) amounts that may be owed under the Debtors' self-insurance program; and (viii) trailing expenses at Amory Medical and Clarksdale Medical. The Debtors reserve the right to amend this estimation prior to any hearing on the Disclosure Statement.

6090784 v4
67632320.1

The "feasibility" test requires the Bankruptcy Court to find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtors. Substantially all the Debtors' Assets have been or will be sold or otherwise administered, and the Plan provides for the orderly liquidation of the Debtors' remaining Assets. Thus, confirmation of the Plan will not be followed by a liquidation (other than the orderly liquidation provided for in the Plan) or further reorganization.

### 8. The Fair and Equitable Test

If any impaired Class of Claims or interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan despite such non-acceptance under the "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code. To obtain a confirmation under those circumstances, the Plan Proponents must show, among other things, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to each impaired Class that has rejected the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" to a class of claims or interests if, among other things, the plan provides: (i) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (ii) with respect to unsecured claims and equity interest, that the holder of any claim or equity interest that is junior to the claims or equity interest of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest.

THE PLAN PROPONENTS WILL SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) IF LESS THAN THE REQUISITE AMOUNT OR NUMBER OF CLAIMS OR INTERESTS IN ANY ONE OR MORE CLASSES VOTE TO ACCEPT THE PLAN.

### 9. Other Requirements of Section 1129

The Plan Proponents believe that the Plan meets all the other technical requirements of section 1129 of the Bankruptcy Code, including that the Plan has been proposed in good faith.

### D. Classification of Claims and Interests and Their Treatment Under the Plan

### 1. Classification of Claims

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim or interest in a particular Class only if such Claim or interest is substantially similar to the other Claims or interests in that Class. The Plan Proponents believe the Plan's classifications place substantially similar Claims and interests in the same Classes and thus meet the requirements of section 1122 of the Bankruptcy Code.

6090784 v4
67632320.1

The Plan classifies Claims into seven (7) Classes: Class 1 consists of all Priority Non-Tax Claims; Class 2 consists of the Alleged ServisFirst Secured Claim; Class 3 consists of the Alleged CHS Secured Claim; Class 4 consists of all Secured Claims of Other Lienholders; Class 5 consists of all General Unsecured Claims; Class 6 consists of the Deficiency Claim of ServisFirst; Class 7 consists of the Deficiency Claim of CHS; and Class 8 consists of all Corporate Interests. For each Class, the Plan states whether the Claims or interests are Impaired (Classes 1, 2, 3, and 4 are not Impaired; Classes 5, 6, 7, and 8 are Impaired) and how the Holders of the Claims and interests will be treated under the Plan. The Classes and proposed treatment of Allowed Claims and interests of each Class under the Plan are summarized and described below. After Confirmation, and upon the occurrence of the Effective Date, the Plan binds the Debtors and all Creditors and interest holders, whether or not those Creditors and interest holders have accepted the Plan.

## 2. Unclassified Claims

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in sections 507(a)(2) or (8) of the Bankruptcy Code are not to be designated in a Class. Thus, Administrative Expense Claims and Priority Tax Claims against the Debtors, as well as statutory fees under 28 U.S.C. § 1930, and the DIP Claim (*i.e.*, MidCap's postpetition financing claim) are treated separately under the Plan as unclassified Claims.

### a. Administrative Expense Claims

Administrative expenses are Claims for fees, costs, or expenses of administering the Debtors' Chapter 11 Cases that are allowed under section 503(b) of the Bankruptcy Code, including all professional compensation requests pursuant to sections 330 and 331 of the Bankruptcy Code. Based on an analysis of the Claims Register, proofs of claim for Administrative Expense Claims totaling $749,466.22 have been filed in the Debtors' Chapter 11 Cases. Such amount is exclusive of Professional Compensation and Reimbursement Claims.

**i. General.** Subject to the allowance procedures and the deadlines provided in the Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Administrative Expense Claim, or as soon thereafter as is practicable.

**ii. Professional Compensation and Reimbursement Claims.** All Professionals seeking payment of Professional Compensation and Reimbursement Claims shall file their respective final Fee Applications no later than sixty (60) days after the Effective Date. All Professional Compensation and Reimbursement Claims shall be treated as Administrative Expense Claims as set forth in section IV(A)(1)(a) of the Plan, or shall be paid on such other terms as may be mutually agreed upon between the Holder of an Allowed Professional

6090784 v4
67632320.1

Compensation and Reimbursement Claim and the Debtors and the Committee, or the Liquidating Trustee, as applicable.

        **iii.**      **Priority Tax Claims.**  In full and final satisfaction of each Allowed Priority Tax Claim, if any, except to the extent any entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to the amount of such Allowed Priority Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Priority Tax Claim, or as soon thereafter as is practicable.

        **iv.**      **DIP Claim.**  The DIP Claim is expected to be paid in full prior to the Effective Date. Solely to the extent the DIP Claim is not paid in full prior to the Effective Date, in full and final satisfaction of the DIP Claim, MidCap shall receive Cash in an amount equal to the amount of such Claim on the Effective Date or as soon as practicable thereafter.

        **v.**      **Statutory Fees.**  On or before the date that is thirty (30) days after the Effective Date, the Liquidating Trustee shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code. All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid by the Liquidating Trustee on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed.

    **3.**      **Classified Claims and Interests**

    The following describes the Plan's classification of those Claims against and interests in the Debtors required to be classified under the Bankruptcy Code:

        **a.**      **Class 1** consists of Priority Non-Tax Claims of the Debtor. Each Holder of an Allowed Priority Non-Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the amount of such Allowed Priority Non-Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Priority Non-Tax Claim, or as soon thereafter as is practicable. The Priority Non-Tax Claims are not Impaired. Holders of Class 1 Priority Non-Tax Claims, therefore, are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

        **b.**      **Class 2** consists of the Alleged ServisFirst Secured Claim. To the extent any Alleged ServisFirst Secured Claim is Allowed, the Holder of any Allowed ServisFirst Secured Claim shall be paid, in Cash, an amount equal to such Claim, on or before the date that is the later of (i) thirty (30) Business Days after the Effective Date and (ii) (5) Business Days after entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim. To the extent the Collateral securing any Allowed ServisFirst Secured Claim has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to the rights of

6090784 v4
67632320.1

the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

The Alleged ServisFirst Secured Claim is not Impaired. Therefore, with respect to the Alleged ServisFirst Secured Claim, ServisFirst is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

    **c.**    **Class 3** consists of the Alleged CHS Secured Claim. To the extent any Alleged CHS Secured Claim is Allowed, it will be treated, in the sole discretion of the Plan Proponents, in one of the following ways:

    1.    on the Effective Date, the legal, equitable, and contractual rights of the Holder of any Allowed CHS Secured Claim shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles such Holder to demand or receive payment of such Claim before the stated maturity of such Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

    2.    on the Effective Date, the Holder of any Allowed CHS Secured Claim shall (i) retain a Lien securing such Claim and (ii) receive deferred Cash payments from the Liquidating Trust totaling at least the value of such Claim as of the Effective Date in full and final satisfaction of such Claim;

    3.    on the Effective Date, the Collateral securing any Allowed CHS Claim shall be surrendered to the Holder of such Claim in full satisfaction of such Claim; or

    4.    the Holder of any Allowed CHS Secured Claim shall be paid, in Cash, an amount equal to such Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim. To the extent the Collateral securing any Allowed CHS Secured Claim has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

6090784 v4
67632320.1

The Alleged CHS Secured Claim is not Impaired. Therefore, with respect to eh Alleged CHS Secured Claim, CHS is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**d.** **Class 4** consists of the Secured Claims of Other Lienholders. To the extent any Secured Claim of an Other Lienholder is Allowed, it will be treated, in the sole discretion of the Plan Proponents, in one of the following ways:

1. on the Effective Date, the legal, equitable, and contractual rights of the Holder of an Allowed Secured Claim of an Other Lienholder shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles such Holder to demand or receive payment of such Claim before the stated maturity of such Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

2. on the Effective Date, the Holder of an Allowed Secured Claim of an Other Lienholder shall (i) retain a Lien securing such Claim and (ii) receive deferred Cash payments from the Liquidating Trust totaling at least the value of such Claim as of the Effective Date in full and final satisfaction of such Claim;

3. on the Effective Date, the Collateral securing an Allowed Claim of an Other Lienholder shall be surrendered to the Holder of such Claim in full satisfaction of such Claim; or

4. the Holder of an Allowed Secured Claim of an Other Lienholder shall be paid, in Cash, an amount equal to such Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim. To the extent the Collateral securing any Allowed Secured Claim of an Other Lienholder has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

6090784 v4
67632320.1

Class 4 is not Impaired. Therefore, Holders of Class 4 Secured Claims are not entitled to vote to accept or reject the Plan. Each Holder of a Class 4 Secured Claim is conclusively presumed to have accepted the Plan.

       **e.**      **Class 5** consists of all General Unsecured Claims. Each Holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets. Class 5 is Impaired, and Holders of Class 5 General Unsecured Claims are, therefore, entitled to vote to accept or reject the Plan.

       **f.**      **Class 6** consists of the Deficiency Claim of ServisFirst. Each Holder of an Allowed Deficiency Claim of ServisFirst will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets. Class 6 is Impaired, and Holders of Class 6 Deficiency Claims of ServisFirst are, therefore, entitled to vote to accept or reject the Plan.

       **g.**      **Class 7** consists of the Deficiency Claim of CHS. Each Holder of an Allowed Deficiency Claim of CHS will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets. Class 7 is Impaired, and Holders of Class 7 Deficiency Claims of CHS are, therefore, entitled to vote to accept or reject the Plan.

       **h.**      **Class 8** consists of all Corporate Interests. Because each of the Debtors is a not-for-profit corporation, Holders of Allowed Corporate Interests shall not receive any distribution on account of such Corporate Interests under the Plan. Because Holders of Corporate Interests will not receive any distribution under the Plan, they are not entitled to vote to accept or reject the Plan. Each Holder of a Corporate Interest is conclusively presumed to have rejected the Plan.

       **4.**      **General Claim Treatment Provisions**

       **a.**      **Objections.** Except as otherwise set forth in any prior Order of the Bankruptcy Court, the failure of any party to object to any Claim in the Chapter 11 Cases, including any Secured Claims (including any Alleged ServisFirst Secured Claims, Alleged CHS Secured Claims, or Secured Claims of Other Lienholders), shall be without prejudice to the rights of the Debtors (in consultation with the Committee) and the Committee or the Liquidating Trustee to contest, object to, or otherwise defend against such Claim if and when such Claim is sought to be enforced by the Holder of such Claim. Procedures for objections to Claims are set forth in section VII(M) of the Plan.

       **b.**      **Attachment of Liens.** No Lien with respect to any Secured Claim shall attach to any property sold free and clear of interests of such property in any Sale in the Chapter 11 Cases.

6090784 v4
67632320.1

c.    **Survival and Release of Liens.**  Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtors held with respect to any Allowed Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Secured Claim is satisfied, at which time such Lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtors (in consultation with the Committee) or Liquidating Trustee, as the case may be, may condition delivery of any final payment upon receipt of an executed release of the Lien.

Any and all Liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes.  Nothing in the Plan shall preclude the Debtors (in consultation with the Committee) or the Liquidating Trustee from challenging the validity of any alleged Lien on any asset of any Debtor or the value of the property that secures any alleged Lien, and all such rights are expressly preserved.

d.    **Surcharge Under Section 506(c) of the Bankruptcy Code.**  All rights of Holders of Secured Claims under the Plan are subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved. Notwithstanding the foregoing, as set forth in the DIP Order, the rights and claims of MidCap shall not be subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code.

**This Disclosure Statement constitutes notice to any party in interest of the intent to pursue the surcharge of any and all Collateral of ServisFirst, CHS, and any Other Lienholders pursuant to section 506(c) of the Bankruptcy Code (including as set forth in any Orders of the Bankruptcy Court), and that such surcharges and the proceeds thereof are essential to the Plan.**

e.    **Estimation of Claims.**  Before or after the Effective Date, the Debtors (in consultation with the Committee) or the Liquidating Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim that is disputed, contingent, or unliquidated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty one (21) days after the date on which such Claim is estimated. All of the

aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

       **f.**    **Distribution Cap.**  In no event shall any Holder of an Allowed Claim receive a distribution of a value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

## E. Estimated Range of Potential Recoveries for Impaired Classes of Claims and Interests[10]

A schedule of the estimated potential range of recovery to Holders of Allowed Claims and interests in the Impaired Classes is attached hereto as <u>Exhibit B</u>. The range of recoveries set forth in <u>Exhibit B</u> is not a guarantee of actual results, but is an estimate based on the currently available information and assumptions that are subject to material change. The actual distributions to Holders of Allowed Claims and interests in Impaired Classes will necessarily be affected by a variety of contingencies that cannot be determined with certainty at this time, including, without limitation, the ultimate amount of funds that will be available for distribution with respect to the Allowed Claims and interests after payment in full of unclassified Claims, Claims senior in priority to each such Class, and the expenses of effectuating the Plan and administering the Liquidating Trust; the aggregate amount of Allowed Claims and interests in each such Class; the results of the claim objection and reconciliation process; and the results of prosecution of the Chapter 5 Actions and other Causes of Action, which may have a material effect on funding a distribution to Holders of Allowed Claims and interests in the Impaired Classes.

Based on an initial review of the Claims filed in the Case, it is estimated that the total Allowed General Unsecured Claims and Allowed Deficiency Claims may be at least approximately $56.2 million. Absent additional sources of funding (*i.e.*, through successful prosecution of Causes of Action) there will likely be no distribution on account of any Allowed Claims in Class 5 (General Unsecured Claims), Class 6 (Deficiency Claim of ServisFirst), and Class 7 (Deficiency Claim of CHS). Any distribution that may be available to satisfy the Allowed Claims in Class 5 (General Unsecured Claims), Class 6 (Deficiency Claim of ServisFirst), and Class 7 (Deficiency Claim of CHS) will depend on the outcome of any litigation to Disallow the Secured Claims of ServisFirst and CHS and pursue Causes of Action against applicable parties. The actual amount distributed to Holders of Class 5 General Unsecured Claims, Class 6 ServisFirst Deficiency Claim, and Class 7 CHS Deficiency Claim (and the timing any such distributions) will vary based on the Assets recovered and the reconciled amount of General Unsecured Claims and Deficiency Claims that are Allowed.

---

[10] All representations in this section and <u>Exhibit B</u> are based on the Debtors' characterization of the relevant facts. The Committee, the Liquidating Trustee, and the Debtor Representative reserve the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this section shall bind the Committee, the Liquidating Trustee, or the Debtor Representative or be construed to constitute an admission or any fact or waiver or limitation of any right by the Committee, the Liquidating Trustee, or the Debtor Representative. All rights, claims, and defenses of or assertable by the Committee, the Liquidating Trustee, or the Debtor Representative are expressly reserved and preserved, including with respect to all loan and other financial agreements or instruments purportedly executed by any of the Debtors in favor of any party.

6090784 v4
67632320.1

### F.    Means for Execution of the Plan

#### 1.    Overview

The Plan provides for the disposition of substantially all the Assets and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code. The Plan further provides for the winding down of the Debtors and their affairs by the Liquidating Trustee. This Plan also creates a mechanism for the Liquidating Trustee and Debtor Representative to pursue Claims and Causes of Action, including the D&O Claims and Tort Claims, to enable recoveries to Creditors under the Plan.

#### 2.    Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims and Tort Claims

Prior to the Effective Date, the Debtors shall execute the Liquidating Trust Agreement. The Liquidating Trust Agreement is hereby incorporated into the Plan in its entirety as if set forth in full. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

On the Effective Date, and in accordance with the Confirmation Order, the Estates' titles to all the Assets (other than the D&O Claims and Tort Claims, which shall revest in the applicable Debtor(s) and may be pursued by the Debtor Representative) shall automatically pass to the Liquidating Trust, free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code. Notwithstanding the foregoing, the Plan Proponents reserve the right to modify the Plan to exclude certain Assets from transfer to the Liquidating Trust. The Confirmation Order shall constitute a determination that the transfers of the Assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of Tennessee.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidating Trust. The Assets will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

The Liquidating Trustee will be appointed as of the date of execution of the Liquidating Trust Agreement. The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan.

On the Effective Date, the Debtor Representative shall be deemed appointed pursuant to section 1123(b)(3) of the Bankruptcy Code and vested with all power and authority granted to the Debtor Representative under the Plan.

On the Effective Date, the Estates' interests in any D&O Claims, Tort Claims, and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Causes of Action will revest in the Debtors. The Debtor Representative shall be authorized to institute and to prosecute through final judgment or settle the D&O Claims and Tort Claims in his discretion. Upon the entry of a final judgment or settlement, the relevant proceeds of the D&O Claims and

Tort Claims shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Claims in accordance with the provisions of the Plan.

In addition to the foregoing, to the extent any D&O Claims and Tort Claims are assignable under applicable law, the Debtor Representative is expressly authorized, in his discretion, to assign such D&O Claims and Tort Claims to the Liquidating Trust for prosecution and/or settlement by the Liquidating Trustee upon the occurrence of the Effective Date or at any time thereafter. To the extent necessary for the Liquidating Trustee to pursue and prosecute any such D&O Claims and Tort Claims, all rights in and proceeds of any applicable Insurance Policies shall be deemed transferred to the Liquidating Trust upon the assignment of such D&O Claims and Tort Claims.

**The Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidating Trustee and the Debtor Representative on the Assets, D&O Claims, Tort Claims, and rights in and proceeds of any Insurance Policies. The Proceeds of all Causes of Action are material to the implementation of the Plan and the recoveries to Creditors under the Plan.**

### 3. Income Tax Status

For federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries of the Liquidating Trust Estate) shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of Assets to the Liquidating Trust under the Plan shall be treated as a deemed transfer to the Beneficiaries of the Liquidating Trust Estate in satisfaction of their Claims followed by a deemed transfer of the Assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the Liquidating Trust and its assets. For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC sections 671-677 (a non-taxable pass-through tax entity) owned by the Beneficiaries. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions, and credits ("**Tax Items**"). The Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes. The assets shall be valued based on the Liquidating Trustee's good faith determination of their fair market value.

### 4. Powers and Authority of the Liquidating Trustee

The powers of the Liquidating Trustee are set forth in full in the Liquidating Trust Agreement and shall include, among other things: (a) the power to sell, lease, license, abandon, or otherwise dispose of all remaining Assets of the Liquidating Trust Estate subject to the terms of the Plan; (b) the power to wind down the Debtors and their affairs, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about and orderly wind down of the Debtors' operations; (c) the power to effect distributions under the

6090784 v4
67632320.1

Plan to the Holders of Allowed Claims; (d) the authority to pay all costs and expenses of administering the Liquidating Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons to assist the Liquidating Trustee in carrying out the duties under the Plan, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (e) the power to implement the Plan including any other powers necessary or incidental thereto; (f) the authority to settle Claims, applicable Causes of Action, including Chapter 5 Actions, or disputes as to amounts owing to or from the Estates; (g) the authority to participate in any post-Effective Date motions to amend or modify the Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order; (h) the authority to participate in actions to enforce or interpret the Plan; and (i) the power to bind the Liquidating Trust. Each of the foregoing powers may be exercised by the Liquidating Trustee without further order of the Bankruptcy Court. Notwithstanding any of the foregoing, the Liquidating Trustee may not materially amend or alter the terms and provisions of the Plan.

### 5. Funding of the Liquidating Trust

The funding of the Liquidating Trust for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the Liquidating Trust Expense Reserve, (ii) the Debtors' Cash on hand as of the Effective Date, which will be transferred to the Liquidating Trust as of the Effective Date and proceeds from the investment of such Cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any Claims or Causes of Action.

The Liquidating Trustee, in his or her sole discretion, shall have the authority to allocate and reallocate Assets of the Estates (including Cash, and including with respect to any reserves provided for under the Plan) as necessary to effectuate the Plan without further application to, or approval of, the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of the Plan; provided, however, that the Liquidating Trustee may, but is not required to, apply to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation. In the event that the Liquidating Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Assets of the Estates in a manner that would otherwise be inconsistent with any term of the Plan (including for the purposes of distribution under the Plan), the Liquidating Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List.

### 6. Liquidating Trust's Post-Effective Date Expenses

All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Liquidating Trust is dissolved will be expenses of the Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Expense Reserve or other Liquidating Trust assets as appropriate for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Bankruptcy Court. The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Liquidating Trustee, the fees and expenses of the Debtor Representative, the fees and expenses of the professionals employed by the Liquidating Trustee

-32-

and/or the Debtor Representative, and other costs, expenses, and obligations of the Liquidating Trust until the date the Liquidating Trust is terminated in accordance with section VII(L) of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee, in his or her sole discretion, on and after the Effective Date, shall have authority to increase or decrease the Liquidating Trust Expense Reserve, as reasonably necessary and appropriate, to account for and pay the Post-Effective Date Expenses.

Prior to making a distribution to any Holders of Allowed Claims under the Plan, the Liquidating Trustee may place in reserve and/or in a separate account any funds that may be needed to pay Claims that are Disputed and Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed (the **"Distribution Reserve"**). When a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the Distribution Reserve and shall be available for distribution in accordance with the terms of the Plan to either (i) the Holder of the Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed Claims. The Liquidating Trustee, in his or her sole discretion, on and after the Effective Date, shall have authority to increase or decrease the Distribution Reserve, as reasonably necessary and appropriate, and upon satisfaction of all Allowed Claims required to be paid from the Distribution Reserve, to transfer amounts held therein for distribution pursuant to the Plan.

### 7. Use of Existing Accounts

The Liquidating Trustee may use the Debtors' existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired. After the DIP Loan is repaid in full in accordance with the DIP Order, the Liquidating Trustee also may close the Debtors' existing bank accounts, in his or her discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of the Plan. Alternatively, notwithstanding any provisions to the contrary in the Plan, and only after the DIP Loan is repaid in full in accordance with the DIP Order, the Liquidating Trustee may invest some or all the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

### 8. Employment and Compensation

The Liquidating Trustee shall serve without bond and shall receive compensation for serving as Liquidating Trustee as set forth in the Liquidating Trust Agreement. At any time after the Effective Date and without further Order of the Bankruptcy Court, the Liquidating Trustee may employ and compensate Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Case) reasonably necessary to assist the Liquidating Trustee in the performance of his duties under the Liquidating Trust Agreement and the Plan. Such Persons or Entities shall be compensated and reimbursed by the Liquidating Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

### 9. Vesting of Authority in Debtor Representative

6090784 v4
67632320.1

Upon the Effective Date, the Debtors' boards of directors and/or trustees, as applicable, shall be dissolved and the then-current officers of the Debtors and members of the boards of directors and/or trustees of the Debtors shall be relieved of their positions and corresponding duties and obligations; provided, however, that the Debtor Representative shall be responsible for effectuating transfers of Assets in accordance with the Plan and otherwise satisfying the Debtors' obligations under the terms of the Plan.  On and after the Effective Date, the Debtor Representative shall have full and complete authority to act on behalf of and bind the Debtors, and to enforce the rights of the Debtors and their Estates with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, without further action or approval of the Bankruptcy Court or the boards of directors and/or trustees of the Debtors.  After the D&O Claims and Tort Claims are liquidated and the proceeds of such Causes of Action are transferred to the Liquidating Trust Estate in accordance with the Plan, the Debtor Representative shall be empowered, but not directed, to effectuate the dissolution of the Debtors in accordance with the laws of the State of Tennessee.

### 10.    Termination of the Committee; Creation of POC

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final Fee Applications filed in the Chapter 11 Cases.

On the Effective Date, the Committee shall be replaced by the POC that shall consist of not less than three (3) Persons or Entities that are Beneficiaries of the Liquidating Trust.  The identities of the Persons and/or Entities that will serve on the POC as of the Effective Date will be filed by the Committee with the Bankruptcy Court no later than five (5) days before the Confirmation Hearing, provided, however, that ServisFirst shall be a member of the POC.  The POC may also include such other Persons or Entities (including ex officio members) as may be requested by the POC, which Persons or Entities shall have agreed to participate in the performance of the POC's functions as set forth in the Plan.  The POC's sole function and responsibility shall be to advise the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan with respect to the liquidation of Assets for the benefit of the Holders of Allowed Claims.  The members of the POC shall serve without compensation but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the POC.  The POC shall adopt by-laws governing all matters concerning participation in the POC, which by-laws shall include one or more mechanisms for individual members of the POC to be recused from consideration or voting upon matters that could pose a conflict of interest.

### 11.    Liquidating Trustee as Successor in Interest to the Debtors and Committee

Except as to the D&O Claims and the Tort Claims, the Liquidating Trustee is the successor in interest to the Debtors and the Committee, and thus, after the Effective Date, to the extent the Plan requires an action by the Debtors (and except as it relates to the D&O Claims and

6090784 v4
67632320.1

Tort Claims, or is otherwise delegated to the Debtor Representative), the action shall be taken by the Liquidating Trustee on behalf of the Debtors and the Creditors' Committee, as applicable. The Liquidating Trustee may not materially amend or alter the terms and provisions of the Plan.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries of the Liquidating Trust Estate) shall treat the transfer of Assets to the Liquidating Trust in accordance with the terms of the Plan, as a sale by the Debtors of such Assets to the Liquidating Trust Estate at a selling price equal to the fair market value of such Assets on the Effective Date. The Liquidating Trust shall be treated as the owner of all Assets that it holds.

## 12. Termination of the Liquidating Trust Estate

The existence of the Liquidating Trust and the authority of the Liquidating Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Cases is a Final Order or (b) five (5) years after the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided in the Liquidating Trust Agreement.

At such time as the Liquidating Trust has been fully administered (*i.e.*, when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidating Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court.

## 13. Objections to Claims

### a. Objection Procedures

From and after the Effective Date, the Liquidating Trustee shall have the exclusive right and standing to (i) object to and contest the allowance of all Claims, (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further Order or approval of the Bankruptcy Court, subject to the notice procedure set forth in section VII(M)(2); of the Plan and (iii) litigate to final resolution objections to Claims.

**<u>No distribution shall be made pursuant to the Plan to a Holder of Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.</u>**

All objections to Claims shall be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidating Trustee or a holder of a Claim.

6090784 v4
67632320.1

Case 3:18-bk-05665   Doc 835   Filed 03/04/19   Entered 03/04/19 17:42:58   Desc Main
Document      Page 44 of 130

### b. Resolution of Disputed Claims and Claims that Have Not Otherwise Been Allowed

If the Holder of a Disputed Claim or Claim that has not otherwise been Allowed and the Liquidating Trustee agree to a settlement of such Claim (i) for a payment that does not exceed fifty thousand dollars ($50,000) or (ii) by Allowing such Claim in an amount that does not exceed two hundred fifty thousand dollars ($250,000), the Liquidating Trustee shall be authorized to enter into and effectuate such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claim shall be deemed an Allowed Claim. If the Holder of such a Claim and the Liquidating Trustee agree to a settlement of such Claim (i) for a payment that exceeds fifty thousand dollars ($50,000) or (ii) by Allowing such Claim in an amount that exceeds two hundred fifty thousand dollars ($250,000), the Liquidating Trustee shall provide notice of the proposed settlement (with a fourteen-day (14-day) period to object) to the Persons or Entities on the Post-Effective Date Notice List. If no objection is received within the fourteen-day (14) period, the settled Claim shall be deemed to be an Allowed Claim, without the need for further review by, or approval of, the Bankruptcy Court or any other party. If an objection to a proposed settlement is received within the fourteen-day (14-day) period and such objection cannot otherwise be resolved, then the Liquidating Trustee shall schedule a hearing in the Bankruptcy Court to resolve the objection.

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions. The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

### 14. Disallowance of Untimely Claims

Except as provided in the Plan or otherwise agreed by the Liquidating Trustee, any and all Holders of proofs of claim filed after the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2) unless on or before the Voting Deadline or the Confirmation Date, as the case may be, such late proofs of claim are deemed timely filed by a Final Order of the Bankruptcy Court.

Claims for which proofs of claim or requests for allowance were required to be filed by a Bar Date occurring before the Effective Date, and with respect to which no proof of claim or request for allowance was filed before the applicable Bar Date, shall be forever Disallowed, barred, and discharged in their entirety as of the Effective Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates, unless such proofs of claim or requests for allowance are deemed timely filed by a Final Order of the Bankruptcy Court before the Effective Date.

Claims for which proofs of claim or requests for allowance are required to be filed after the Effective Date pursuant to a Bar Date established by the Plan, and with respect to which no proof of claim or request for allowance is filed by the applicable Bar Date, shall be forever Disallowed, barred, and discharged in their entirety as of the applicable Bar Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates.

-36-

### 15. Continued Corporate Existence

Notwithstanding anything to the contrary in the Plan or Confirmation Order, each Debtor shall continue to exist as a separate corporate entity after the Effective Date solely for the purpose of implementing the Plan unless and until such Debtor is dissolved in accordance with applicable state law pursuant to the terms of the Plan.

The winding down of the Debtors' affairs, filing of any necessary documentation to dissolve the Debtors, and adoption of any and all corporate documents or resolutions necessary or appropriate to implement the Plan are hereby deemed authorized and approved in all respects without further action under any applicable law, regulation, order or rule.

### 16. Limited Consolidation for Voting and Distribution Purposes

Subject to sections VII(E) and VII(Q) of the Plan, the Plan treats the Debtors as comprising a single Estate solely for the purposes of classification of Claims and Corporate Interests, voting on the Plan, confirmation of the Plan, and making distributions under the Plan with respect to Allowed Claims. All property of each of the Debtors' Estates shall be deemed to be property of a consolidated Estate consisting of all the Debtors' Estates. Each Claim against any of the Debtors will be deemed to be a Claim against the consolidated Estate, and any proof of Claim filed against one or more of the Debtors will be deemed to have been filed against the consolidated Estate. In the Liquidating Trustee's sole and absolute discretion, (i) all guarantees by one of the Debtors in favor of any of the other Debtors may be eliminated, (ii) all guarantees executed by any of the Debtors in favor of any Creditor may be deemed to be a single obligation, and (iii) any and all Claims among or between the Debtor entities may be waived and not entitled to any distribution under the Plan.

Neither the foregoing treatment nor anything else in the Plan shall (i) affect any Debtor's status as a separate and independent legal entity; (ii) affect the Debtors' organizational structure; (iii) constitute a change of control of any Debtor for any purpose; (iv) cause a merger or consolidation of any legal entities; (v) cause a transfer of any Assets; (vi) affect any valid, enforceable, and unavoidable Liens (other than any Liens that secure any Claims eliminated as a result of the limited consolidation and any Liens against any Collateral that ceases to exist as a result of the limited consolidation); (vii) cause any Lien to attach to any property of any Debtor or Estate to which such Lien would not attach in the absence of the limited consolidation provided for in section VII(P) of the Plan; (viii) create new Collateral with respect to any Lien, charge, or other encumbrance securing the payment or performance of any Claim; (ix) make any Assets or proceeds thereof available for the satisfaction of any Secured Claim that would not be available for the satisfaction of such Secured Claim in the absence of the limited consolidation provided for in section VII(P) of the Plan; (x) create any Claim in a Class different from the Class in which such Claim would have been placed in the absence of limited consolidation; (xi) change the priority or nature of any Claim; (xii) affect any Debtor's independent ownership of any Assets for any purposes other than the limited consolidation described in the Plan; or (xiii) result in the substantive consolidation of the Debtors. Except as otherwise expressly provided by or permitted in the Plan, all Debtors shall continue to exist as separate and independent legal entities. Further, neither the treatment set forth in this section VII(P) nor anything else in the

6090784 v4
67632320.1

Plan shall (a) affect any Cause of Action available to any Debtor or Estate; (b) constitute any admission by any Debtor or Estate with respect to any Cause of Action; (c) have any estoppel effect with respect to any Cause of Action; or (d) constitute or affect admissible evidence in connection with any litigation of any Cause of Action. The treatment described in section VII(P) of the Plan serves only as a mechanism to effect a fair distribution of value to the Holders of Allowed Claims.

### 17. Right of Relief from Limited Consolidation

Notwithstanding the terms of section VII(P) of the Plan or the effect of section 1127 of the Bankruptcy Code in the event of substantial consummation of this Plan (as defined in section 1101 of the Bankruptcy Code), the Liquidation Trustee shall have the authority to allocate or reallocate Assets of the Estates, including for the purposes of distribution, consistent with section VII(E) above. In addition to the authority to allocate or reallocate Assets in a manner that would otherwise be inconsistent with any term of this Plan with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List as set forth in section VII(E) of the Plan, the Liquidating Trustee shall have the right and authority to apply to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List for a substantive consolidation of the Debtors' Estates in the event that the Liquidating Trustee determines, following subsequent investigation and/or discovery or otherwise, that grounds for such substantive consolidation exist.

## G. Provisions Governing Distributions

**1. Delivery of Distributions.** Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as indicated on the records of the Debtor, or a filed proof of Claim, as applicable.

**2. Undeliverable Distributions.** If any Allowed Claim Holder's distribution is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. Within twenty one (21) days after the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall make all distributions that become deliverable during the preceding calendar quarter, except as otherwise provided in the Plan. Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution under the Plan.

**3. Failure to Claim Undeliverable Distributions.** In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Liquidating Trustee will file with the Bankruptcy Court a listing of unclaimed distribution Holders. This list will be maintained and updated as needed for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against the Debtor, the Liquidating Trust Estate, the Liquidating Trustee, or their

6090784 v4
67632320.1

respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidating Trust Estate, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

4. **Compliance with Tax Requirements.** In connection with the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

**Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under the Plan.**

5. **Minimum Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular Distribution Date, the Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distribution owed to any Holder of an Allowed Claim never equals or exceeds fifty dollars ($50), then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

6. **Rounding.** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

7. **Setoffs and Recoupments.** The Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim), the Claims, rights, and Causes of Action of any nature that the Debtors, Estates, or Liquidating Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee of any such Claims, rights, or Causes of Action that the Debtors, Estates, or Liquidating Trust may possess against such Holder.

-39-

**8.     Settlement of Claims and Controversies.**  Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Corporate Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Corporate Interest may have with respect to any Allowed Claim or Corporate Interest, or any distribution to be made on account of such Allowed Claim or Corporate Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Corporate Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Corporate Interests, and is fair, equitable, and reasonable.

**9.     Distributions Free and Clear.**  Except as otherwise provided under the Plan, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no other Entity, including any Debtor, shall have any interest (legal, beneficial or otherwise) in any Estate property distributed pursuant to the Plan.

**10.     Not Securities; Section 1145 Exemption.**  The respective rights of the Holders of Claims and Ownership Interests arising under the Plan are not intended to be "securities" under applicable laws, but the Debtors do not represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Debtors intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

**H.     Procedures for Treatment of Disputed Claims and Claims that Have Otherwise Not Been Allowed**

**1.     Payments and Distributions on Disputed Claims and Claims that Have Otherwise Not Been Allowed.**  Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidating Trustee, in his or her sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Claim that has otherwise not been Allowed until such disputes are resolved by settlement or Final Order and the Claim has been Allowed.  Notwithstanding the foregoing, any Person or Entity who holds both an Allowed Claim and a separate and distinct Disputed Claim or Claim that has otherwise not been Allowed will receive the appropriate payment or distribution on account of the Allowed Claim, although, except as otherwise agreed by the Liquidating Trustee in his or her sole discretion, no payment or distribution will be made on the Disputed Claim or Claim that has otherwise not been Allowed until such dispute is resolved by settlement or Final Order and the Claim has been Allowed.  In the event there is a Disputed Claim or Claim that has otherwise not been Allowed requiring adjudication and resolution, the Liquidating Trustee reserves the right to, or upon order of the Bankruptcy Court shall, establish appropriate reserves for potential payment of such Claim.

**2.     Safekeeping of Distributable Property.**  Pending entry of a Final Order determining an objection to any Disputed Claim or Allowing a Claim that has not otherwise been Allowed, the Liquidating Trustee shall take appropriate steps to safeguard the Cash, notes, or

6090784 v4
67632320.1

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document      Page 49 of 130

other instruments that would be distributed on account of such Claim if Allowed, but the Liquidating Trustee shall not be required to establish any formal escrow or reserve for such distributable property unless it determines, or the Bankruptcy Court orders, that an escrow or reserve is necessary to ensure that such property is available if and when such Claim is Allowed.

      **3.**     **Allowance of Claims.**  Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Liquidating Trust Estate, on and after the Effective Date, will have and retain any and all rights and defenses the Debtors had with respect to such Claim as of the Petition Date.

## I.    Jurisdiction

      **1.**     **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases until the Chapter 11 Cases are closed, including jurisdiction to issue any other Order necessary to administer the Estates or the Liquidating Trust Estate and enforce the terms of the Plan, and/or the Liquidating Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

        **a.**     To determine the type, allowance, and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidating Trustee or any other party-in-interest entitled to proceed in that manner;

        **b.**     Except as otherwise limited in the Plan, to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

        **c.**     To hear and determine any issue arising under the Plan; <u>provided, however</u>, any action, controversy, dispute, claim, or question arising out of or relating to the right of any party to enforce, contest, and/or litigate the existence, primacy, and/or scope of available coverage and/or any defenses to coverage under the Insurance Policies shall be referred to and resolved solely in accordance with the terms and conditions of the Insurance Policies and applicable non-bankruptcy law, including, but not limited to, any choice of law, forum, or jurisdiction provision therein;

        **d.**     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

        **e.**     To hear any other matter not inconsistent with the Bankruptcy Code;

        **f.**     To enter a final decree closing the Chapter 11 Cases;

        **g.**     To ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6090784 v4
67632320.1

**h.** To decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on or instituted by the Liquidating Trustee after the Effective Date;

**i.** To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

**j.** To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

**k.** To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

**l.** To adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) the D&O Claims; (iii) the Tort Claims; and (iv) claims against third parties relating to the facts and circumstances surrounding the same; provided, however, that nothing in the Plan or the Confirmation Order shall vest the Bankruptcy Court with exclusive jurisdiction over any claims identified in subclauses (ii) through (iv) of this subparagraph (l) or over any dispute relating to coverage under the D&O Policies;

**m.** To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

**n.** To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged under the Plan, or for any other purpose.

**2.** **Consent to Jurisdiction.** All creditors who have filed claims in the Chapter 11 Cases shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## J. Treatment of Executory Contracts and Unexpired Leases

**1.** **Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date and subject to section VI(A) and section VI(C) of the Plan, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected, as of the Effective Date, other than Executory Contracts and Unexpired Leases that were previously assumed, assumed and assigned, or rejected by Final Order of the Bankruptcy Court (which contracts will be treated in accordance with such Final Order). The Confirmation Order will constitute an Order approving

-42-

the foregoing rejection. Notwithstanding the foregoing, the Postpetition Agreements shall not be deemed rejected and shall instead revest in the Debtors pursuant to section VI(D) of the Plan.

**2.      Bar Date for Rejection Damages.**  If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and the Confirmation Order or a previous or subsequent Order of the Bankruptcy Court gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates unless a proof of Claim is filed and served on the Debtors or the Liquidating Trust, as the case may be, and their counsel within thirty (30) days after the Confirmation Date.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously-established Bar Date in the Chapter 11 Cases, such previously-established Bar Date shall be deemed operative and will not be deemed extended by virtue of section VI(B) of the Plan.  All such Claims for which proofs of Claim are required to be filed for contracts and leases to which any Debtor is a party, if Allowed, will be classified and treated as a General Unsecured Claim against the applicable Debtor, subject to the provisions of the Plan.

**3.      Insurance Policies.**  For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to all Insurance Policies under which any of the Debtors may be a beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by any Debtor after the Petition Date, and all Insurance Policies under which any Debtor holds rights to make, amend, prosecute, and benefit from claims) shall revest in the applicable Debtor(s) as necessary for the Debtor Representative to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action by the Debtor Representative, all such Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its dissolution, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in his or her discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of the Plan and shall be the subject of a specific motion by the Liquidating Trustee or Debtor Representative, as applicable, who shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by any Debtor exists with respect to any of the Insurance Policies requiring Cure, and that nothing in any prior Order, any prior agreements, or the Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action, including the D&O Claims.  The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estates.

**4.      Postpetition Agreements**

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, shall revest in the Debtors.  Notwithstanding

-43-

any provision providing for the rejection of Executory Contracts, any Postpetition Agreements shall neither be rejected nor assumed by operation of the Plan, and shall be the subject of a specific motion by the Liquidating Trustee or Debtor Representative, as applicable, who shall retain the right to assume or reject the Postpetition Agreements to the extent necessary, pursuant to and subject to the provisions of section 365 of the Bankruptcy Code, following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, requiring Cure, and that nothing in any prior Order, any prior agreements, or the Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Postpetition Agreements against any counterparty thereto. The Plan shall be liberally construed to protect the interests of the Estates with respect to the Postpetition Agreements.

## K.     Exculpations, Releases, and Related Provisions

Article XI of the Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any claim, interest, right, or action with regard to the Debtors and certain third parties. The Liquidating Trustee and each of the Released Parties may enter into a cooperation agreement, a form of which is attached hereto as Exhibit D.

**THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

The "Exculpated Parties" and "Released Parties" include the Debtors' Professionals, the Committee and members of the Committee and their respective Professionals, and the Debtors' directors and officers as of the Petition Date. Such parties are all fiduciaries of the Debtors' Estates. The Debtors submit that all such parties have made contributions to the Chapter 11 Cases sufficient to support the exculpation contemplated by section XI(B) of the Plan and the release contemplated by section XI(C) of the Plan, including, among other things, by overseeing the sale processes and transitions of the Debtors' hospitals and negotiating the Plan. The Debtors further submit that the contributions of these parties were essential to the administration of these Chapter 11 Cases and the preservation of value for the Debtors' creditors.

The exculpation contemplated by section XI(B) of the Plan is an essential component of the Plan and is provided in consideration for the contributions of each of the Exculpated Parties throughout the Chapter 11 Cases. Further, it is limited in scope to liability for postpetition acts or omissions, and does not limit liability for "illegal conduct, willful or wanton conduct, or gross negligence, or fraud as determined by a Final Order of a court of competent jurisdiction[.]"

Like the exculpation, the release contemplated by section XI(C) of the Plan is an essential component of the Plan and is provided in consideration for the contributions of each of the Released Parties throughout the Chapter 11 Cases. It is also narrowly tailored, excluding from

-44-

the release "illegal conduct, gross negligence, bad faith, or fraud[,]" and with respect to the Debtors' officers and directors, granting a release solely to the extent consistent with any immunity or limitation of liability provided to them under Tennessee law by T.C.A. §§ 48-51-101 *et seq.* (the "Nonprofit Act"). Among other things, the Plan specifically provides that "Nothing contained in this Plan or any related document shall be deemed to alter, modify, or expand in any way the rights or immunities set forth in the Nonprofit Act, including, but not limited to, sections 48-58-601 and 48-58-702. In the event of any conflict or inconsistency between the terms of this Plan and the provisions of the Nonprofit Act, the provisions of the Nonprofit Act shall govern and control for all purposes." Accordingly, the Debtors assert that, with respect to the Debtors' officers and directors, the release contemplated by section XI(C) of the Plan does not release any claims from which the officers and directors are not already protected by the Nonprofit Act.

Accordingly, the Debtors believe that the exculpation and release contemplated by the Plan are fair, reasonable, and in the best interests of the Debtors and the Estates.

1. **Term of Bankruptcy Injunction or Stay.** All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Effective Date, all entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure provided in the Plan and the Bankruptcy Code and Bankruptcy Rules; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or Order against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee on account of any such Claim; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidation Trustee on account of any such Claim; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee, or against the property or interests in property of the Debtors, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee on account of any such Claim. Such injunction shall extend for the benefit of the Liquidating Trustee, and any successors of the Debtors, and to any property and interests in property subject to the Plan.

2. **Exculpation.** Subject to the Chapter 5 Carve Out (defined below) and except as otherwise specifically provided in the Plan, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Corporate Interest (including Estate Claims) for any postpetition act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the Plan, the Disclosure Statement, the pursuit of Confirmation, the consummation of the Plan, the administration of the Plan, the property to be liquidated and/or distributed under the Plan or any other postpetition act taken or omitted to be taken in connection with the liquidation of the Debtors (other than for illegal conduct, willful or wanton conduct, or gross negligence, or fraud

-45-

as determined by a Final Order of a court of competent jurisdiction) and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

The foregoing paragraph shall apply to attorneys to the greatest extent permissible under applicable bar rules and case law.

**3.     Release.**

**PURSUANT TO BANKRUPTCY CODE SECTION 1123(B), AND NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND SUBJECT TO THE NONPROFIT ACT CLAUSE (DEFINED BELOW) AND THE CHAPTER 5 CARVE OUT (DEFINED BELOW), THE RELEASED PARTIES SHALL BE DEEMED RELEASED BY THE DEBTORS AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (OTHER THAN FOR ILLEGAL CONDUCT, GROSS NEGLIGENCE, BAD FAITH, OR FRAUD), INCLUDING DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ANY OF THE DEBTORS OR THE ESTATES, AS APPLICABLE, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURCHASE, SALE, TRANSFER, OR RESCISSION OF THE PURCHASE, SALE, OR TRANSFER OF ANY DEBT, CORPORATE INTEREST, ASSET, RIGHT, OR INTEREST OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR CORPORATE INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN AND ANY OTHER AGREEMENTS OR DOCUMENTS EFFECTUATING THE PLAN, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, AND ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS OR THE ESTATES. FOR PURPOSES OF THE RELEASES CONTAINED IN THE PLAN, THE LIQUIDATING TRUSTEE IS DEEMED TO BE A SUCCESSOR TO THE ESTATES AND, THEREFORE, IS BOUND BY THE RELEASES CONTAINED IN THE PLAN.**

**NOTWITHSTANDING THE FOREGOING, THE DEBTORS' DIRECTORS AND OFFICERS INCLUDED IN THE DEFINITION OF "RELEASED PARTIES" SHALL**

ONLY BE DEEMED RELEASED BY THE DEBTORS AND THE ESTATES FROM CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES: (I) TO THE EXTENT THE DEBTORS' DIRECTORS AND OFFICERS ARE IMMUNE FROM SUIT UNDER T.C.A. § 48-58-601; (II) FOR CONFLICTED TRANSACTIONS SOLELY TO THE EXTENT CONSISTENT WITH AND SUBJECT TO T.C.A. § 48-58-702; AND (III) FOR MONETARY DAMAGES FOR BREACH OF FIDUCIARY DUTY SOLELY TO THE EXTENT ELIMINATED, IF AT ALL, PURSUANT TO THE DEBTORS' CHARTERS AND BYLAWS, CONSISTENT WITH AND SUBJECT TO THE PROVISIONS OF T.C.A. §§ 48–51–101 *ET SEQ.* (THE "<u>NONPROFIT ACT</u>") (COLLECTIVELY "<u>THE NONPROFIT ACT CLAUSE</u>"). FOR THE AVOIDANCE OF DOUBT, THE DEBTORS' DIRECTORS AND OFFICERS NOT INCLUDED IN THE DEFINITION OF "RELEASED PARTIES" ARE NOT DEEMED RELEASED PURSUANT TO ANY TERMS OF THE PLAN OR ANY RELATED DOCUMENTS.**

Nothing contained in the Plan or any related document shall be deemed to alter, modify, or expand in any way the rights or immunities set forth in the Nonprofit Act, including, but not limited to, sections 48-58-601 and 48-58-702.  In the event of any conflict or inconsistency between the terms of the Plan and the provisions of the Nonprofit Act, the provisions of the Nonprofit Act shall govern and control for all purposes.

For the avoidance of doubt, except as set specifically forth herein, nothing in the Plan or any related document shall impair any rights with respect to any D&O Claims and all D&O Claims are expressly reserved and preserved.

Notwithstanding anything to the contrary contained herein, nothing in the Plan or any related document shall be deemed to release, exculpate, discharge or otherwise waive any Chapter 5 Actions (the "<u>Chapter 5 Carve Out</u>").

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE OF THE RELEASED PARTIES BY THE DEBTORS AND THE ESTATES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE OF THE RELEASED PARTIES BY THE DEBTORS AND THE ESTATES IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS OR THE ESTATES; (C) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO THE DEBTORS OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE BY THE DEBTORS OR THE ESTATES.**

6090784 v4
67632320.1

4. **Limitation on Liability of Liquidating Trustee and Debtor Representative.** Neither the Liquidating Trustee nor the Debtor Representative will be liable for any act they may do or omit to do as Liquidating Trustee or Debtor Representative under the Plan and the Liquidating Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will the Liquidating Trustee or the Debtor Representative be liable in any event except for gross negligence, willful fraud, or willful misconduct. The foregoing limitation on liability also will apply to any Person (including any Liquidating Trustee Professional) employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative in the fulfillment of their respective duties under the Plan or under the Liquidating Trust Agreement. Also, the Debtor Representative, the Liquidating Trustee, and any Person (including any Liquidating Trustee Professional) employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by the Liquidating Trustee or Debtor Representative, or for performing any functions incidental to such service.

To the extent of the exculpation as provided in section XI(B) of the Plan and the release provided in section XI(C) of the Plan, the Liquidating Trust is deemed to release each Person and Entity exculpated and released, or whose liability is limited, under this subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of the Chapter 11 Cases, except as provided herein.

5. **Injunction.** FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATIONS, LIMITATIONS OF LIABILITY, AND RELEASES GRANTED IN THIS PLAN, ALL PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES, THE RELEASED PARTIES, OR PARTIES WHOSE LIABILITY IS LIMITED (COLLECTIVELY, THE **"PROTECTED PARTIES"**), AND THEIR RESPECTIVE ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY WITH RESPECT TO WHICH SUCH PROTECTED PARTIES ARE EXCULPATED OR RELEASED OR WITH RESPECT TO WHICH SUCH PROTECTED PARTIES' LIABILITY IS OTHERWISE LIMITED.

6. **Nondischarge of the Debtor.** In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims. However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

6090784 v4
67632320.1

7. **Cancellation of Documents.** On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtors shall be deemed inoperative and unenforceable solely as against the Debtors and their Estates.

8. **Effect of Plan on Released Claims and Liens.** Nothing contained in the Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior Order of the Bankruptcy Court.

## L. Miscellaneous Provisions

1. **Conditions to Confirmation and the Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

    **a.** the Confirmation Order, authorizing and directing that the Debtors take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement, shall have been entered and become a Final Order;

    **b.** the Liquidating Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

    **c.** the Liquidating Trust shall have been established;

    **d.** the sales of Gilmore Medical Center, Panola Hospital, and Clarksdale Medical Center shall have closed or Gilmore Medical Center, Panola Hospital, and Clarksdale Medical Center shall have otherwise been disposed of; and

    **e.** all other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Debtors and the Committee or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

2. **Effect of Failure of Condition.** If each condition to the Effective Date has not been satisfied or duly waived within sixty (60) days after the Confirmation Date, then (unless the period for satisfaction or waiver of conditions has been extended at the joint option of the Plan Proponents for a period not exceeding ninety (90) days) upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponents or the Liquidating Trustee, as the case may be, before the Bankruptcy Court enters a Final Order granting such motion. If the Confirmation Order is vacated pursuant to the Plan, the Plan shall be deemed null and void in all

respects, and nothing contained in the Plan shall (A) constitute a waiver or release of any Claims by or against the Debtors or (B) prejudice in any manner the rights of the Debtors.

**3.** **Waiver of Conditions to Confirmation and Effective Date.** The Debtors and the Committee, jointly and in their sole discretion, may waive any or all of the conditions to the Effective Date (except those set forth in section XII(A)(a)-(c) of the Plan), in whole or in part, at any time, without notice or an Order of the Bankruptcy Court. In that event, the Debtors and the Committee will be entitled to render any or all of their performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge. The failure to satisfy or to waive any condition may be asserted by the Debtors or the Committee regardless of the circumstances giving rise to failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors or the Committee to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

**4.** **Modification of the Plan.** The Plan and any Exhibits thereto may be modified jointly by the Plan Proponents, or the Liquidating Trustee, as applicable, from time to time in accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019. The Plan and any exhibits thereto may be modified at any time before the entry of the Confirmation Order pursuant to section 1127(a) of the Bankruptcy Code; and after the entry of the Confirmation Order, the Plan Proponents, or the Liquidating Trustee, as applicable may, upon Order of the Bankruptcy Court, amend or modify the Plan and any Exhibits thereto in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing. The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours. Holders of Claims may obtain a copy of the Plan and any supplement or modification, if any, by contacting BMC at (888) 909-0100 or by reviewing such document on the internet at https://www.bmcgroup.com/curaehealth. The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**5.** **Extension of time.** For cause shown, any deadlines in the Plan that are applicable to the Debtors, the Committee, the Liquidating Trustee, the Debtor Representative, or the Liquidating Trust Estate and which are not otherwise extendable, may be extended by the Bankruptcy Court.

**6.** **Post-Effective Date Notice List.** Because certain Persons may not desire to continue to receive notices after the Effective Date, the Plan provides for the establishment of a Post-Effective Date Notice List. Persons on such Post-Effective Date Notice List will be given

-50-

6090784 v4
67632320.1

certain notices and in some cases an opportunity to object to certain matters under the Plan (as described in the Plan). Any Person desiring to be included in the Post-Effective Date Notice List must (i) file a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidating Trustee and his or her counsel. On or before sixty (60) days after the Effective Date, the Liquidating Trustee shall compile a list of all Persons on the Post-Effective Date Notice List and file such list with the Bankruptcy Court. Those parties set forth in section XII(J) of the Plan shall be included in the Post-Effective Date Notice List without the necessity of filing a request.

7.    **Revocation of Plan.** The Plan Proponents reserve the right to seek revocation of the Confirmation Order pursuant to section 1144 of the Bankruptcy Code. If the Bankruptcy Court revokes the Confirmation Order pursuant to section 1144 of the Bankruptcy Code, or if confirmation or the Effective Date of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and except as in the Plan provided; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against the Plan Proponents or any other person, (b) prejudice in any manner the Plan Proponents' or any Person's rights, or (c) constitute the Plan Proponents' or any Person's admission of any sort.

8.    **Successors and Assigns.** The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, and lawful successor or assign of such Person or Entity.

9.    **Reservation of Rights.** Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Bankruptcy Court has entered the Confirmation Order. Neither the filing of the Plan, any statement or provision contained in the Plan, nor the Debtors' taking of any action with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of the Debtors' rights with respect to the Holders of Claims prior to the Effective Date.

10.    **Service of Documents.** Any pleading, notice, or other document required or permitted to be made in accordance with the Plan shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid, as follows:

To the Debtors:

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document      Page 60 of 130

Polsinelli P.C.
Attn:   David E. Gordon
           Caryn Wang
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309

To the Committee:

Sills Cummis & Gross P.C.
Attn:   Andrew H. Sherman
           Boris I. Mankovetskiy
One Riverfront Plaza
Newark, NJ 07102

and

Manier & Herod, P.C.
Attn:   Michael E. Collins
           Robert W. Miller
1201 Demonbreun Street #900
Nashville, TN 37203

**11.     Filing of Additional Documents and Notice of Effective Date.**  On or before the Effective Date, the Debtors and the Committee may jointly file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall file a notice of the Effective Date as soon as practicable after the Effective Date and shall serve such notice on all parties that are entitled to notice under Bankruptcy Rule 2002.

**12.     Severability.**  The provisions of the Plan shall not be severable unless the Plan Proponents agree to such severance and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**13.     Entire Agreement.**  The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

**14.     Governing law.**  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Tennessee, without giving effect to the principles of conflicts of law of such jurisdiction.

**15.     Closing of the Chapter 11 Cases.**  Consistent with the other terms of the Plan, the Liquidating Trustee shall promptly, upon the full administration of the Chapter 11 Cases, file

6090784 v4
67632320.1

with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Cases.

## V. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponents believe the Plan is in the best interests of the Creditors and should accordingly be accepted and confirmed. If the Plan as proposed, however, is not confirmed, the following three alternatives may be available to the Debtors: (i) a liquidation of the Debtors' Assets pursuant to chapter 7 of the Bankruptcy Code; (ii) an alternative plan of liquidation may be proposed and confirmed; or (iii) the Debtors' Chapter 11 Cases may be dismissed.

### A. Chapter 7 Liquidation

If a plan pursuant to chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Debtors' Chapter 11 Cases may be converted to liquidation cases under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed, pursuant to applicable provisions of chapter 7 of the Bankruptcy Code, to liquidate the Assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that such a liquidation would result in smaller distributions being made to the Debtors' Creditors than those provided for in the Plan because (a) the likelihood that other Assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion, (b) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, (c) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts. The Debtors have determined that confirmation of the Plan will provide each Holder of an Allowed Claim with a recovery that is not less than such Holder would receive pursuant to liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

### B. Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code

If the Plan is not confirmed, the Debtors may propose a different plan, which might involve an alternative means for the reorganization or liquidation of the Debtors' Assets. However, it is difficult to speculate on or assess the terms and potential treatment of Allowed Claims under any such alternative plan. Furthermore, for the Debtors and/or Creditors to formulate, solicit and confirm any such alternative plan would likely require the Estates to incur additional administrative and other expenses, may substantially delay distributions to Creditors, and may result in lower recoveries to Creditors than the proposed Plan. The Plan Proponents believe that the terms of the Plan provide for an orderly and efficient liquidation of the Debtors' Assets and will result in the realization of the most value for Holders of Claims against the Debtors' Estates.

### C. Dismissal of the Debtors' Chapter 11 Cases.

Dismissal of the Debtors' Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the *status quo ante*. Upon dismissal of the Debtors' Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the various creditors

of the Debtors, and possibly resulting in costly and protracted litigation in various jurisdictions. Most significantly, dismissal of the Debtors' Chapter 11 Cases would permit secured creditors to foreclose upon any Assets that are subject to their Liens. Dismissal would also permit unpaid unsecured creditors to obtain and enforce judgments against the Debtors. The Plan Proponents believe that these actions could lead ultimately to the liquidation of the Debtors' Assets under chapter 7 of the Bankruptcy Code. Therefore, the Plan Proponents believe that dismissal of the Chapter 11 Cases is not a preferable alternative to the Plan.

## VI. CERTAIN FEDERAL TAX CONSEQUENCES

**THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND APPLICABLE NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### A. General

The following discussion summarizes certain material U.S. federal income tax consequences to the Debtors, the Liquidating Trust, and Holders entitled to vote on the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "**IRC**"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "**Service**"). There can be no assurance that the Service will not take a contrary view, no ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to Holders of Claims, the Liquidating Trust, or the Debtors. It cannot be predicted at this time whether any tax

6090784 v4
67632320.1

legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

The following summary is for general information only. The tax treatment of a Holder may vary depending upon such Holder's particular situation. This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences and does not address the tax consequences to a Holder that has made an agreement to resolve its claim in a manner not explicitly provided for in the Plan. This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, partnerships and other pass-through entities, Holders that have a "functional currency" other than the United States dollar and Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of Holders and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder in exchange for the Claim and whether the Holder receives distributions under the Plan in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the Holder. Therefore, each Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

## B.      U.S. Federal Income Tax Consequences to the Debtors

The Debtors are not-for-profit corporations that are exempt from federal income taxation under 501(c)(3) of the IRC. It is intended that nothing in the Plan shall adversely affect the tax-exempt status of the Debtors. Accordingly, the Debtors do not expect the implementation of the Plan to have any adverse federal income tax consequences on the Debtors before or after the Effective Date. If the tax-exempt status of the Debtors would terminate, the Debtors may be subject to tax on their income, which would reduce the amount of distributions payable to the Holders of Claims.

## C.      U.S. Federal Income Tax Treatment with Respect to the Liquidating Trust

6090784 v4
67632320.1

It is intended that the Liquidating Trust will be treated as a "grantor trust" for U.S. federal income tax purposes. In general, a grantor trust is not a separate taxable entity. The Service, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an advanced ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Debtors are not requesting a private letter ruling regarding the status of the Liquidating Trust as a grantor trust. Consistent with the requirements of Revenue Procedure 94-45, however, the Liquidating Trust Agreement requires all relevant parties to treat, for federal income tax purposes, the transfer of the Debtors' Assets to the Liquidating Trust as (i) a transfer of such assets to the Beneficiaries of the Liquidating Trust (to the extent of the value of their respective interests in the applicable Liquidating Trust Assets) followed by (ii) a transfer of such assets by such Beneficiaries to the Liquidating Trust (to the extent of the value of their respective interests in the applicable Liquidating Trust Assets), with the beneficiaries of the Liquidating Trust being treated as the grantors and owners of the Liquidating Trust. Each beneficiary of the Liquidating Trust will generally recognize gain (or loss) in its taxable year that includes the Effective Date in an amount equal to the difference between the amount realized in respect of its Claim and its adjusted tax basis in such Claim. The amount realized for this purpose should generally equal the amount of cash and the fair market value of any other assets received or deemed received for U.S. federal income tax purposes under the Plan in respect of such Holder's Claim. A Holder that is deemed to receive for U.S. federal income tax purposes a non-cash asset under the Plan in respect of its Claim should generally have a tax basis in such asset in an amount equal to the fair market value of such asset on the date of its deemed receipt.

The Plan and the Liquidating Trust Agreement generally provide that the Beneficiaries of the Liquidating Trust must value the assets of the Liquidating Trust consistently with the values determined by the Liquidating Trustee for all U.S. federal, state, and local income tax purposes. As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the assets transferred to the Liquidating Trust.

Consistent with the treatment of the Liquidating Trust as a grantor trust, the Liquidating Trust Agreement and the Plan will require each Holder to report on its U.S. federal income tax return its allocable share of the Liquidating Trust's income. Therefore, a Holder may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidating Trust whether or not the Liquidating Trust has made any distributions to such Holder. The character of items of income, gain, deduction, and credit to any Holder and the ability of such Holder to benefit from any deduction or losses will depend on the particular situation of such Holder.

In general, a distribution of underlying assets from the Liquidating Trust to a Beneficiary thereof may not be taxable to such Holder because such Holders are already regarded for U.S. federal income tax purposes as owning such assets. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of distributions from the Liquidating Trust.

The Liquidating Trustee will file with the Service tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and will also send to each Holder a separate statement setting forth such Holder's share of items of Liquidating Trust

6090784 v4
67632320.1

income, gain, loss, deduction, or credit. Each such Holder will be required to report such items on its U.S. federal income tax return.

The discussion above assumes that the Liquidating Trust will be respected as a grantor trust for U.S. federal income tax purposes. If the Service were to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidating Trust and the beneficiaries of the Liquidating Trust could differ materially from those discussed herein (including the potential for an entity level tax to be imposed on all income of the Liquidating Trust).

**D.      U.S. Federal Income Tax Treatment with Respect to Holders of Allowed Claims that are Beneficiaries of the Liquidating Trust.**

Holders of Allowed Claims as of the Effective Date that are Beneficiaries of the Liquidating Trust should be treated as receiving from the Debtors their respective shares of the applicable assets of the Liquidating Trust in satisfaction of their Allowed Claims, and simultaneously transferring such assets to the Liquidating Trust. Accordingly, a Holder of such Claim should generally recognize gain or loss in an amount equal to the amount deemed realized on the Effective Date (as described above) less its adjusted tax basis of its Claim. Additionally, such Holders should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidating Trust on an annual basis.

Because a Holder's ultimate share of the assets of the Liquidating Trust based on its Allowed Claim will not be determinable on the Effective Date due to, among other things, the existence of Disputed Claims and the value of the assets at the time of actual receipt not being ascertainable on the Effective Date, such Holder should recognize additional or offsetting gain or loss if, and to the extent that, the aggregate amount of cash and fair market value of the assets of the Liquidating Trust ultimately received by such Holder is greater than or less than the amount used in initially determining gain or loss in accordance with the procedures described in the preceding paragraph. It is unclear when a Holder of an Allowed Claim that is a beneficiary of the Liquidating Trust should recognize, as an additional amount received for purposes of computing gain or loss, an amount attributable to the disallowance of a Disputed Claim.

The character of any gain or loss as capital gain or loss or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including:  (i) the nature and origin of the Claim; (ii) the tax status of the Holder of the Claim; (iii) whether the Claim has been held for more than one year; (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim; and (v) whether the Claim was acquired at a market discount. A Holder that purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the IRC. Under those rules (subject to a *de minimis* exception), assuming that such Holder has made no election to accrue the market discount and include it in income on a current basis, any gain recognized on the exchange of such Claim generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

It is possible that the Service may assert that any loss should not be recognizable until the Liquidating Trustee makes its final distribution of the assets of the Liquidating Trust. Holders

6090784 v4
67632320.1

should consult their tax advisors regarding the possibility that the recognition of gain or loss may be deferred until the final distribution of the assets of the Liquidating Trust.

Although not free from doubt, Holders of Disputed Claims should not recognize any gain or loss on the date that the Liquidating Trust Assets are transferred to the Liquidating Trust, but should recognize gain or loss in an amount equal to: (i) the amount of cash and the fair market value of any other property actually distributed to such Holder less (ii) the adjusted tax basis of its Claim. It is possible, however, that such Holders may be required to recognize the fair market value of such Holder's allocable share of the Liquidating Trust Assets, as an amount received for purposes of computing gain or loss, either on the Effective Date or the date such Holder's Claim becomes an Allowed Claim.

Holders of Allowed Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any cash or other property received (or deemed received) pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of cash or other property should be attributable to accrued but unpaid interest is unclear. The Debtors and the Liquidating Trust intend to take the position, and the Plan provides, that such cash or property distributed pursuant to the Plan will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each Holder should consult its tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any). A Holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

## VII.    <u>RISK FACTORS IN CONNECTION WITH THE PLAN</u>

The Holders of Claims against the Debtors should read and carefully consider the following risk factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith), before deciding whether to vote to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks associated with the Plan and its implementation.

## A.    **Bankruptcy Considerations**

Although the Plan Proponents believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in the Plan, and there can be no assurance that such conditions will be satisfied or waived. In the event the conditions precedent described in the Plan have not been satisfied, or waived (to the extent possible) by the Plan Proponents or applicable parties (as provided for in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no distributions will be made pursuant to the Plan, and the Debtors and all

6090784 v4
67632320.1

Holders of Claims will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Plan Proponents believe that the classification of Claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and interests encompass Claims or interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The liquidation of certain Assets and the prosecution of certain Causes of Action may result in the availability of additional assets for distribution pursuant to the Plan's terms. The potential recoveries from any such actions, however, are unknown. In addition, there can be no assurance that the Liquidating Trust assets will be sufficient to pay the fees and expenses of the Liquidating Trustee or make any distributions to the Beneficiaries.

As to each Impaired Class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to these Classes. The Plan Proponents believe that the Plan satisfies these requirements. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

## B.     No Duty to Update Disclosures

The Plan Proponents have no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Plan Proponents are required to do so pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

## C.     Representations Outside this Disclosure Statement

This Disclosure Statement contains representations concerning or related to the Debtors and the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements made outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by Holders of Claims that are entitled to vote to accept or reject the Plan.

## D.     No Admission

The information and representations contained herein shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Plan Proponents, the Liquidating Trustee, the Debtor Representative, or Holders of Claims.

## E.     Tax and Other Related Considerations

6090784 v4
67632320.1

A discussion of potential tax consequences of the Plan is set forth in this Disclosure Statement. However, the content of this Disclosure Statement is not intended and should not be construed as tax, legal, business or other professional advice. Holders of Claims should seek advice from their own independent tax, legal or other professional advisors based on their own individual circumstances.

## VIII.  RECOMMENDATION AND CONCLUSION

The Plan Proponents believe the Plan provides the best available alternative for maximizing the recoveries that Creditors may receive from the Estate. Therefore, the Plan Proponents recommend that all Creditors that are entitled to vote on the Plan vote to accept the Plan.

Dated:  February 28, 2019

<div align="right">

**CURAE HEALTH, INC., ET AL**.

Debtors and Debtors in Possession

By: */s/ Stephen Clapp*
Name: Stephen Clapp
Title: President

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: */s/ Bill Anderson*
Name: Bill Anderson
Title: Committee Chair for Official Committee of Unsecured Creditors

</div>

-60-

**POLSINELLI P.C.**

*/s/ Michael Malone*
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (*Pro Hac Vice*)
Caryn E. Wang (*Pro Hac Vice*)
1201 West Peachtree Street NW
Atlanta, GA 30309
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Attorneys for the Debtors and
Debtors in Possession*

-and-

MANIER & HEROD, P.C.

/s/ Robert W. Miller
Michael E. Collins (Bar No. 16036)
Robert W. Miller (Bar No. 31918)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: (615)-244-0030
Facsimile: (615) 242-4203
mcollins@manierherod.com
rmiller@manierherod.com

-and-

-61-

SILLS CUMMIS & GROSS P.C.

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

*Co-Counsel for the Official Committee of*
*Unsecured Creditors of Curae Health, Inc., et al.*

6090784 v4
67632320.1

**<u>Exhibit A</u>**

**The Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| In re:<br><br>Curae Health, Inc., *et al.*[1]<br><br>1721 Midpark Road, Suite B200<br>Knoxville, TN 37921<br><br>            Debtors. | Chapter 11<br>Lead Case No. 18-05665<br><br>Judge Walker<br><br>Jointly Administered |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Curae Health, Inc. (5638); Amory Regional Medical Center, Inc. (2640); Batesville Regional Medical Center, Inc. (7929); and Clarksdale Regional Medical Center, Inc. (4755); Amory Regional Physicians, LLC (5044); Batesville Regional Physicians, LLC (4952); Clarksdale Regional Physicians, LLC (5311).

6088840 v5
67632323.1

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 2

II. DEFINITIONS AND RULES OF CONSTRUCTION .......................................... 3

    A.     Definitions ............................................................................................. 3

    B.     Interpretation, Rules of Construction, Computation of Time .............. 14

           1.     Defined Terms ......................................................................... 14

           2.     Rules of Interpretation ............................................................ 14

           3.     Time Periods ........................................................................... 15

III. DESIGNATION OF CLASSES OF CLAIMS AND CORPORATE INTERESTS ............. 15

    A.     Classes of Claims ................................................................................. 16

1.     CLASS 1 CONSISTS OF ALL PRIORITY NON-TAX CLAIMS. .............................. 16

2.     CLASS 2 CONSISTS OF THE ALLEGED SERVISFIRST SECURED CLAIM. ........ 16

3.     CLASS 3 CONSISTS OF THE ALLEGED CHS SECURED CLAIM. ......................... 16

4.     CLASS 4 CONSISTS OF ALL SECURED CLAIMS OF OTHER LIENHOLDERS. ....................................................................................................... 16

5.     CLASS 5 CONSISTS OF ALL GENERAL UNSECURED CLAIMS. ......................... 16

6.     CLASS 6 CONSISTS OF THE DEFICIENCY CLAIM OF SERVISFIRST. ............... 16

7.     CLASS 7 CONSISTS OF THE DEFICIENCY CLAIM OF CHS. .............................. 16

8.     CLASS 8 CONSISTS OF ALL CORPORATE INTERESTS. .................................... 16

    B.     Impaired Classes .................................................................................. 16

    C.     Terms of Confirmed Plan Control Unless Otherwise Specified ........... 16

    D.     Holders of Claims as of Record Date ................................................... 17

IV. TREATMENT OF CLAIMS ................................................................................ 17

    A.     Unclassified Claims ............................................................................. 17

           1.     Administrative Expense Claims ............................................... 17

           2.     Priority Tax Claims ................................................................. 18

           3.     DIP Claim ................................................................................ 18

           4.     Statutory Fees .......................................................................... 18

    B.     Classified Claims ................................................................................. 18

           1.     Class 1 – Priority Non-Tax Claims ......................................... 18

           2.     Class 2 – Alleged ServisFirst Secured Claim .......................... 19

3.  Class 3 – Alleged CHS Secured Claim .................................................... 19

4.  Class 4 – Secured Claims of Other Lienholders ..................................... 20

5.  Class 5 – General Unsecured Claims..................................................... 20

6.  Class 6 – ServisFirst Deficiency Claim ................................................. 21

7.  Class 7 – CHS Deficiency Claim ........................................................... 21

8.  Class 8 – Corporate Interests ................................................................ 21

C.  General Claim Treatment Provisions ............................................................ 21

1.  Objections .............................................................................................. 21

2.  Attachment of Liens .............................................................................. 21

3.  Survival and Release of Liens............................................................... 21

4.  Surcharge Under Section 506(c) of the Bankruptcy Code...................... 22

5.  Elimination of Vacant Classes .............................................................. 22

6.  Estimation of Claims.............................................................................. 22

7.  Distribution Cap .................................................................................... 23

V. ACCEPTANCE OR REJECTION OF THIS PLAN ........................................................ 23

A.  Voting Classes ............................................................................................... 23

B.  Non-Voting Classes ....................................................................................... 23

C.  Controversy Concerning Impairment ............................................................ 23

D.  Acceptance by Impaired Classes ................................................................... 23

E.  Non-Consensual Confirmation ...................................................................... 23

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 24

A.  Rejection of Executory Contracts and Unexpired Leases................................. 24

B.  Bar Date for Rejection Damages ................................................................... 24

C.  Insurance Policies ......................................................................................... 24

D.  Postpetition Agreements ................................................................................ 25

VII. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN...................... 25

A.  Overview........................................................................................................ 25

B.  Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims and Tort Claims .......... 26

C.  Income Tax Status.......................................................................................... 27

D.  Powers and Authority of the Liquidating Trustee.......................................... 27

E.    Funding of the Liquidating Trust ................................................................. 28

F.    Liquidating Trust's Post-Effective Date Expenses ............................................ 28

G.    Use of Existing Accounts ........................................................................ 29

H.    Employment and Compensation ................................................................ 29

I.    Vesting of Authority in Debtor Representative ................................................ 29

J.    Termination of the Committee; Creation of POC ............................................ 30

K.    Liquidating Trustee as Successor in Interest to the Debtors .............................. 30

L.    Termination of the Liquidating Trust Estate .................................................. 31

M.    Objections to Claims ............................................................................. 31

    1.    Objection Procedures ................................................................ 31

    2.    Resolution of Disputed Claims and Claims that Have Not Otherwise Been Allowed .......................................................... 31

N.    Disallowance of Untimely Claims .............................................................. 32

O.    Continued Corporate Existence ................................................................. 32

P.    Limited Consolidation for Voting and Distribution Purposes ............................. 33

Q.    Right of Relief from Limited Consolidation .................................................. 34

VIII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 34

A.    Delivery of Distributions ........................................................................ 34

B.    Undeliverable Distributions ..................................................................... 34

C.    Failure to Claim Undeliverable Distributions ................................................ 34

D.    Compliance with Tax Requirements ........................................................... 35

E.    Minimum Distributions .......................................................................... 35

F.    Rounding ........................................................................................... 35

G.    Setoffs and Recoupments ........................................................................ 36

H.    Settlement of Claims and Controversies ...................................................... 36

I.    Distributions Free and Clear .................................................................... 36

J.    Not Securities; Section 1145 Exemption ...................................................... 36

IX. PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND ............................... 37

CLAIMS THAT HAVE OTHERWISE NOT BEEN ALLOWED ...................................... 37

A.    Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed ............................................................ 37

B.    Safekeeping of Distributable Property ......................................................... 37

C.    Allowance of Claims .............................................................................. 37

Case 3:18-bk-05665   Doc 835   Filed 03/04/19   Entered 03/04/19 17:42:58   Desc Main
Document   Page 76 of 130

# TABLE OF CONTENTS

X. JURISDICTION .................................................................................................... 38

    A.    Retention of Jurisdiction ................................................................... 38

    B.    Consent to Jurisdiction .................................................................... 39

XI. EXCULPATIONS, RELEASES, AND RELATED PROVISIONS ..................................... 39

    A.    Term of Bankruptcy Injunction or Stay .......................................... 39

    B.    Exculpation .................................................................................... 40

    C.    Release .......................................................................................... 40

    D.    Limitation on Liability of Liquidating Trustee and Debtor Representative ........ 42

    E.    Injunction ...................................................................................... 42

    F.    Nondischarge of the Debtors .......................................................... 43

    G.    Cancellation of Documents ............................................................. 43

    H.    Effect of Plan on Released Claims and Liens ................................... 43

XII. MISCELLANEOUS PROVISIONS ........................................................................... 43

    A.    Conditions Precedent to the Effective Date ...................................... 43

    B.    Effect of Failure of Condition ......................................................... 44

    C.    Waiver of Conditions to the Effective Date ...................................... 44

    D.    Modification of the Plan ................................................................. 45

    E.    Extension of Time .......................................................................... 45

    F.    Post-Effective Date Notice List ...................................................... 45

    G.    Revocation of Plan ........................................................................ 46

    H.    Successors and Assigns .................................................................. 46

    I.    Reservation of Rights ..................................................................... 46

    J.    Service of Documents ..................................................................... 46

    K.    Filing of Additional Documents and Notice of Effective Date ........... 47

    L.    Severability ................................................................................... 47

    M.    Entire Agreement ........................................................................... 47

    N.    Governing Law .............................................................................. 47

    O.    Closing of the Chapter 11 Cases ..................................................... 47

# I.

# INTRODUCTION[2]

Curae Health, Inc*., et al.* (collectively, as defined herein the "Debtors"), the debtors-in-possession in the above-captioned chapter 11 cases, and the Official Committee of Unsecured Creditors (the "Committee") appointed in these cases jointly propose the following plan of liquidation (as defined herein, the "Plan") pursuant to the provisions of chapter 11 of the Bankruptcy Code.

Pursuant to the Plan, the Debtors and the Committee (collectively, the "Plan Proponents") propose an orderly liquidation of the Debtors' remaining Assets. The Plan provides that all funds realized from the collection and liquidation of the Debtors' Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and this Plan. The Plan Proponents propose to implement the Plan by establishing, *inter alia*, a Liquidating Trust that will be administered by the Liquidating Trustee. On the Effective Date, certain of the Debtors' Assets will be transferred to the Liquidating Trust for the benefit of Creditors and certain assets will be administered in the first instance by a Debtor Representative. Thereafter, the Liquidating Trustee will be responsible for liquidating the Assets, including the proceeds of assets administered by the Debtor Representative, and making distributions to Creditors in accordance with the terms of the Plan.

Transmitted with this Plan is a copy of the Disclosure Statement required by section 1125 of the Bankruptcy Code (as defined herein, together with its exhibits and as amended from time to time, the "Disclosure Statement"). The Disclosure Statement is provided to help Creditors understand this Plan. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business and operations, risk factors, and other related matters. The Disclosure Statement also provides a summary of this Plan. All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Plan Proponents before voting to accept or reject this Plan.

The Plan Proponents urge all Creditors and other parties-in-interest to read this Plan and the Disclosure Statement in their entirety. No solicitation materials other than the Disclosure Statement and any documents, schedules, exhibits, or letters attached thereto or referenced therein have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

The Voting Deadline to accept or reject this Plan will be set by order of the United States Bankruptcy Court for the Middle District of Tennessee.

The Plan Proponents believe that this Plan will enable the Estates to efficiently liquidate their Assets for the benefit of the Creditors and accomplish the objectives of chapter 11 of the Bankruptcy Code. The Plan Proponents further believe the Plan presents the most advantageous outcome for all the Debtors' Creditors and, therefore, confirmation of the Plan is in the best

---

[2] Any capitalized terms otherwise undefined in this Introduction shall have the meanings subsequently ascribed to them in this Plan.

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document    Page 78 of 130

interests of the Estates. The Plan Proponents accordingly recommend that Creditors <u>vote to accept the Plan</u>.

<div align="center">

**II.**

**DEFINITIONS AND RULES OF CONSTRUCTION**

</div>

**A.      Definitions**

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"Administrative Bar Date"** means, and is hereby established as, sixty (60) days after the Effective Date, or such other date that is established by Order of the Bankruptcy Court, and is the date by which requests for payment of Administrative Expense Claims other than Professional Compensation and Reimbursement Claims and Section 503(b)(9) Claims must be filed, subject to any exceptions specifically set forth in this Plan.

**"Administrative Expense Claim"** means any Claim entitled to priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including: (i) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates; (ii) Professional Compensation and Reimbursement Claims; (iii) Section 503(b)(9) Claims; and (iv) all fees and charges assessed against the Estates arising under 28 U.S.C. § 1930.

**"Alleged CHS Secured Claim"** means any Secured Claim of CHS asserted against any Debtor.

**"Alleged ServisFirst Secured Claim"** means any Secured Claim asserted by ServisFirst against any Debtor, including in its proof of claim identified as claim number 65-00122 on the Claims Register.

**"Allowed"** means, with respect to a Claim against a Debtor, (i) a Claim that is (a) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, or (b) evidenced by a valid Proof of Claim or request for payment of Administrative Expense Claim, as applicable, filed by the applicable Bar Date, and as to which no Debtor or other authorized party-in-interest has filed an objection to the allowance thereof by the deadline to object to Claims established by this Plan; or (ii) a Claim that is deemed "Allowed" under the Plan or by any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any Claim allowed pursuant to an Order of the Bankruptcy Court or an express agreement between the Holder of such Claim and the Debtors, in consultation with the Committee, solely for the purpose of voting to accept or reject the Plan will not be considered an "Allowed" Claim under the Plan; <u>provided</u> <u>further</u>, <u>however</u>, that any Claim expunged or disallowed under the Plan, by Order of the Bankruptcy Court, or otherwise shall not be an Allowed Claim. If a Claim is Allowed only in part, references to "Allowed" Claims in this Plan include, and are limited to, the portion of such Claim that is Allowed. Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with section 502(d) of the

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
                        Document        Page 79 of 130

Bankruptcy Code is Allowed, and each such Claim shall be expunged without further action by the Debtors, and without further notice to any party, or action, approval, or Order of the Bankruptcy Court.

**"Amory Medical"** means Amory Regional Medical Center, Inc.

**"Amory Physicians"** means Amory Regional Physicians, LLC.

**"Assets"** means each and every item of property and interest of the Debtors or their Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes, without limitation, (i) any property and interests excluded from any Sale; (ii) all accounts receivable of the Debtors; (iii) the DSRF; (iv) any Russellville DSH/UPL Payments; and (v) all Cash (including, without limitation, all proceeds of any Sale), Chapter 5 Actions, accounts receivable, rights in and proceeds of Insurance Policies applicable to any of the Debtors, and any other rights, privileges, deferred taxes, Claims, Causes of Action, or defenses of the Debtors and their Estates, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Tennessee.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075, and the general, local, and chambers rules of the Bankruptcy Court, as the context may require.

**"Bar Date"** means, collectively or individually, as applicable, (i) the Administrative Bar Date; (ii) any deadline for filing proofs of claim for damages arising from the rejection of Executory Contracts, under section VI(B) of this Plan or otherwise; (iii) any deadline for filing proofs of claim established by the General Bar Date Order; and (iv) any other deadline for filing proofs of claim established in the Chapter 11 Cases by the Plan or any Order of the Bankruptcy Court.

**"Batesville Medical"** means Batesville Regional Medical Center, Inc.

**"Batesville Physicians"** means Batesville Regional Physicians, LLC.

**"Beneficiary"** means a "beneficiary," as defined in the Liquidating Trust Agreement.

**"BMC Group"** means BMC Group, Inc.

**"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document    Page 80 of 130

**"Cash"** means cash constituting legal tender of the United States of America, cash equivalents and other readily marketable direct obligations of the United States of America, and fully FDIC-insured certificates of deposit issued by a bank.

**"Causes of Action"** means any and all Claims, actions, causes of action, choses in action, rights, demands, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of setoff, rights of recoupment, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or the Estates), whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the Effective Date or instituted hereafter against any Entity, based in law or equity, including under the Bankruptcy Code or any under any other federal or state statute, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the Effective Date, including, without limitation, (i) the right to object to, challenge or otherwise contest any Claims, whether or not any such Claim is the subject of a proof of claim; (ii) all Claims, causes of action (avoidance actions or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, including all Chapter 5 Actions, or similar or equivalent Claims, causes of action, objections, rights, and remedies arising under state law; (iii) all Tort Claims and D&O Claims; (iv) Claims under any Insurance Policies applicable to the Debtors; (v) all Claims of any kind or nature arising under state or federal law against any of the Debtors' consultants, managers (current or past), advisors, auditors, or other professionals relating to services rendered prior to the Petition Date; (vi) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting secured claim in these cases, other than Claims or Causes of Action released or otherwise waived during the cases; (vii) all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors; (viii) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting secured claim in these cases, other than Claims or Causes of Action released or otherwise waived during the cases; (ix) all Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice; (x) all Claims and/or Causes of Action of any kind or nature arising under state or federal law arising under based upon the formation and capitalization of the Debtors; (xi) all Claims and/or Causes of Action of any kind or nature arising state law based fraudulent conveyance theories; and (xii) all Claims and/or Causes of Action of any kind or nature arising from the payment and/or repayment of Claims by and/or to any Affiliate of any Debtor herein. The foregoing definition shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity. **Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan.**

**"Chapter 5 Actions"** means any and all Claims arising under Chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance, voidable preference, or avoidable transfer Claims that, in any instance, could be brought under state or federal law. The term

"Chapter 5 Actions" shall include, but not be limited to, all causes of action under Chapter 5 of the Bankruptcy Code and any similar state or federal law against persons and entities identified as recipients of transfers from any of the Debtors prior to the Petition Date identified in the Debtors' respective Statements of Financial Affairs, which are available at https://www.bmcgroup.com/restructuring/clients.aspx.

**"Chapter 11 Cases"** means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code styled *In re Curae Health, Inc., et al.*, jointly administered as Case No. 18-05665, pending before the Bankruptcy Court.

**"CHS"** means "CHS" means Community Health Systems, Inc. and (i) each of its current and/or former parents, affiliates and subsidiaries; (ii) each of its former and/or current officers, directors, managers, principals, shareholders, employees, agents, financial advisors, attorneys, auditors, accountants, investment bankers, consultants, representatives, and other professionals; and (iii) with respect to each entity listed in clause (i) such entity's current and former parents, affiliates and subsidiaries and each of their respective current and former officers, directors, managers, principals, shareholders, employees, agents, financial advisors, attorneys, auditors, accountants, investment bankers, consultants, representatives, and other professionals.

**"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**"Claims Register"** means the claims register maintained by Office of the Clerk of the United States Bankruptcy Court for the Middle District of Tennessee.

**"Clarksdale Medical"** means Clarksdale Regional Medical Center, Inc.

**"Clarksdale Physicians"** means Clarksdale Regional Physicians, LLC.

**"Class"** means a group of Holders of Claims or Corporate Interests classified together under the Plan.

**"Collateral"** means any property or interest in property of a Debtor or its Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or otherwise.

"**Committee**" means the official committee of unsecured creditors appointed on September 6, 2018 by the Office of the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code.

**"Committee's Professionals"** means (i) the law firm of Sills Cummis & Gross P.C., (ii) the law firm of Manier & Herod, P.C., and (ii) any and all other professionals that the Committee has retained or may retain, with Bankruptcy Court approval, to assist in the conduct of the Chapter 11 Cases, or to provide professional services for a specified purpose.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**"Corporate Interest"** means any Membership Interest or Equity Interest in any of the Debtors.

**"Creditor"** means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

**"Curae"** means Curae Health, Inc.

**"Cure"** means, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or Ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (ii) the taking of such other actions as may be agreed upon by such parties or Ordered by the Bankruptcy Court.

**"D&O Claims"** means any and all rights, Causes of Action and Claims arising under state and/or federal law against the Debtors' current and former directors, trustees, managers and/or officers, including Claims for breach of fiduciary duty, and the proceeds of any such rights and Claims, including from any Insurance Policies associated therewith.

**"D&O Policies"** means, collectively, any "Directors and Officers" and other fiduciary liability insurance policies belonging to any of the Debtors or under which any of the Debtors is named as an insured or additional insured, including, without limitation, the applicable policy issued by Federal Insurance Company, a member of Chubb Group of Insurance Companies.

**"Debtor Representative"** means [*] or such successor as may be approved and appointed by the Bankruptcy Court.

**"Debtors"** means, collectively, Curae, Amory Medical, Batesville Medical, Clarksdale Medical, Amory Physicians, Batesville Physicians, and Clarksdale Physicians, each of which is a "Debtor."

**"Deficiency Claim"** means, with respect to any Claim asserted as a Secured Claim (including the Alleged ServisFirst Secured Claim, Alleged CHS Secured Claim, and Secured Claims of Other Lienholders), a Claim in an amount equal to the difference between the total Allowed amount of the Claim and the value of any Collateral securing such Claim (*i.e.*, the total Allowed Claim amount minus the allowed Secured Claim amount), as determined consistent with section 506(a) of the Bankruptcy Code or otherwise agreed to by the Holder of the Claim.

**"DIP Claim"** means any Claim of MidCap arising under the DIP Financing Documents.

**"DIP Financing Documents"** means the "DIP Financing Documents" as that term is defined in the Bankruptcy Court's *Final Order (i) Authorizing the Debtors to (a) Obtain Postpetition Secured Financing and (b) Utilize Cash Collateral, (ii) Granting Liens and Superpriority Administrative Expense Status, (iii) Granting Adequate Protection, and (iv) Modifying the Automatic Stay* [Docket No. 455].

**"DIP Order"** means the Bankruptcy Court's *Final Order (i) Authorizing the Debtors to (a) Obtain Postpetition Secured Financing and (b) Utilize Cash Collateral, (ii) Granting Liens and Superpriority Administrative Expense Status, (iii) Granting Adequate Protection, and (iv) Modifying the Automatic Stay* [Docket No. 455].

**"Disallowed"** means, with reference to any Claim, a Claim or any portion thereof that is or has been disallowed or expunged by Order of the Bankruptcy Court.

**"Disclosure Statement"** means the disclosure statement relating to this Plan, including, without limitation, all exhibits, schedules, supplements, and modifications thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means any Claim that has not been Allowed by a Final Order of the Bankruptcy Court and (i) has not been listed on the Schedules, or has been or hereafter is listed on the Schedules, as unliquidated, disputed, or contingent, in either case regardless of whether a proof of claim has been filed with respect to such Claim; or (ii) as to which a Debtor or, if not prohibited by the Plan, any other party-in-interest has interposed or hereafter interposes a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3007, which objection and/or request for estimation has not been withdrawn or determined by a Final Order.

**"Distribution Reserve"** shall have the meaning attributed to such term in section VII(F) of this Plan.

**"DSRF"** means the sum of approximately $950,020.00 held in an account at ServisFirst pursuant to section 5.10 of the Russellville Loan Agreement and belonging to Curae.

**"Effective Date"** means the first Business Day after the Confirmation Order becomes a Final Order and all conditions to the Effective Date as set forth in section XIII(A) of this Plan have been satisfied or, if waivable, jointly waived by the Debtors and the Committee.

**"Entity"** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**"Equity Interests"** means any equity interest in any of the Debtors.

**"Estates"** means the estates of the Debtors created upon the commencement of the Chapter 11 Cases under section 541 of the Bankruptcy Code, each of which is an "Estate."

**"Exculpated Parties"** means, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtors' current Professionals; (b) the Debtors' directors and officers who are serving in such capacity as of the Petition Date; and (c) the Committee and members of the Committee in their capacity as members of the Committee. With

Case 3:18-bk-05665   Doc 835   Filed 03/04/19   Entered 03/04/19 17:42:58   Desc Main
                    Document      Page 84 of 130

respect to each of the foregoing identified in subsection (c), each and all of their respective Professionals.

**"Executory Contract"** means any executory contract to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, specifically excluding contracts and agreements entered into pursuant to this Plan or subject to section 1113 of the Bankruptcy Code.

**"Fee Application"** means an application by a Professional for Allowance of a Professional Compensation and Reimbursement Claim.

**"Final Distribution Date"** means the date on which the distribution is made from the Liquidating Trust that finally and fully exhausts the assets of the Liquidating Trust.

**"Final Order"** means an Order of the Bankruptcy Court or any other adjudicative body, which Order has not been stayed, and as to which the time to appeal or to move for reargument or rehearing has expired and no appeal, or motion for reargument or rehearing shall then be pending; provided, however, that the Confirmation Order shall be deemed a Final Order upon its entry unless it has been stayed.

**"General Bar Date Order"** means the *Order Fixing Bar Dates for Filing Proofs of Claim, Approving 503(b)(9) Proof of Claim Form, and Approving the Form and Manner of Notice of the 503(b)(9) Claims Bar Date* entered December 11, 2018 [Docket No. 544] establishing, among other things, January 21, 2019 as the Bar Date for filing proofs of claim for Claims (other than Claims of Governmental Units) arising prior to the Petition Date and February 20, 2019 as the Bar Date for filing proofs of claim for Claims of Governmental Units arising prior to the Petition Date.

**"General Unsecured Claim"** means any Claim against a Debtor that is not an Unclassified Claim, Priority Non-Tax Claim, Secured Claim, or Deficiency Claim.

**"Governmental Unit"** means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

**"GUC and Deficiency Distribution Date"** means: (i) initially, the first Business Day that is thirty (30) days after the Effective Date or as soon thereafter as practicable; (b) thereafter, any interim date(s) that the Liquidating Trustee, in consultation with the POC, deems appropriate based on, among other things, the amount of the proceeds of the Liquidating Trust Estate on hand, whether there remain any other unpaid obligations under this Plan, the time and the status of pending or potential litigation, if any, affecting payment of such obligations, and the amount of any necessary reserves; and (c) thereafter, the Final Distribution Date.

**"GUC and Deficiency Liquidating Trust Assets"** means all Assets and other corpus of the Liquidating Trust Estate available for distribution to Holders of Allowed General Unsecured Claims and Allowed Deficiency Claims after payment of all other amounts required by this Plan, including, but not limited to (i) payments to holders of Allowed Unclassified Claims, Allowed Priority Non-Tax Claims, and Allowed Secured Claims; (ii) all required statutory fees; and (iii)

all costs and expenses of administration of the Liquidating Trust, including all Post-Effective Date Expenses.

**"Holder"** means the legal or beneficial holder of any Claim against any of the Estates or Corporate Interest in any of the Debtors.

**"Impaired"** means, with respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

**"Insurance Policy"** includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes a Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, the D&O Policies.

**"Interim Management Services Agreement"** means that certain Interim Management Services Agreement by and between Clarksdale Regional Medical Center, Inc. and Clarksdale Regional Physicians, LLC, Clarksdale HMA, LLC, Coahoma County, Mississippi, and CHS/community Health Systems, Inc. approved by the Bankruptcy Court's *Order (i) Authorizing the Debtors to Enter Into the Interim Management Services Agreement with Clarksdale HMA, LLC, Coahoma County, and CHS/Community Health Systems, Inc. and (ii) Granting Related Relief* [Docket No. 558].

**"Lien"** means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

**"Liquidating Trust"** means the trust to be established pursuant to this Plan and the Liquidating Trust Agreement that will effectuate the wind down of the Debtors and their Estates and make distributions pursuant to the terms of this Plan and Liquidating Trust Agreement. With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other Person authorized to take such action in accordance with the Liquidating Trust Agreement. In the event of any conflict between the terms of this Plan and the terms of the Liquidating Trust Agreement, the terms of this Plan shall govern.

**"Liquidating Trust Agreement"** means that certain agreement which will be entered into prior to the Effective Date by the Debtors and the Liquidating Trustee pursuant to article VII of the Plan, will be subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order. The Liquidating Trust Agreement will be filed with the Bankruptcy Court no later than five (5) days before the Confirmation Hearing.

**"Liquidating Trust Estate"** means collectively, (i) all Assets transferred to the Liquidating Trust pursuant to this Plan on the Effective Date or at any time thereafter pursuant to this Plan, (ii) such additional or different corpus as the Liquidating Trustee may from time to time acquire and hold in trust pursuant to the Liquidating Trust Agreement, and (iii) all proceeds of all of the foregoing.

**"Liquidating Trust Expense Reserve"** means the reserve established by the Liquidating Trustee to pay the Post-Effective Date Expenses.

"**Liquidating Trustee**" means [*] and any successor Liquidating Trustee appointed as provided in the Liquidating Trust Agreement. Any changes to the identity of the Liquidating Trustee will be subject to approval of the Bankruptcy Court and will become part of the Plan pursuant to the Confirmation Order.

"**Liquidating Trustee Professional**" means any professional retained or employed by the Liquidating Trustee for carrying out the objectives of the Liquidating Trust Agreement.

"**MedHost**" means MedHost of Tennessee, Inc.

"**MedHost RC Agreements**" means those certain Statements of Work entered into between the Debtors and MedHost in accordance with the Bankruptcy Court's *Expedited Order (i) Authorizing the Debtors to Transfer the Revenue Cycle Services for Debtors' Facilities to MedHost of Tennessee, Inc. and (ii) Granting Related Relief* [Docket No. 366] and *Order (i) Authorizing the Debtors to Transfer the Revenue Cycle Services for Debtors' Clinic Facilities to MedHost of Tennessee, Inc. and (ii) Granting Related Relief* [Docket No. 631].

"**Membership Interest**" means any membership interest in any of the Debtors.

"**MidCap**" means MidCap Financial Trust.

"**MSA**" means that certain Member Substitution Agreement by and between Curae and The Dava Foundation, Inc. dated as of November 12, 2018.

"**Order**" means an order or judgment of the Bankruptcy Court or other adjudicative body.

"**Other Lienholders**" means the holders of Liens against property of the Debtors or their Estates other than any Lien held by ServisFirst, CHS, or MidCap.

"**Person**" means a "person," as such term is defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means August 24, 2018, the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

"**Plan**" means, collectively, this plan of orderly liquidation for the Debtors under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

"**POC**" means the committee of persons appointed as of the Effective Date to advise the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan with respect to the liquidation of Assets for the benefit of the Holders of Allowed General Unsecured Claims.

"**Post-Effective Date Expense(s)**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or

unliquidated incurred by the Liquidating Trust or the Debtor Representative after the Effective Date until the Liquidating Trust is dissolved, including, but not limited to, those expenses described in section VII(F) of this Plan.

**"Post-Effective Date Notice List"** means the list, created pursuant to section XIII(F) of the Plan, of persons who desire to receive notices after the Effective Date of the Plan.

**"Postpetition Agreement(s)"** means all agreements entered into by any of the Debtors after the Petition Date that have been approved by Order of the Bankruptcy Court, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA.

**"Priority Claim"** means any Priority Non-Tax Claim or Priority Tax Claim.

**"Priority Non-Tax Claim"** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

**"Priority Tax Claim"** means any claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Pro Rata Share"** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class or Classes, as applicable, bears to the aggregate amount of: (i) the Allowed Claims such Class or Classes plus (ii) the Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Class Classes, as of the date of determination.

**"Professional"** means a Person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**"Professional Compensation and Reimbursement Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

**"Record Date"** means the Confirmation Date.

"**Released Parties**" means, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtors' current Professionals; (b) the Debtors' directors and officers who are serving in such capacity as of the Petition Date; and (c) the Committee and members of the Committee in their capacity as members of the Committee. With respect to each of the foregoing identified in subsection (c), each and all of their respective Professionals.

**"Russellville DSH/UPL Payment"** means any Medicaid disproportionate-share hospital, upper payment limit, and/or other reimbursements, rebates, or other payments, including the disproportionate-share hospital payment in the approximate amount of $506,641.00 payable to Curae under the MSA and held in trust with the law firm Polsinelli PC.

**"Russellville Loan Agreement"** means the Loan Agreement among Russellville Hospital, Inc., Lakeland Community Hospital, Inc., Northwest Medical Center, Inc., and ServisFirst dated December 31, 2014, as same may have been amended from time to time.

**"Sale"** means any sale of property of the Debtors or their Estates under section 363 of the Bankruptcy Code in the Chapter 11 Cases.

**"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and Statements of Financial Affairs filed by the Debtors with the Bankruptcy Court pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as same may be amended from time to time.

**"Section 503(b)(9) Claim"** means a Claim against a Debtor alleged to be entitled to an administrative expense priority under section 503(b)(9) of the Bankruptcy Code for goods sold to a Debtor in the ordinary course of the Debtor's business and received by such Debtor within twenty (20) days before the Petition Date.

**"Secured Claim"** means a Claim that is secured by a Lien on property in which a Debtor or its Estate has or had an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Debtor or its Estate's interest in such property, or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; provided, however, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such entity's Collateral is less than the amount of such Claim. Nothing herein revives or preserves any Lien on property sold free and clear interests in such property in any Sale in the Chapter 11 Cases.

**"Secured Creditor"** means a Creditor that holds a Secured Claim in the Chapter 11 Cases.

**"ServisFirst"** means ServisFirst Bank.

**"Statement of Financial Affairs"** means any *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* filed by any Debtor in the Chapter 11 Cases.

**"Strategic"** means Strategic Healthcare Resources, LLC.

**"Tort Claims"** means any and all claims of the Debtors based on any tort, including but not limited to any such D&O Claims.

**"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Expense Claims, Priority Tax Claims, and the DIP Claim.

**"Unexpired Lease"** means any unexpired lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**"U.S. Trustee"** means the United States Trustee for the Middle District of Tennessee.

**"Voting Deadline"** means the date fixed by the Bankruptcy Court Order after approval of the Disclosure Statement.

**B.      Interpretation, Rules of Construction, Computation of Time**

**1.      Defined Terms**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.      Rules of Interpretation**

For purposes of this Plan:

**a.**      whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender include the masculine, feminine, and the neutral gender;

**b.**      any reference in this Plan to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

**c.**      any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponents;

**d.**      unless otherwise specified in a particular reference, all references in the Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to the Plan;

**e.**      the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

**f.**      captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document      Page 90 of 130

**g.**     all exhibits to the Plan are incorporated herein, regardless of when those exhibits are filed;

**h.**     except as expressly set forth in this Plan, to the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern; and

**i.**     the words "includes" and "including" are not limiting;

**j.**     any reference to an Entity or a Person as a Holder of a Claim or Equity Interest includes that Entity's or Person's successors and assigns;

**k.**     any immaterial effectuating provisions may be interpreted by the Plan Proponents in a manner that is consistent with the overall purpose and intent of the Plan, all without further order of the Bankruptcy Court; and

**l.**     the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**3.     Time Periods**

**a.**     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**b.**     Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable thereafter.

## III.

## DESIGNATION OF CLASSES OF CLAIMS AND CORPORATE INTERESTS

The following is a designation of the Classes of Claims and Corporate Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Corporate Interest is classified in a particular Class only to the extent that the Claim or Corporate Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Corporate Interest qualifies within the description of such different Class.  A Claim or Corporate Interest is in a particular Class only to the extent that the Claim is an Allowed Claim or Allowed Corporate Interest and has not been paid, released, or otherwise satisfied before the Effective Date.  Further, the provision in this Plan for a Class of Claims or Equity Interests does not presume, and does not constitute any admission or determination regarding, the existence or validity of any Claim (including any purported Secured Claim, including any purported ServisFirst Secured Claim, CHS Secured Claim, or Secured Claims of Other Lienholders) or Equity Interest within such Class.

This Plan is intended to deal with all Claims against and Corporate Interests in the Debtors of whatever character, whether known or unknown, whether or not with recourse,

whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code. **However, only Holders of Allowed Claims and Corporate Interests will receive any distribution under this Plan, and no Holder of a Claim or Corporate Interest shall receive any distribution unless and until such Claim or Corporate Interest is Allowed.** For purposes of determining Pro Rata distributions under this Plan and in accordance with this Plan, Disputed Claims shall be included in the Class in which such Claims would be included if Allowed, until such Claims are finally Disallowed. This Plan will not provide any distributions on account of a Claim or Corporate Interest to the extent that such Claim or Corporate Interest has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date. Classified, Allowed Claims and Corporate Interests shall receive the treatment described in section IV(B) herein.

A.    **Classes of Claims**

1.    **Class 1** consists of all Priority Non-Tax Claims.

2.    **Class 2** consists of the Alleged ServisFirst Secured Claim.

3.    **Class 3** consists of the Alleged CHS Secured Claim.

4.    **Class 4** consists of all Secured Claims of Other Lienholders.

5.    **Class 5** consists of all General Unsecured Claims.

6.    **Class 6** consists of the Deficiency Claim of ServisFirst.

7.    **Class 7** consists of the Deficiency Claim of CHS.

8.    **Class 8** consists of all Corporate Interests.

B.    **Impaired Classes**

Classes 5, 6, 7 and 8 are Impaired under the Plan. The treatment of Allowed Claims in the Impaired Classes under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in each such Impaired Class. Subject to the provisions of any Order approving the Disclosure Statement, Holders of Claims in the Impaired Classes 5, 6, and 7 are entitled to vote on the Plan. Because Holders of Corporate Interests in Class 8 will not receive any distribution under the Plan, they are conclusively presumed to have rejected the Plan, and are not entitled to vote.

All Classes other than Classes 5, 6, 7, and 8 are unimpaired, deemed to accept the Plan, and not entitled to vote on the Plan.

C.    **Terms of Confirmed Plan Control Unless Otherwise Specified**

If the Plan is confirmed by the Bankruptcy Court, except as specifically set forth in this Plan and the Confirmation Order, the treatment of Claims and Corporate Interests set forth in the Plan and the Confirmation Order supersedes and replaces any agreements or rights the Holders

of the Claims or Corporate Interests have in or against the Debtors or their property. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN OR IN THE CONFIRMATION ORDER, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR CORPORATE INTEREST, WHETHER AN ALLOWED CLAIM OR CORPORATE INTEREST OR NOT.**

### D.    Holders of Claims as of Record Date

All distributions under the Plan will be tendered to the Persons or Entities that are the Holders of the relevant Claims or Corporate Interests as of the Record Date.

## IV.

## TREATMENT OF CLAIMS

### A.    Unclassified Claims

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims. Such Unclassified Claims are not considered Impaired and their Holders are not entitled to vote on the Plan because they automatically receive specific treatment provided for them in the Bankruptcy Code. As such, the Plan Proponents did not place the following Claims in a Class. The respective treatment for these Claims is provided below.

### 1.    Administrative Expense Claims

#### a.    General

Subject to the allowance procedures and the deadlines provided in this Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Administrative Expense Claim, or as soon thereafter as is practicable.

Except with respect to Professional Compensation and Reimbursement Claims (which are treated as set forth in section IV(A)(1)(b) below) and Section 503(b)(9) Claims (which are subject to the Bar Date established by the General Bar Date Order), failure to File a request for payment of Administrative Expense Claim on or before the Administrative Bar Date (the date that is sixty (60) days after the Effective Date) shall result in such Administrative Expense Claim being forever Disallowed, barred, and discharged in its entirety.

#### b.    Professional Compensation and Reimbursement Claims

All Professionals seeking payment of Professional Compensation and Reimbursement Claims shall file their respective final Fee Applications no later than sixty (60) days after the

Effective Date. All Professional Compensation and Reimbursement Claims shall be treated as Administrative Expense Claims as set forth in section IV(A)(1)(a) above, or shall be paid on such other terms as may be mutually agreed upon between the Holder of an Allowed Professional Compensation and Reimbursement Claim and the Debtor, or the Liquidating Trustee, as applicable. Failure to timely file a final Fee Application shall result in the Professional Fee Compensation and Reimbursement Claim being forever Disallowed, barred, and discharged in its entirety.

### 2. Priority Tax Claims

In full and final satisfaction of each Allowed Priority Tax Claim, if any, except to the extent any entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to the amount of such Allowed Priority Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Priority Tax Claim, or as soon thereafter as is practicable.

### 3. DIP Claim

The DIP Claim is expected to be paid in full prior to the Effective Date. Solely to the extent the DIP Claim is not paid in full prior to the Effective Date, in full and final satisfaction of the DIP Claim, MidCap shall receive Cash in an amount equal to the amount of such Claim on the Effective Date or as soon thereafter as is practicable.

### 4. Statutory Fees

On or before the date that is thirty (30) days after the Effective Date, the Liquidating Trustee shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code. All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid by the Liquidating Trustee on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed.

## B. Classified Claims

The Allowed Claims classified in article IV of this Plan shall be deemed fully and finally satisfied in the manner set forth herein unless the Holder of such Allowed Claim agrees to accept less favorable treatment.

### 1. Class 1 – Priority Non-Tax Claims

Each Holder of an Allowed Priority Non-Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the amount of such Allowed Priority Non-Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Priority Non-Tax Claim, or as soon thereafter as is practicable.

Case 3:18-bk-05665   Doc 835   Filed 03/04/19   Entered 03/04/19 17:42:58   Desc Main
Document     Page 94 of 130

### 2. Class 2 – Alleged ServisFirst Secured Claim

To the extent any Alleged ServisFirst Secured Claim is Allowed, the Holder of any Allowed ServisFirst Secured Claim shall be paid, in Cash, an amount equal to such Claim, on or before the date that is the later of (i) thirty (30) Business Days after the Effective Date and (ii) five (5) Business Days after entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim. To the extent the Collateral securing any Allowed ServisFirst Secured Claim has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

### 3. Class 3 – Alleged CHS Secured Claim

To the extent any Alleged CHS Secured Claim is Allowed, it will be treated, in the sole discretion of the Plan Proponents, in one of the following ways:

 **a.** on the Effective Date, the legal, equitable, and contractual rights of the Holder of any Allowed CHS Secured Claim shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles such Holder to demand or receive payment of such Claim before the stated maturity of such Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

 **b.** on the Effective Date, the Holder of any Allowed CHS Secured Claim shall (i) retain a Lien securing such Claim and (ii) receive deferred Cash payments from the Liquidating Trust totaling at least the value of such Claim as of the Effective Date in full and final satisfaction of such Claim;

 **c.** on the Effective Date, the Collateral securing any Allowed CHS Claim shall be surrendered to the Holder of such Claim in full satisfaction of such Claim; or

 **d.** the Holder of any Allowed CHS Secured Claim shall be paid, in Cash, an amount equal to such Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim. To the extent the Collateral securing any Allowed CHS Secured Claim has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document      Page 95 of 130

the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

**4.      Class 4 – Secured Claims of Other Lienholders**

To the extent any Secured Claim of an Other Lienholder is Allowed, it will be treated, in the sole discretion of the Plan Proponents, in one of the following ways:

      **a.**      on the Effective Date, the legal, equitable, and contractual rights of the Holder of an Allowed Secured Claim of an Other Lienholder shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles such Holder to demand or receive payment of such Claim before the stated maturity of such Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

      **b.**      on the Effective Date, the Holder of an Allowed Secured Claim of an Other Lienholder shall (i) retain a Lien securing such Claim and (ii) receive deferred Cash payments from the Liquidating Trust totaling at least the value of such Claim as of the Effective Date in full and final satisfaction of such Claim;

      **c.**      on the Effective Date, the Collateral securing an Allowed Claim of an Other Lienholder shall be surrendered to the Holder of such Claim in full satisfaction of such Claim; or

      **d.**      the Holder of an Allowed Secured Claim of an Other Lienholder shall be paid, in Cash, an amount equal to such Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and Allowing such Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Claim.  To the extent the Collateral securing any Allowed Secured Claim of an Other Lienholder has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Claim pursuant to the preceding sentence shall be net of the costs of sale of such Collateral and otherwise subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

**5.      Class 5 – General Unsecured Claims**

Each Holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets.

6. **Class 6 – ServisFirst Deficiency Claim**

The Holder of any Allowed Deficiency Claim of ServisFirst will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets.

7. **Class 7 – CHS Deficiency Claim**

The Holder of any Allowed Deficiency Claim of CHS will receive, in full and final satisfaction of such Claim, on one or more GUC and Deficiency Distribution Dates, a Pro Rata share (calculated based upon the collective Claims in Classes 5, 6, and 7) of the net proceeds of the GUC and Deficiency Liquidating Trust Assets.

8. **Class 8 – Corporate Interests**

Because each of the Debtors is a not-for-profit corporation, Holders of Allowed Corporate Interests shall not receive any distribution on account of such Corporate Interests under the Plan.

C. **General Claim Treatment Provisions**

1. **Objections**

Except as otherwise set forth in any prior Order of the Bankruptcy Court, the failure of any party to object to any Claim in the Chapter 11 Cases, including any Secured Claims (including any Alleged ServisFirst Secured Claims, Alleged CHS Secured Claims, or Secured Claims of Other Lienholders), shall be without prejudice to the rights of the Debtors (in consultation with the Committee) or the Liquidating Trustee to contest, object to, or otherwise defend against such Claim if and when such Claim is sought to be enforced by the Holder of such Claim. Procedures for objections to Claims are set forth in section VII(M) of this Plan.

2. **Attachment of Liens**

No Lien with respect to any Secured Claim shall attach to any property sold free and clear of interests of such property in any Sale in the Chapter 11 Cases.

3. **Survival and Release of Liens**

Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtors held with respect to any Allowed Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Secured Claim is satisfied, at which time such Lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtors (in consultation with the Committee) or Liquidating Trustee, as the case may be, may condition delivery of any final payment upon receipt of an executed release of the Lien.

Any and all Liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes. Nothing in this Plan shall preclude the Debtors (in consultation with the Committee) or the Liquidating Trustee from challenging the validity of any alleged Lien on any asset of any Debtor or the value of the property that secures any alleged Lien, and all such rights are expressly preserved.

### 4. Surcharge Under Section 506(c) of the Bankruptcy Code

All rights of Holders of Secured Claims under this Plan are subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved. Notwithstanding the foregoing, as set forth in the DIP Order, the rights and claims of MidCap shall not be subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code.

### 5. Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 6. Estimation of Claims

Before or after the Effective Date, the Debtors (in consultation with the Committee) or the Liquidating Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim that is disputed, contingent, or unliquidated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

6088840 v5
67632323.1

### 7. Distribution Cap

In no event shall any Holder of an Allowed Claim receive a distribution of a value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

## V.

## ACCEPTANCE OR REJECTION OF THIS PLAN

### A. Voting Classes

Subject to the provisions of any Order approving the Disclosure Statement, Holders of Claims in each Impaired Class (other than Class 8, addressed in section V(B) below), or their designees, shall be entitled to vote such Claims separately to accept or reject the Plan. Classes 5, 6, 7, and 8 are Impaired under the Plan.

### B. Non-Voting Classes

Holders of Claims and Corporate Interests in Classes that are not Impaired are not entitled to vote such Claims to accept or reject this Plan. Each such Holder is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 1, 2, 3, and 4 are not Impaired under this Plan.

Further, because Holders of Corporate Interests in Impaired Class 8 will not receive any distribution under the Plan, they are conclusively presumed to have rejected the Plan, and are not entitled to vote.

### C. Controversy Concerning Impairment

In the event of a controversy as to whether any Holder of an Allowed Claim, Allowed Corporate Interest, or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### D. Acceptance by Impaired Classes

An Impaired Class of Claims shall be deemed to have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims actually voting in such Class have voted to accept the Plan.

An Impaired Class of Corporate Interests shall be deemed to have accepted the Plan if the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the interests of such Class actually voting in such Class have voted to accept the Plan.

### E. Non-Consensual Confirmation

6088840 v5
67632323.1

At the request of the Plan Proponents, this Plan may be confirmed under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code if, in addition to satisfying the other requirements for confirmation (other than section 1129(a)(8) of the Bankruptcy Code), this Plan "does not discriminate unfairly" and is determined to be "fair and equitable" with respect to each Class of Claims or Corporate Interests that has not accepted this Plan (*i.e.*, dissenting Classes). The Plan Proponents will request confirmation under this provision for any Impaired Class that rejects the Plan. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any amendment or supplement thereto, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, in accordance with section 1127 of the Bankruptcy Code and this Plan.

# VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date and subject to this section VI(A) and section VI(C), all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected, as of the Effective Date, other than Executory Contracts and Unexpired Leases that were previously assumed, assumed and assigned, or rejected by Final Order of the Bankruptcy Court (which contracts will be treated in accordance with such Final Order). The Confirmation Order will constitute an Order approving the foregoing rejection. Notwithstanding the foregoing, the Postpetition Agreements shall not be deemed rejected and shall instead revest in the Debtors pursuant to section VI(D) below.

### B.    Bar Date for Rejection Damages

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and the Confirmation Order or a previous or subsequent Order of the Bankruptcy Court gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever Disallowed, barred, and discharged in its entirety, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates unless a proof of Claim is filed and served on the Debtors or the Liquidating Trust, as the case may be, and their counsel within thirty (30) days after the Confirmation Date. Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously-established Bar Date in the Chapter 11 Cases, such previously-established Bar Date shall be deemed operative and will not be deemed extended by virtue of this section VI(B). All such Claims for which proofs of Claim are required to be filed for contracts and leases to which any Debtor is a party, if Allowed, will be classified and treated as a General Unsecured Claim against the applicable Debtor, subject to the provisions of this Plan.

### C.    Insurance Policies

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to all Insurance Policies under which any of the Debtors may be a beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by any Debtor after the Petition

Date, and all Insurance Policies under which any Debtor holds rights to make, amend, prosecute, and benefit from claims) shall revest in the applicable Debtor(s) as necessary for the Debtor Representative to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action by the Debtor Representative, all such Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its dissolution, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in his or her discretion. Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee or Debtor Representative, as applicable, who shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by any Debtor exists with respect to any of the Insurance Policies requiring Cure, and that nothing in any prior Order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action, including the D&O Claims. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estates.

**D.     Postpetition Agreements**

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, shall revest in the Debtors. Notwithstanding any provision providing for the rejection of Executory Contracts, any Postpetition Agreements shall neither be rejected nor assumed by operation of this Plan, and shall be the subject of a specific motion by the Liquidating Trustee or Debtor Representative, as applicable, who shall retain the right to assume or reject the Postpetition Agreements to the extent necessary, pursuant to and subject to the provisions of section 365 of the Bankruptcy Code, following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, requiring Cure, and that nothing in any prior Order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Postpetition Agreements against any counterparty thereto. The Plan shall be liberally construed to protect the interests of the Estates with respect to the Postpetition Agreements.

## VII.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.     Overview**

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document    Page 101 of 130

This Plan provides for the disposition of substantially all the Assets and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code. This Plan further provides for the winding down of the Debtors and their affairs by the Liquidating Trustee. This Plan also creates a mechanism for the Liquidating Trustee and Debtor Representative to pursue Claims and Causes of Action, including D&O Claims and Tort Claims, to enable recoveries to Creditors herein.

**B.     Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims and Tort Claims**

Prior to the Effective Date, the Debtors shall execute the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

On the Effective Date, and in accordance with the Confirmation Order, the Estates' titles to all the Assets (other than the D&O Claims and Tort Claims, which shall revest in the applicable Debtor(s) and may be pursued by the Debtor Representative) shall automatically pass to the Liquidating Trust, free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code. Notwithstanding the foregoing, the Plan Proponents reserve the right to modify the Plan to exclude certain Assets from transfer to the Liquidating Trust. The Confirmation Order shall constitute a determination that the transfers of the Assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of Tennessee.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidating Trust. The Assets will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

The Liquidating Trustee will be appointed as of the date of execution of the Liquidating Trust Agreement. The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan.

On the Effective Date, the Debtor Representative shall be deemed appointed pursuant to section 1123(b)(3) of the Bankruptcy Code and vested with all power and authority granted to the Debtor Representative under this Plan.

On the Effective Date, the Estates' interests in any D&O Claims, Tort Claims, and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Causes of Action will revest in the Debtors. The Debtor Representative shall be authorized to institute and to prosecute through final judgment or settle the D&O Claims and Tort Claims in his discretion. Upon the entry of a final judgment or settlement, the relevant proceeds of the D&O Claims and Tort Claims shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Claims in accordance with the provisions of this Plan.

In addition to the foregoing, to the extent any D&O Claims and Tort Claims are assignable under applicable law, the Debtor Representative is expressly authorized, in his

discretion, to assign such D&O Claims and Tort Claims to the Liquidating Trust for prosecution and/or settlement by the Liquidating Trustee upon the occurrence of the Effective Date or at any time thereafter. To the extent necessary for the Liquidating Trustee to pursue and prosecute any such D&O Claims and Tort Claims, all rights in and proceeds of any applicable Insurance Policies shall be deemed transferred to the Liquidating Trust upon the assignment of such D&O Claims and Tort Claims.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidating Trustee and the Debtor Representative on the Assets, D&O Claims, Tort Claims, and rights in and proceeds of any Insurance Policies. The Proceeds of all Causes of Action are material to the implementation of this Plan and the recoveries to Creditors herein**.

## C.      Income Tax Status

For federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries of the Liquidating Trust Estate) shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of Assets to the Liquidating Trust under the Plan shall be treated as a deemed transfer to the Beneficiaries of the Liquidating Trust Estate in satisfaction of their Claims followed by a deemed transfer of the Assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the Liquidating Trust and its assets. For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC sections 671-677 (a non-taxable pass-through tax entity) owned by the Beneficiaries. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions, and credits ("**Tax Items**"). The Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes. The assets shall be valued based on the Liquidating Trustee's good faith determination of their fair market value.

## D.      Powers and Authority of the Liquidating Trustee

The powers of the Liquidating Trustee are set forth in full in the Liquidating Trust Agreement and shall include, among other things: (a) the power to sell, lease, license, abandon, or otherwise dispose of all remaining Assets of the Liquidating Trust Estate subject to the terms of this Plan; (b) the power to wind down the Debtors and their affairs, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about and orderly wind down of the Debtors' operations; (c) the power to effect distributions under this Plan to the Holders of Allowed Claims; (d) the authority to pay all costs and expenses of administering the Liquidating Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons to assist the Liquidating Trustee in carrying out the duties hereunder, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (e) the power to implement this Plan including

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
                        Document      Page 103 of 130

any other powers necessary or incidental thereto; (f) the authority to settle Claims, applicable Causes of Action, including Chapter 5 Actions, or disputes as to amounts owing to or from the Estates; (g) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order; (h) the authority to participate in actions to enforce or interpret this Plan; and (i) the power to bind the Liquidating Trust. Each of the foregoing powers may be exercised by the Liquidating Trustee without further order of the Bankruptcy Court. Notwithstanding any of the foregoing, the Liquidating Trustee may not materially amend or alter the terms and provisions of this Plan.

## E. Funding of the Liquidating Trust

The funding of the Liquidating Trust for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the Liquidating Trust Expense Reserve, (ii) the Debtors' Cash on hand as of the Effective Date, which will be transferred to the Liquidating Trust as of the Effective Date and proceeds from the investment of such Cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any Claims or Causes of Action.

The Liquidating Trustee, in his or her sole discretion, shall have the authority to allocate and reallocate Assets of the Estates (including Cash, and including with respect to any reserves provided for under this Plan) as necessary to effectuate the Plan without further application to, or approval of, the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of this Plan; provided, however, that the Liquidating Trustee may, but is not required to, apply to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation. In the event that the Liquidating Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Assets of the Estates in a manner that would otherwise be inconsistent with any term of this Plan (including for the purposes of distribution under the Plan), the Liquidating Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List.

## F. Liquidating Trust's Post-Effective Date Expenses

All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Liquidating Trust is dissolved will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Expense Reserve or other Liquidating Trust assets as appropriate for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Bankruptcy Court. The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Liquidating Trustee, the fees and expenses of the Debtor Representative, the fees and expenses of the professionals employed by the Liquidating Trustee and/or the Debtor Representative, and other costs, expenses, and obligations of the Liquidating Trust until the date the Liquidating Trust is terminated in accordance with section VII(L) and the Liquidating Trust Agreement. The Liquidating Trustee, in his or her sole discretion, on and after

the Effective Date, shall have authority to increase or decrease the Liquidating Trust Expense Reserve, as reasonably necessary and appropriate, to account for and pay the Post-Effective Date Expenses.

Prior to making a distribution to any Holders of Allowed Claims under the Plan, the Liquidating Trustee may place in reserve and/or in a separate account any funds that may be needed to pay Claims that are Disputed and Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed (the **"Distribution Reserve"**). When a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the Distribution Reserve and shall be available for distribution in accordance with the terms of this Plan to either (i) the Holder of the Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed Claims. The Liquidating Trustee, in his or her sole discretion, on and after the Effective Date, shall have authority to increase or decrease the Distribution Reserve, as reasonably necessary and appropriate, and upon satisfaction of all Allowed Claims required to be paid from the Distribution Reserve, to transfer amounts held therein for distribution pursuant to the Plan.

## G.     Use of Existing Accounts

The Liquidating Trustee may use the Debtors' existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired. After the DIP Loan is repaid in full in accordance with the DIP Order, the Liquidating Trustee also may close the Debtors' existing bank accounts, in his or her discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of this Plan. Alternatively, notwithstanding any provisions to the contrary in this Plan, and only after the DIP Loan is repaid in full in accordance with the DIP Order, the Liquidating Trustee may invest some or all the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

## H.     Employment and Compensation

The Liquidating Trustee shall serve without bond and shall receive compensation for serving as Liquidating Trustee as set forth in the Liquidating Trust Agreement. At any time after the Effective Date and without further Order of the Bankruptcy Court, the Liquidating Trustee may employ and compensate Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Case) reasonably necessary to assist the Liquidating Trustee in the performance of his duties under the Liquidating Trust Agreement and this Plan. Such Persons or Entities shall be compensated and reimbursed by the Liquidating Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

## I.     Vesting of Authority in Debtor Representative

Upon the Effective Date, the Debtors' boards of directors and/or trustees, as applicable, shall be dissolved and the then-current officers of the Debtors and members of the boards of directors and/or trustees of the Debtors shall be relieved of their positions and corresponding

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document      Page 105 of 130

duties and obligations; provided, however, that the Debtor Representative shall be responsible for effectuating transfers of Assets in accordance with this Plan and otherwise satisfying the Debtors' obligations under the terms of this Plan.  On and after the Effective Date, the Debtor Representative shall have full and complete authority to act on behalf of and bind the Debtors, and to enforce the rights of the Debtors and their Estates with respect to any Postpetition Agreements, including, but not limited to, the MedHost RC Agreements, the Interim Management Services Agreement, and the MSA, without further action or approval of the Bankruptcy Court or the boards of directors and/or trustees of the Debtors.  After the D&O Claims and Tort Claims are liquidated and the proceeds of such Causes of Action are transferred to the Liquidating Trust Estate in accordance with this Plan, the Debtor Representative shall be empowered, but not directed, to effectuate the dissolution of the Debtors in accordance with the laws of the State of Tennessee.

## J.  Termination of the Committee; Creation of POC

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final Fee Applications filed in the Chapter 11 Cases.

On the Effective Date, the Committee shall be replaced by the POC that shall consist of not less than three (3) Persons or Entities that are Beneficiaries of the Liquidating Trust.  The identities of the Persons and/or Entities that will serve on the POC as of the Effective Date will be filed by the Committee with the Bankruptcy Court no later than five (5) days before the Confirmation Hearing, provided, however, that ServisFirst shall be a member of the POC.  The POC may also include such other Persons or Entities (including ex officio members) as may be requested by the POC, which Persons or Entities shall have agreed to participate in the performance of the POC's functions as set forth in this Plan.  The POC's sole function and responsibility shall be to advise the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan with respect to the liquidation of Assets for the benefit of the Holders of Allowed Claims.  The members of the POC shall serve without compensation but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the POC.  The POC shall adopt by-laws governing all matters concerning participation in the POC, which by-laws shall include one or more mechanisms for individual members of the POC to be recused from consideration or voting upon matters that could pose a conflict of interest.

## K.  Liquidating Trustee as Successor in Interest to the Debtors and Committee

Except as to the D&O Claims and the Tort Claims, the Liquidating Trustee is the successor in interest to the Debtors and the Committee, and thus, after the Effective Date, to the extent this Plan requires an action by the Debtors (and except as it relates to the D&O Claims and Tort Claims, or is otherwise delegated to the Debtor Representative), the action shall be taken by the Liquidating Trustee on behalf of the Debtors and the Creditors' Committee, as applicable.  The Liquidating Trustee may not materially amend or alter the terms and provisions

of this Plan.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries of the Liquidating Trust Estate) shall treat the transfer of Assets to the Liquidating Trust in accordance with the terms of this Plan, as a sale by the Debtors of such Assets to the Liquidating Trust Estate at a selling price equal to the fair market value of such Assets on the Effective Date. The Liquidating Trust shall be treated as the owner of all Assets that it holds.

## L.    Termination of the Liquidating Trust Estate

The existence of the Liquidating Trust and the authority of the Liquidating Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Cases is a Final Order or (b) five (5) years after the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided in the Liquidating Trust Agreement.

At such time as the Liquidating Trust has been fully administered (*i.e.*, when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidating Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court.

## M.    Objections to Claims

### 1.    Objection Procedures

From and after the Effective Date, the Liquidating Trustee shall have the exclusive right and standing to (i) object to and contest the allowance of all Claims, (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further Order or approval of the Bankruptcy Court, subject to the notice procedure set forth in section VII(M)(2); and (iii) litigate to final resolution objections to Claims.

**No distribution shall be made pursuant to this Plan to a Holder of Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidating Trustee or a holder of a Claim.

### 2.    Resolution of Disputed Claims and Claims that Have Not Otherwise Been Allowed

If the Holder of a Disputed Claim or Claim that has not otherwise been Allowed and the Liquidating Trustee agree to a settlement of such Claim (i) for a payment that does not exceed fifty thousand dollars ($50,000) or (ii) by Allowing such Claim in an amount that does not exceed two hundred fifty thousand dollars ($250,000), the Liquidating Trustee shall be authorized to enter into and effectuate such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claim shall be deemed an Allowed Claim. If the Holder of such a Claim and the Liquidating Trustee agree to a settlement of such Claim (i) for a payment that exceeds fifty thousand dollars ($50,000) or (ii) by Allowing such Claim in an amount that exceeds two hundred fifty thousand dollars ($250,000), the Liquidating Trustee shall provide notice of the proposed settlement (with a fourteen-day (14-day) period to object) to the Persons or Entities on the Post-Effective Date Notice List. If no objection is received within the fourteen-day (14) period, the settled Claim shall be deemed to be an Allowed Claim, without the need for further review by, or approval of, the Bankruptcy Court or any other party. If an objection to a proposed settlement is received within the fourteen-day (14-day) period and such objection cannot otherwise be resolved, then the Liquidating Trustee shall schedule a hearing in the Bankruptcy Court to resolve the objection.

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions. The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

## N.     Disallowance of Untimely Claims

Except as provided herein or otherwise agreed by the Liquidating Trustee, any and all Holders of proofs of claim filed after the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2) unless on or before the Voting Deadline or the Confirmation Date, as the case may be, such late proofs of claim are deemed timely filed by a Final Order of the Bankruptcy Court.

Claims for which proofs of claim or requests for allowance were required to be filed by a Bar Date occurring before the Effective Date, and with respect to which no proof of claim or request for allowance was filed before the applicable Bar Date, shall be forever Disallowed, barred, and discharged in their entirety as of the Effective Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates, unless such proofs of claim or requests for allowance are deemed timely filed by a Final Order of the Bankruptcy Court before the Effective Date.

Claims for which proofs of claim or requests for allowance are required to be filed after the Effective Date pursuant to a Bar Date established by this Plan, and with respect to which no proof of claim or request for allowance is filed by the applicable Bar Date, shall be forever Disallowed, barred, and discharged in their entirety as of the applicable Bar Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates.

## O.     Continued Corporate Existence

Case 3:18-bk-05665    Doc 835    Filed 03/04/19    Entered 03/04/19 17:42:58    Desc Main
Document    Page 108 of 130

Notwithstanding anything to the contrary in the Plan or Confirmation Order, each Debtor shall continue to exist as a separate corporate entity after the Effective Date solely for the purpose of implementing the Plan unless and until such Debtor is dissolved in accordance with applicable state law pursuant to the terms of the Plan.

The winding down of the Debtors' affairs, filing of any necessary documentation to dissolve the Debtors, and adoption of any and all corporate documents or resolutions necessary or appropriate to implement the Plan are hereby deemed authorized and approved in all respects without further action under any applicable law, regulation, order or rule.

## P. Limited Consolidation for Voting and Distribution Purposes

Subject to sections VII(E) above and VII(Q) below, the Plan treats the Debtors as comprising a single Estate solely for the purposes of classification of Claims and Corporate Interests, voting on the Plan, confirmation of the Plan, and making distributions under the Plan with respect to Allowed Claims. All property of each of the Debtors' Estates shall be deemed to be property of a consolidated Estate consisting of all the Debtor's Estates. Each Claim against any of the Debtors will be deemed to be a Claim against the consolidated Estate, and any proof of Claim filed against one or more of the Debtors will be deemed to have been filed against the consolidated Estate. In the Liquidating Trustee's sole and absolute discretion, (i) all guarantees by one of the Debtors in favor of any of the other Debtors may be eliminated, (ii) all guarantees executed by any of the Debtors in favor of any Creditor may be deemed to be a single obligation, and (iii) any and all Claims among or between the Debtor entities may be waived and not entitled to any distribution under the Plan.

Neither the foregoing treatment nor anything else in this Plan shall (i) affect any Debtor's status as a separate and independent legal entity; (ii) affect the Debtors' organizational structure; (iii) constitute a change of control of any Debtor for any purpose; (iv) cause a merger or consolidation of any legal entities; (v) cause a transfer of any Assets; (vi) affect any valid, enforceable, and unavoidable Liens (other than any Liens that secure any Claims eliminated as a result of the limited consolidation and any Liens against any Collateral that ceases to exist as a result of the limited consolidation); (vii) cause any Lien to attach to any property of any Debtor or Estate to which such Lien would not attach in the absence of the limited consolidation provided for in this section VII(P); (viii) create new Collateral with respect to any Lien, charge, or other encumbrance securing the payment or performance of any Claim; (ix) make any Assets or proceeds thereof available for the satisfaction of any Secured Claim that would not be available for the satisfaction of such Secured Claim in the absence of the limited consolidation provided for in this section VII(P); (x) create any Claim in a Class different from the Class in which such Claim would have been placed in the absence of limited consolidation; (xi) change the priority or nature of any Claim; (xii) affect any Debtor's independent ownership of any Assets for any purposes other than the limited consolidation described herein; or (xiii) result in the substantive consolidation of the Debtors. Except as otherwise expressly provided by or permitted in the Plan, all Debtors shall continue to exist as separate and independent legal entities. Further, neither the treatment set forth in this section VII(P) nor anything else in this Plan shall (a) affect any Cause of Action available to any Debtor or Estate; (b) constitute any admission by any Debtor or Estate with respect to any Cause of Action; (c) have any estoppel effect with respect to any Cause of Action; or (d) constitute or affect admissible evidence in

connection with any litigation of any Cause of Action. The treatment described in this section VII(P) serves only as a mechanism to effect a fair distribution of value to the Holders of Allowed Claims.

## Q. Right of Relief from Limited Consolidation

Notwithstanding the terms of section VII(P) above or the effect of section 1127 of the Bankruptcy Code in the event of substantial consummation of this Plan (as defined in section 1101 of the Bankruptcy Code), the Liquidation Trustee shall have the authority to allocate or reallocate Assets of the Estates, including for the purposes of distribution, consistent with section VII(E) above. In addition to the authority to allocate or reallocate Assets in a manner that would otherwise be inconsistent with any term of this Plan with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List as set forth in section VII(E) above, the Liquidating Trustee shall have the right and authority to apply to the Bankruptcy Court on notice to parties included in the Post-Effective Date Notice List for a substantive consolidation of the Debtors' Estates in the event that the Liquidating Trustee determines, following subsequent investigation and/or discovery or otherwise, that grounds for such substantive consolidation exist.

# VIII.

# PROVISIONS GOVERNING DISTRIBUTIONS

## A. Delivery of Distributions

Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as indicated on the records of the Debtor, or a filed proof of Claim, as applicable.

## B. Undeliverable Distributions

If any Allowed Claim Holder's distribution is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. Within twenty one (21) days after the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall make all distributions that become deliverable during the preceding calendar quarter, except as otherwise provided herein. Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution under this Plan.

## C. Failure to Claim Undeliverable Distributions

In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Liquidating Trustee will file with the Bankruptcy Court a listing of unclaimed distribution Holders. This list will be maintained and updated as needed for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against the Debtor, the Liquidating Trust Estate, the Liquidating Trustee, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidating Trust Estate, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

## D.     Compliance with Tax Requirements

In connection with the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Plan.**

## E.     Minimum Distributions

If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular Distribution Date, the Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distribution owed to any Holder of an Allowed Claim never equals or exceeds fifty dollars ($50), then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

## F.     Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

## G.     Setoffs and Recoupments

The Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim), the Claims, rights, and Causes of Action of any nature that the Debtors, Estates, or Liquidating Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such Claims, rights, or Causes of Action that the Debtors, Estates, or Liquidating Trust may possess against such Holder.

## H.     Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Corporate Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Corporate Interest may have with respect to any Allowed Claim or Corporate Interest, or any distribution to be made on account of such Allowed Claim or Corporate Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Corporate Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Corporate Interests, and is fair, equitable, and reasonable.

## I.     Distributions Free and Clear

Except as otherwise provided herein, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no other Entity, including any Debtor, shall have any interest (legal, beneficial or otherwise) in any Estate property distributed pursuant to the Plan.

## J.     Not Securities; Section 1145 Exemption

The respective rights of the Holders of Claims and Ownership Interests arising under the Plan are not intended to be "securities" under applicable laws, but the Debtors do not represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Debtors intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

# IX.

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND
## CLAIMS THAT HAVE OTHERWISE NOT BEEN ALLOWED

### A. Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidating Trustee, in his or her sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Claim that has otherwise not been Allowed until such disputes are resolved by settlement or Final Order and the Claim has been Allowed. Notwithstanding the foregoing, any Person or Entity who holds both an Allowed Claim and a separate and distinct Disputed Claim or Claim that has otherwise not been Allowed will receive the appropriate payment or distribution on account of the Allowed Claim, although, except as otherwise agreed by the Liquidating Trustee in his or her sole discretion, no payment or distribution will be made on the Disputed Claim or Claim that has otherwise not been Allowed until such dispute is resolved by settlement or Final Order and the Claim has been Allowed. In the event there is a Disputed Claim or Claim that has otherwise not been Allowed requiring adjudication and resolution, the Liquidating Trustee reserves the right to, or upon order of the Bankruptcy Court shall, establish appropriate reserves for potential payment of such Claim.

### B. Safekeeping of Distributable Property

Pending entry of a Final Order determining an objection to any Disputed Claim or Allowing a Claim that has not otherwise been Allowed, the Liquidating Trustee shall take appropriate steps to safeguard the Cash, notes, or other instruments that would be distributed on account of such Claim if Allowed, but the Liquidating Trustee shall not be required to establish any formal escrow or reserve for such distributable property unless it determines, or the Bankruptcy Court orders, that an escrow or reserve is necessary to ensure that such property is available if and when such Claim is Allowed.

### C. Allowance of Claims

Except as expressly provided herein or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Liquidating Trust Estate, on and after the Effective Date, will have and retain any and all rights and defenses the Debtors had with respect to such Claim as of the Petition Date.

# X.

# JURISDICTION

## A.     Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases until the Chapter 11 Cases are closed, including jurisdiction to issue any other Order necessary to administer the Estates or the Liquidating Trust Estate and enforce the terms of this Plan, and/or the Liquidating Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

**a.**     To determine the type, allowance, and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidating Trustee or any other party-in-interest entitled to proceed in that manner;

**b.**     Except as otherwise limited herein, to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

**c.**     To hear and determine any issue arising under this Plan; provided, however, any action, controversy, dispute, claim, or question arising out of or relating to the right of any party to enforce, contest, and/or litigate the existence, primacy, and/or scope of available coverage and/or any defenses to coverage under the Insurance Policies shall be referred to and resolved solely in accordance with the terms and conditions of the Insurance Policies and applicable non-bankruptcy law, including, but not limited to, any choice of law, forum, or jurisdiction provision therein;

**d.**     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**e.**     To hear any other matter not inconsistent with the Bankruptcy Code;

**f.**     To enter a final decree closing the Chapter 11 Cases;

**g.**     To ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

**h.**     To decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on or instituted by the Liquidating Trustee after the Effective Date;

**i.**     To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

**j.** To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

**k.** To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

**l.** To adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) the D&O Claims; (iii) the Tort Claims; and (iv) claims against third parties relating to the facts and circumstances surrounding the same; provided, however, that nothing in this Plan or the Confirmation Order shall vest the Bankruptcy Court with exclusive jurisdiction over any claims identified in subclauses (ii) through (iv) of this subparagraph (l) or over any dispute relating to coverage under the D&O Policies;

**m.** To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

**n.** To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder, or for any other purpose.

## B.     Consent to Jurisdiction

All creditors who have filed claims in the Chapter 11 Cases shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## XI.

## EXCULPATIONS, RELEASES, AND RELATED PROVISIONS

## A.     Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Effective Date, all entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in this

Plan and the Bankruptcy Code and Bankruptcy Rules; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or Order against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee on account of any such Claim; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, or the Liquidation Trustee on account of any such Claim; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee, or against the property or interests in property of the Debtors, the Debtors' estates, the Liquidating Trust, or the Liquidating Trustee on account of any such Claim. Such injunction shall extend for the benefit of the Debtor Representative, the Liquidating Trustee, and any successors of the Debtors, and to any property and interests in property subject to this Plan.

**B.      Exculpation**

Subject to the Chapter 5 Carve Out (defined below) and except as otherwise specifically provided in the Plan, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Corporate Interest (including Estate Claims) for any postpetition act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the Plan, the Disclosure Statement, the pursuit of Confirmation, the consummation of the Plan, the administration of the Plan, the property to be liquidated and/or distributed under the Plan or any other postpetition act taken or omitted to be taken in connection with the liquidation of the Debtors (other than for illegal conduct, willful or wanton conduct, or gross negligence, or fraud as determined by a Final Order of a court of competent jurisdiction) and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

The foregoing paragraph shall apply to attorneys to the greatest extent permissible under applicable bar rules and case law.

**C.      Release**

**PURSUANT TO BANKRUPTCY CODE SECTION 1123(B), AND NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND SUBJECT TO THE NONPROFIT ACT CLAUSE (DEFINED BELOW) AND THE CHAPTER 5 CARVE OUT (DEFINED BELOW), THE RELEASED PARTIES SHALL BE DEEMED RELEASED BY THE DEBTORS AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (OTHER THAN FOR ILLEGAL CONDUCT, GROSS NEGLIGENCE, BAD FAITH, OR FRAUD), INCLUDING DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ANY OF THE DEBTORS OR THE ESTATES, AS APPLICABLE, WOULD HAVE BEEN LEGALLY**

**ENTITLED TO ASSERT IN ITS OWN RIGHT, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURCHASE, SALE, TRANSFER, OR RESCISSION OF THE PURCHASE, SALE, OR TRANSFER OF ANY DEBT, CORPORATE INTEREST, ASSET, RIGHT, OR INTEREST OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR CORPORATE INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN AND ANY OTHER AGREEMENTS OR DOCUMENTS EFFECTUATING THE PLAN, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, AND ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS OR THE ESTATES. FOR PURPOSES OF THE RELEASES CONTAINED IN THE PLAN, THE LIQUIDATING TRUSTEE IS DEEMED TO BE A SUCCESSOR TO THE ESTATES AND, THEREFORE, IS BOUND BY THE RELEASES CONTAINED IN THE PLAN.**

**NOTWITHSTANDING THE FOREGOING, THE DEBTORS' DIRECTORS AND OFFICERS INCLUDED IN THE DEFINITION OF "RELEASED PARTIES" SHALL ONLY BE DEEMED RELEASED BY THE DEBTORS AND THE ESTATES FROM CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES: (I) TO THE EXTENT THE DEBTORS' DIRECTORS AND OFFICERS ARE IMMUNE FROM SUIT UNDER T.C.A. § 48-58-601; (II) FOR CONFLICTED TRANSACTIONS SOLELY TO THE EXTENT CONSISTENT WITH AND SUBJECT TO T.C.A. § 48-58-702; AND (III) FOR MONETARY DAMAGES FOR BREACH OF FIDUCIARY DUTY SOLELY TO THE EXTENT ELIMINATED, IF AT ALL, PURSUANT TO THE DEBTORS' CHARTERS AND BYLAWS, CONSISTENT WITH AND SUBJECT TO THE PROVISIONS OF T.C.A. §§ 48–51–101 *ET SEQ.* (THE "<u>NONPROFIT ACT</u>") (COLLECTIVELY "<u>THE NONPROFIT ACT CLAUSE</u>"). FOR THE AVOIDANCE OF DOUBT, THE DEBTORS' DIRECTORS AND OFFICERS NOT INCLUDED IN THE DEFINITION OF "RELEASED PARTIES" ARE NOT DEEMED RELEASED PURSUANT TO ANY TERMS OF THE PLAN OR ANY RELATED DOCUMENTS.**

Nothing contained in this Plan or any related document shall be deemed to alter, modify, or expand in any way the rights or immunities set forth in the Nonprofit Act, including, but not limited to, sections 48-58-601 and 48-58-702. In the event of any conflict or inconsistency between the terms of this Plan and the provisions of the Nonprofit Act, the provisions of the Nonprofit Act shall govern and control for all purposes.

For the avoidance of doubt, except as set specifically forth herein, nothing in this Plan or any related document shall impair any rights with respect to any D&O Claims and all D&O Claims are expressly reserved and preserved.

**Notwithstanding anything to the contrary contained herein, nothing in this Plan or any related document shall be deemed to release, exculpate, discharge or otherwise waive any Chapter 5 Actions (the "Chapter 5 Carve Out").**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE OF THE RELEASED PARTIES BY THE DEBTORS AND THE ESTATES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE OF THE RELEASED PARTIES BY THE DEBTORS AND THE ESTATES IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS OR THE ESTATES; (C) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO THE DEBTORS OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE BY THE DEBTORS OR THE ESTATES.**

**D.      Limitation on Liability of Liquidating Trustee and Debtor Representative**

Neither the Liquidating Trustee nor the Debtor Representative will be liable for any act they may do or omit to do as Liquidating Trustee or Debtor Representative under the Plan and the Liquidating Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will the Liquidating Trustee or the Debtor Representative be liable in any event except for gross negligence, willful fraud, or willful misconduct.  The foregoing limitation on liability also will apply to any Person (including any Liquidating Trustee Professional) employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative in the fulfillment of their respective duties hereunder or under the Liquidating Trust Agreement.  Also, the Debtor Representative, the Liquidating Trustee, and any Person (including any Liquidating Trustee Professional) employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by the Liquidating Trustee or Debtor Representative, or for performing any functions incidental to such service.

To the extent of the exculpation as provided in section XI(B) above and the release provided in section XI(C) above, the Liquidating Trust is deemed to release each Person and Entity exculpated and released, or whose liability is limited, under this subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of the Chapter 11 Cases, except as provided herein.

**E.      Injunction**

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATIONS, LIMITATIONS OF LIABILITY, AND RELEASES GRANTED IN THIS PLAN, ALL PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES, THE RELEASED PARTIES, OR PARTIES WHOSE LIABILITY IS LIMITED (COLLECTIVELY, THE **"PROTECTED PARTIES"**), AND THEIR RESPECTIVE ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY WITH RESPECT TO WHICH SUCH PROTECTED PARTIES ARE EXCULPATED OR RELEASED OR WITH RESPECT TO WHICH SUCH PROTECTED PARTIES' LIABILITY IS OTHERWISE LIMITED.

**F.      Nondischarge of the Debtors**

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims. However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**G.      Cancellation of Documents**

On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtors shall be deemed inoperative and unenforceable solely as against the Debtors and their Estates.

**H.      Effect of Plan on Released Claims and Liens**

Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior Order of the Bankruptcy Court.

**XII.**

**MISCELLANEOUS PROVISIONS**

**A.      Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

       **a.**      the Confirmation Order, authorizing and directing that the Debtors take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan

and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement, shall have been entered and become a Final Order;

   **b.** the Liquidating Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

   **c.** the Liquidating Trust shall have been established;

   **d.** the sales of Gilmore Medical Center, Panola Hospital, and Clarksdale Medical Center shall have closed or Gilmore Medical Center, Panola Hospital, and Clarksdale Medical Center shall have otherwise been disposed of; and

   **e.** all other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Debtors and the Committee or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

**B.** **Effect of Failure of Condition**

   If each condition to the Effective Date has not been satisfied or duly waived within sixty (60) days after the Confirmation Date, then (unless the period for satisfaction or waiver of conditions has been extended at the joint option of the Plan Proponents for a period not exceeding ninety (90) days) upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponents or the Liquidating Trustee, as the case may be, before the Bankruptcy Court enters a Final Order granting such motion. If the Confirmation Order is vacated pursuant to this Plan, the Plan shall be deemed null and void in all respects, and nothing contained herein shall (i) constitute a waiver or release of any Claims by or against the Debtors or (ii) prejudice in any manner the rights of the Debtors or the Committee.

**C.** **Waiver of Conditions to the Effective Date**

   The Debtors and the Committee, jointly and in their sole discretion, may waive any or all of the conditions to the Effective Date (except those set forth in section XII(A)(a)-(c) above), in whole or in part, at any time, without notice or an Order of the Bankruptcy Court. In that event, the Debtors and the Committee will be entitled to render any or all of their performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge. The failure to satisfy or to waive any condition may be asserted by the Debtors or the Committee regardless of the circumstances giving rise to failure of such condition to be satisfied (including

Case 3:18-bk-05665 Doc 835 Filed 03/04/19 Entered 03/04/19 17:42:58 Desc Main
Document Page 120 of 130

any action or inaction by the Debtors).  The failure of the Debtors or the Committee to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

**D.      Modification of the Plan**

The Plan and any Exhibits thereto may be modified jointly by the Plan Proponents, or the Liquidating Trustee, as applicable, from time to time in accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.  The Plan and any exhibits thereto may be modified at any time before the entry of the Confirmation Order pursuant to section 1127(a) of the Bankruptcy Code; and after the entry of the Confirmation Order, the Plan Proponents, or the Liquidating Trustee, as applicable may, upon Order of the Bankruptcy Court, amend or modify the Plan and any Exhibits thereto in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing.  The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours.  Holders of Claims may obtain a copy of the Plan and any supplement or modification, if any, by contacting BMC at (888) 909-0100 or by reviewing such document on the internet at https://www.bmcgroup.com/curaehealth.  The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**E.      Extension of Time**

For cause shown, any deadlines herein that are applicable to the Debtors, the Committee, the Liquidating Trustee, the Debtor Representative, or the Liquidating Trust Estate and which are not otherwise extendable, may be extended by the Bankruptcy Court.

**F.      Post-Effective Date Notice List**

Because certain Persons may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List.  Persons on such Post-Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein).  Any Person desiring to be included in the Post-Effective Date Notice List must (i) file a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidating Trustee and his or her counsel.  On or before sixty (60) days after the Effective Date, the Liquidating Trustee shall compile a list of all Persons on the Post-Effective Date Notice List and file such list with the Bankruptcy Court.  Those parties set forth in section

XII(J) of the Plan shall be included in the Post-Effective Date Notice List without the necessity of filing a request.

## G.    Revocation of Plan

The Plan Proponents reserve the right to jointly seek revocation of the Confirmation Order pursuant to section 1144 of the Bankruptcy Code.  If the Bankruptcy Court revokes the Confirmation Order pursuant to section 1144 of the Bankruptcy Code, or if confirmation or the Effective Date of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and except as herein provided; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against the Debtors or any other person, (b) prejudice in any manner the Debtors', the Committee's, or any Person's rights, or (c) constitute the Debtors' or the Committee's or any Person's admission of any sort.

## H.    Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, and lawful successor or assign of such Person or Entity.

## I.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court has entered the Confirmation Order.   Neither the filing of the Plan, any statement or provision contained in the Plan, nor the Debtors' taking of any action with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of the Debtors' rights with respect to the Holders of Claims prior to the Effective Date.

## J.    Service of Documents

Any pleading, notice, or other document required or permitted to be made in accordance with this Plan shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid, as follows:

To the Debtor:

 Polsinelli P.C.
 Attn: David E. Gordon
   Caryn Wang
 1201 West Peachtree Street NW
 Suite 1100
 Atlanta, GA 30309

To the Committee:

Sills Cummis & Gross P.C.
Attn:   Andrew H. Sherman
          Boris I. Mankovetskiy
One Riverfront Plaza
Newark, NJ 07102

and

Manier & Herod, P.C.
Attn:   Michael E. Collins
          Robert W. Miller
1201 Demonbreun Street #900
Nashville, TN 37203

**K.      Filing of Additional Documents and Notice of Effective Date**

On or before the Effective Date, the Debtors and/or the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall file a notice of the Effective Date as soon as practicable after the Effective Date and shall serve such notice on all parties that are entitled to notice under Bankruptcy Rule 2002.

**L.      Severability**

The provisions of the Plan shall not be severable unless the Plan Proponents agree to such severance and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**M.      Entire Agreement**

The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

**N.      Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Tennessee, without giving effect to the principles of conflicts of law of such jurisdiction.

**O.      Closing of the Chapter 11 Cases**

Consistent with the other terms of this Plan, the Liquidating Trustee shall promptly, upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents

required by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated: February 28, 2019

<div style="margin-left: 40%;">

**CURAE HEALTH, INC., ET AL**.

Debtors and Debtors in Possession

By: /s/ *Stephen Clapp*_____
Name: Stephen Clapp
Title: President

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: /s/ *Bill Anderson*_____
Name: Bill Anderson
Title: Committee Chair for Official
Committee of Unsecured Creditors

</div>

**POLSINELLI P.C.**

/s/ *Michael Malone*_____
Michael Malone
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573
mmalone@polsinelli.com

-and-

David E. Gordon (*Pro Hac Vice*)
Caryn E. Wang (*Pro Hac Vice*)
1201 West Peachtree Street NW
Atlanta, GA 30309
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Attorneys for the Debtors and
Debtors in Possession*

-and-

MANIER & HEROD, P.C.

/s/ Robert W. Miller
Michael E. Collins (Bar No. 16036)
Robert W. Miller (Bar No. 31918)
1201 Demonbreun Street, Suite 900
Nashville, TN 37203
Telephone: (615)-244-0030
Facsimile: (615) 242-4203
mcollins@manierherod.com
rmiller@manierherod.com

-and-

SILLS CUMMIS & GROSS P.C.

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

*Co-Counsel for the Official Committee of*
*Unsecured Creditors of Curae Health, Inc., et al.*

## Exhibit B[11]

**Schedule of the Estimated Potential Range of Recovery to Holders of Allowed Claims and Interests in Impaired Classes**

---

[11] All representations in this exhibit are based on the Debtors' characterization of the relevant facts. The Committee, the Liquidating Trustee, and the Debtor Representative reserve the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this section shall bind the Committee, the Liquidating Trustee, or the Debtor Representative or be construed to constitute an admission or any fact or waiver or limitation of any right by the Committee, the Liquidating Trustee, or the Debtor Representative. All rights, claims, and defenses of or assertable by the Committee, the Liquidating Trustee, or the Debtor Representative are expressly reserved and preserved, including with respect to all loan and other financial agreements or instruments purportedly executed by any of the Debtors in favor of any party.

6090784 v4
67632320.1

## Curae Health, Inc.
Recovery Analysis

| | Notes: | Plan | |
|---|---|---|---|
| | | **Low** | **High** |
| **Cash & Equivalents:** | | | |
| Estimated Cash on Hand (2/8/19) | | $393,498 | $393,498 |
| **Bank Accounts & Other Assets:** | | | |
| Amory Midcap Escrow | | 4,001,809 | 4,001,809 |
| Amory Holdback Escrow | | 0 | 2,000,000 |
| Clarksdale Inventory Sale Proceeds | | 1,210,446 | 1,210,446 |
| Clarksdale PP&E | | 1,750,000 | 4,000,000 |
| Batesville Sale Proceeds | | 2,500,000 | 3,000,000 |
| Russellville Reserve Account | (1) | 950,738 | 950,738 |
| Russellville DSH Proceeds | (1) | 506,641 | 506,641 |
| Estimated Operating Cash Flow (Weeks Ending 2.15 - 4.12) | (2) | 209,146 | 989,146 |
| Remaining A/R Collections After Week Ending 4.12 | | 1,000,000 | 3,000,000 |
| Deposits | | 250,000 | 250,000 |
| Litigation Recoveries | (3) | 750,000 | Unknown |
| **Total Assets & Cash Equivalents** | | **$13,522,278** | **$20,302,278** |
| | | | |
| **Debtor-in-Posession Loan** | | | |
| MidCap DIP Loan (balance as of 2/11/19) | | $6,043,610 | $6,043,610 |
| *Recovery* | | *100.00%* | *100.00%* |
| **Remaining Funds Available** | | **$6,728,668** | **$14,258,668** |
| | | | |
| **Estimated Administrative & Priority Claims** | | | |
| Administrative Claims | (4) | $264,242 | $240,220 |
| Priority Claims | (4) | 752,454 | 684,049 |
| Professional Fees (Incurred from January through Mid-April Confirmation) | | 1,172,500 | 1,172,500 |
| US Trustee Fees | | 180,000 | 155,000 |
| Total Administrative & Priority Claims | | 2,369,196 | 2,251,769 |
| **Remaining Funds Available** | | **$4,359,472** | **$12,006,899** |
| | | | |
| **Estimated Alleged MHAP Claim** | | | |
| MHAP Payment | (5) | 2,165,362 | - |
| **Total Estimated Alleged MHAP Claim Payments** | | 2,165,362 | - |
| **Remaining Funds Available** | | **$2,194,110** | **$12,006,899** |
| | | | |
| **Post Confirmation Expense Reserve** | | | |
| Professional Fees | | $450,000 | $300,000 |
| US Trustee Fees | | 75,000 | 75,000 |
| Wind Down Expenses (Post Confirmation) | (6) | 421,790 | 316,343 |
| **Total Post Confirmation Expenses** | | **946,790** | **691,343** |
| **Remaining Funds Available** | | **$1,247,320** | **$11,315,557** |
| | | | |
| **Class 2 - Alleged ServisFirst Secured Claim** | | | |
| Payments on Alleged ServisFirst Secured Claim | | 1,247,320 | 11,315,557 |
| **Total Alleged ServisFirst Secured Claim** | | 18,783,000 | 18,783,000 |
| *Recovery* | | *6.64%* | *60.24%* |
| **Remaining Funds Available** | | **$0** | **$0** |

| | | | |
|---|---|---|---|
| **Class 3 - Alleged CHS Secured Claim** | | | |
| Payments on Alleged CHS Secured Claim | | - | - |
| **Total Alleged CHS Claim** | | 28,609,419 | 28,609,419 |
| *Recovery* | | *0.00%* | *0.00%* |
| **Remaining Funds Available** | | **$0** | **$0** |

| | | | |
|---|---|---|---|
| **Class 4 - Secured Claims of Other Lienholders** | | | |
| Payments on Secured Claims of Other Lienholders | | - | - |
| **Total Secured Claims of Other Lienholders** | | - | - |
| *Recovery* | | *#DIV/0!* | *#DIV/0!* |
| **Remaining Funds Available** | | **$0** | **$0** |

| | | | |
|---|---|---|---|
| **Class 5 - General Unsecured Claims** | | | |
| Payments on General Unsecured Claims | (3) | 242,130 | Unknown |
| **Total General Unsecured Claims** | | 22,000,000 | 22,000,000 |
| *Recovery* | | *1.10%* | *0.00%* |
| **Remaining Funds Available** | | **507,870** | **Unknown** |

| | | | |
|---|---|---|---|
| **Class 6 - Deficiency Claim of ServisFirst** | | | |
| Payments on Deficiency Claim of ServisFirst | (3) | 192,996 | Unknown |
| **Total Deficiency Claim of ServisFirst** | | 17,535,680 | 7,467,443 |
| *Recovery* | | *1.10%* | *0.00%* |
| **Remaining Funds Available** | | **314,873** | **Unknown** |

| | | | |
|---|---|---|---|
| **Class 7 - Deficiency Claim of CHS** | | | |
| Payments on Deficiency Claim of CHS | (3) | 314,873 | Unknown |
| **Total Deficiency Claim of CHS** | | 28,609,419 | 28,609,419 |
| *Recovery* | | *1.10%* | *0.00%* |
| **Remaining Funds Available** | | **-** | **Unknown** |

| | | | |
|---|---|---|---|
| **Class 8 - All Corporate Interests** | | | |
| Payments on All Corporate Interests | | - | - |
| **Total All Corporate Interests** | | - | - |
| *Recovery* | | *#DIV/0!* | *#DIV/0!* |
| **Remaining Funds Available** | | **$0** | **#VALUE!** |

Notes:

*(1)   The UCC asserts these proceeds are not subject to the ServisFirst lien and are not eligible for a Class 2 payment.  In the Debtors' view the issue is irrelevant because, whether subject to Servis First's lien or otherwise, these proceeds would be used to pay some combination of the DIP Loan, administrative & priority claims, US Trustee and Professional Fees, and/or Wind Down Expenses.*

*(2)  Low case assumes accounts receivable collection rate at 85% of projected.*

*(3)  Litigation recoveries are allocated on a pro rata basis to Class 5, 6 and 7 only.*

*(4)  Low case assumes a 10% premium over the current estimate included in the high recovery.*

*(5) The Debtors dispute the alleged MHAP claim.*

*(6) High case assumes 75% of expenses estimated in the low recovery.*

**<u>Exhibit C</u>**

**Liquidating Trust Agreement (to be filed on the docket at least five (5) days prior to the Confirmation Hearing)**

**Exhibit D**

**Cooperation Agreement (to be filed on the docket at least five (5) days prior to the Confirmation Hearing)**